**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**DEBTORS' APPLICATION FOR AUTHORIZATION TO EMPLOY
AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL
AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

Impac Mortgage Holdings, Inc., and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby move for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to § 156(c) of title 28 of the United States Code and § 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code")[2] appointing Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as the claims and noticing agent (the "Claims and Noticing Agent") in the Debtors' cases (the "Application"). In support of the Application, the Debtors respectfully represent as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] All references to "§" or "section" herein are to sections of the Bankruptcy Code. All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to "Local Rules" are to provisions of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware

*Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are § 156(c) of title 28 of the United States Code, §§ 503 and 1107, Bankruptcy Rule 2002(f), and Local Rule 2002-1(f).

**Background**

4.      On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108.

5.      No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

6.      Additional information regarding the Debtors, including their business and the events leading to the commencement of the Chapter 11 Cases, is set forth in the *Declaration of George A. Mangiaracina in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith.

**Relief Requested**

7.      This Application is made pursuant to 28 U.S.C. § 156(c), § 105(a) and Local Rule 2002-1(f) for an order appointing Verita to act as the claims and noticing agent in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing

2

of proofs of claim filed in the Debtors' cases.  The Debtors' selection of Verita to act as the claims and noticing agent has satisfied the Court's *Protocol for Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtors have obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Verita's rates are competitive and reasonable given Verita's quality of services and expertise.  The terms of retention are set forth in the Engagement Agreement attached hereto as **Exhibit 1** to **Exhibit A** (the "Engagement Agreement"); provided, however, that Verita is seeking approval solely of the terms and provisions as set forth in this Application and the proposed order attached hereto.

8.     Although the Debtors have not yet filed their schedules of assets and liabilities and have requested that the court conditionally waive the requirement to file schedules of assets and liabilities, they anticipate that there will be in excess of 3,300 entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interest of the both the Debtors' estates and their creditors.

### Verita's Qualifications

9.     Verita is a leading chapter 11 administrator and comprises industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Verita has acted as the official claims and noticing agent in many large bankruptcy cases in this and other districts.  Verita's recent cases in this district include:  *In re Reliz Technology Group Holdings Inc., et al.*, Case No. 26-10371 (TMH) (Bankr. D. Del. Mar. 18, 2026); *In re Avenger Flight Group, LLC, et al.*, Case No. 26-10183 (MFW) (Bankr. D. Del. Feb. 13, 2026); *In*

*re Salt House, Inc. (f/k/a Food52, Inc.)*, Case No. 25-12277 (LSS) (Bankr. D. Del. Dec. 31, 2025);

*In re Apple Tree Life Sciences, Inc., et al.*, Case No. 25-12177 (LSS) (Bankr. D. Del. Dec. 17, 2025); *In re American Signature, Inc., et al.*, Case No. 25-12105 (JKS) (Bankr. D. Del. Nov. 26, 2025); *In re Hudson 1701/1706, LLC*, et al., Case No. 25-11853 (KBO) (Bankr. D. Del. Nov. 3, 2025); *In re AGDP Holding Inc., et al.*, Case No. 25-11446 (MFW) (Bankr. D. Del. Aug. 5, 2025); *In re Marelli Automotive Lighting USA LLC, et al.*, Case No. 25-11034 (CTG) (Bankr. D. Del. Jun. 12, 2025); *In re Molecular Templates, Inc., et al.*, Case No. 25-10739 (BLS) (Bankr. D. Del. Apr. 22, 2025); *In re Leisure Investments Holdings LLC, et al.*, Case No. 25-10606 (LSS) (Bankr. D. Del. Apr. 2, 2025); *In re F21 OpCo, LLC, et al.*, Case No. 25-10469 (MFW) (Bankr. D. Del. Mar. 18, 2025); *In re Village Roadshow Entertainment Group USA Inc., et al.*, Case No. 25-10475 (TMH) (Bankr. D. Del. Mar. 18, 2025); *In re Dynamic Aerostructures LLC, et al.*, Case No. 25-10292 (LSS) (Bankr. D. Del. Feb. 27, 2025); *In re Gritstone bio, Inc.,* Case No. 24-12305 (Bankr. D. Del. Oct. 16, 2024); *In re Fulcrum Bioenergy, Inc.*, et al., Case No. 24-12008 (Bankr. D. Del. Sep. 12, 2024); *In re QLess, Inc.*, Case No. 24-11395 (BLS) (Bankr. D. Del. Jun. 21, 2024); *In re Fisker Inc., et al.*, Case No. 24-11390 (TMH) (Bankr. D. Del. July 2, 2024); *In re Supply Source Enterprises, Inc., et al.*, Case No. 24-11054 (BLS) (Bankr. D. Del. Jun. 13, 2024); *In re ProSomnus, Inc., et al.*, Case No. 24-10972 (JTD) (Bankr. D. Del. May 9, 2024); *In re Sticky's Holding LLC, et al.*, Case No. 24-10856 (JKS) (Bankr. D. Del. Apr. 26, 2024); *In re SC Healthcare Holding, LLC, et al.*, Case No. 24-10443 (TMH) (Bankr. D. Del. Mar. 22, 2024); *In re Cano Health, Inc., et al.*, Case No. 24-10164 (KBO) (Bankr. D. Del. Feb. 6, 2024); *In re InVivo Therapeutics Corporation, et al.*, Case No. 24-10137 (MFW) (Bankr. D. Del. Feb. 6, 2024); *In re AN Global, LLC, et al.*, Case No. 23-11294 (JKS) (Bankr. D. Del. Aug. 29, 2023); *In re Proterra Inc., et al.*, Case No. 23-11120 (BLS) (Bankr. D. Del. Aug. 10, 2023); *In re Novan, Inc., et al.*,

4

Case No. 23-10937 (LSS) (Bankr. D. Del. July 19, 2023); *In re Lordstown Motors Corp., et al.*, Case No. 23-10831 (MFW) (Bankr. D. Del. June 28, 2023); *In re KDC Agribusiness LLC, et al.*, Case No. 23-10786 (CTG) (Bankr. D. Del. June 21, 2023); *In re PGX Holdings, Inc., et al.*, Case No. 23-10718 (CTG) (Bankr. D. Del. June 6, 2023); *In re Plastiq Inc., et al.*, Case No. 23-10671 (BLS) (Bankr. D. Del. May 25, 2023); *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023); *In re Structurlam Mass Timber U.S., Inc., et al.*, Case No. 23-10497 (CTG) (Bankr. D. Del. Apr. 26, 2023); *In re Catalina Mktg. Corp.*, Case No. 23-10620 (KBO) (Bankr. D. Del. Mar. 31, 2023); *In re CBCRC Liquidating Corp., et al.*, Case No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023); *In re First Guaranty Mortgage Corporation, et al.*, Case No. 22-10584 (CTG) (Bankr. D. Del. July 1, 2022).

10.      By appointing Verita as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court for the District of Delaware (the "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.  In support of this Application, the Debtors submit the *Declaration of Evan Gershbein in Support of Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants, LLC dba Verita Global as Claims and Noticing Agent Effective as of the Petition Date* attached hereto as **Exhibit B** (the "Gershbein Declaration").

## Services to be Provided by Verita

11.      This application pertains only to the work to be performed by Verita under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any

work to be performed by Verita outside of this scope is not covered by this application or by any order of the Court granting approval hereof.[3]

12.     Specifically, Verita will perform the following tasks in its role as the Claims and Noticing Agent in these chapter 11 cases (collectively, the "Claims and Noticing Services"), as well as all quality control relating thereto:

(a)     prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors or the Court, including, without limitation: (i) notice of the commencement of these chapter 11 cases in conformity with Local Form 132; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan or plans, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; (vii) notice of any hearing on motions filed by the United States Trustee; (viii) any motion to convert, dismiss, appoint a trustee, or appoint an examiner filed by the United States Trustee; and (ix) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(c)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(d)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Verita, not less than weekly;

(e)     maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk, and, upon the Clerk's

---

[3] As noted above, the Debtors plan to seek authorization to retain and employ Verita as administrative advisor in these chapter 11 cases by separate application pursuant to § 327(a) because the administration of these chapter 11 cases will require Verita to perform duties outside the scope of 28 U.S.C. § 156(c).

request, provide the Clerk with certified, duplicate unofficial Claims Registers;

(f)  specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(g)  maintain a separate claims register and separate creditor mailing matrix for each debtor;

(h)  record all Transfers of Claims and make changes to the creditor matrix after the objection period has expired. Verita shall also record any order entered by the Court that may affect a claim by making a notation on the claims register and monitor the Court's docket for any claim related pleading filed and make necessary notations on the claims register. No claim or claim information shall be deleted for any reason;

(i)  file a quarterly updated claims register with the Court in alphabetical and numerical order.  If there has been no claims activity, Verita may file a Certification of No Claim Activity;

(j)  allow public access to claims and the claims register at no charge.  The complete proof of claim and any attachment thereto shall be viewable and accessible by the public, subject to Local Rule 9037-1;

(k)  maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), if necessary, listing the Debtors' known creditors and the amounts owed thereto;

(l)  maintain: (i) an up-to-date list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and update said lists and make said lists available upon request by a party-in-interest or the Clerk (within forty-eight (48) hours);

(m)  furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount and classification of their respective claims, which may be effected by inclusion of such information (or the lack thereof, if no debt is due to the subject party) on a customized proof of claim form provided to potential creditors;

7

(n)     maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(o)     implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(p)     assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website or call center;

(q)     within fourteen (14) days of entry of an Order dismissing a case or within twenty-eight (28) days of entry of a Final Decree, Verita shall (i) forward to the Clerk an electronic version of all imaged claims, (ii) upload the creditor mailing list into CM/ECF and (iii) docket a Final Claims Register. If a case has jointly administered entities, one combined register shall be docketed in the lead case containing claims of all cases;

(r)     within the earlier to occur of (a) fourteen (14) days of entry of an Order converting a case and (b) entry of a termination order, Verita shall (i) forward to the Clerk an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF and (iii) docket a Final Claims Register. If a case has jointly administered entities, one combined claims register shall be docketed in the lead case containing the claims of all cases. A Final Claims Register and creditor mailing matrix shall also be docketed in each jointly administered case containing the claims and creditor mailing matrix parties, respectively, of only that specific case;

(s)     Upon conversion of a chapter 11 case to a chapter 7 case, if there are more than two hundred (200) creditors, Verita shall (i) continue to serve all notices required to be served, at the direction of the chapter 7 trustee or the Clerk's Office or (ii) submit a termination order.

### Verita's Compensation

13.     The Debtors respectfully request that the undisputed fees and expenses incurred by Verita in the performance of the Claims and Noticing Services in accordance with the terms of the Engagement Agreement be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.

8

14. Verita agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. Verita further agrees to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

15. Prior to the Petition Date, the Debtors provided Verita a retainer in the amount of $35,000. Verita seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

16. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Verita and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Verita's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or any order authorizing the employment and retention of Verita. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these chapter 11 cases.

**Verita's Disinterestedness**

17. Although the Debtors do not propose to employ Verita under § 327 pursuant to this application, Verita has nonetheless reviewed its conflicts system to determine whether it has any

relationships with the creditors and parties in interest provided by the Debtors, and the Debtors

have been advised that, to the best of Verita's knowledge, information and belief, and except as

disclosed in the Gershbein Declaration, Verita has represented that it neither holds nor represents

any interest materially adverse to the Debtors' estates in connection with any matter on which it

would be employed.

18.     Moreover, in connection with its retention as Claims and Noticing Agent, Verita

represents in the Gershbein Declaration, among other things, that:

(a)     Verita is not a creditor of the Debtors;

(b)     Verita is a "disinterested person," as that term is defined in § 101(14), as modified by § 1107(b);

(c)     Verita will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(d)     by accepting employment in these chapter 11 cases, Verita waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(e)     in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Verita will not be an agent of the United States and will not act on behalf of the United States;

(f)     Verita will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these chapter 11 cases;

(g)     in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Verita will not intentionally misrepresent any fact to any person;

(h)     Verita shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     Verita will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Verita as the claims and noticing agent in these chapter 11 cases shall be at the expense of the Clerk.

19.     If any new facts or circumstances are discovered that require additional disclosure, Verita will supplement its disclosure to the Court.

**Basis for Relief Requested**

**I.      Retention and Employment of Verita as Notice Claims Agent is Permitted**.

20.     Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Fed. R. Bankr. P. 2002(f).  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below.  Moreover, § 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for the administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.     In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the Claims and Noticing Services.

11

Del. Bankr. L.R. 2002-1(f).  Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and § 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

22.    Accordingly, for all of the foregoing reasons, the Debtors believe that the retention of Verita as the Claims and Noticing Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Verita under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures applicable to professionals.

23.    By separate application, the Debtors intend to seek authorization to retain and employ Verita as the administrative agent in these chapter 11 cases, pursuant to § 327(a), because the administration of the chapter 11 cases will require Verita to perform duties outside the scope of 28 U.S.C. § 156(c).

**II.    Relief Effective as of the Petition Date is Appropriate**.

24.    Pursuant to the Debtors' request, Verita has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date, so that Verita may be compensated for its services prior to approval of this Application.  The Debtors believe that no party in interest will be prejudiced by granting employment effective as of the Petition Date, as provided in this Application, because Verita has provided and continues to provide valuable services to the Debtors' estates in the interim period.  The Local Rules empower courts in this district to approve employment effective as of the petition date, and the Debtors submit that such approval is justified here.  *See, e.g.*, Del. Bankr. L.R. 2014-1(b) ("If the retention application is

granted, the retention shall be effective as of the date the application was filed, unless the Court orders otherwise.").

25.     Courts in this jurisdiction have routinely approved employment effective as of the petition date, similar to that requested herein, in matters comparable to this matter. *See, e.g.*, *In re VER Technologies Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. Apr. 6, 2018); *In re Rand Logistics, Inc.*, No. 18-10175 (BLS) (Bankr. D. Del. Jan. 31, 2018) (approving *nunc pro tunc* employment of a claims and noticing agent to perform claims and noticing services); *In re ExGen Tex. Power, LLC*, No. 17-12377 (BLS) (Bankr. D. Del. Nov. 8, 2017) (same); *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del. Aug. 3, 2017) (same); *In re Keystone Tube Co., LLC*, No. 17-11330 (CSS) (Bankr. D. Del. June 20, 2017) (same).

## Notice

26.     The Debtors have provided notice of this Application to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the Internal Revenue Service; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Application seeks "first day" relief, within two business days of the hearing on this Application, the Debtors will serve copies of this Application and any order entered with respect to this Application as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

27.     No prior request for the relief sought in this Application has been made to this or any other court.

13

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: April 26, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com

-and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II ( DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Email:  john.beck@dentons.com
        geoffrey.miller@dentons.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") for authority to employ and retain Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as claims and noticing agent in the Debtors' chapter 11 cases (the "Claims and Noticing Agent") effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Notwithstanding the terms of the Engagement Agreement attached hereto, the Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Verita, effective as of the Petition Date, under the terms of the Engagement Agreement, and Verita is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these cases, and all related tasks, all as described in the Application (the "Claims and Noticing Services").

3.      Verita shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases (if any) and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Verita is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary).

5.      Verita is authorized to take such other action to comply with all duties set forth in the Application.

6.      Without further order of this Court, the Debtors are authorized to compensate and reimburse Verita in accordance with the terms and conditions of the Engagement Agreement upon receipt of reasonably detailed invoices setting forth the services provided by Verita and the rates charged for each, and to reimburse Verita for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Verita to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Verita shall maintain records of all services performed showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel to the Debtors, counsel to any official committee monitoring the expenses of the Debtors, and any party-in-interest that specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of such matter from this Court if resolution is not achieved.

9.      Pursuant to § 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Verita under this Order shall be an administrative expense of the Debtors' estates.

10.     Verita may apply its retainer to all prepetition invoices and, thereafter, have the retainer replenished to the original retainer amount and, thereafter, hold the retainer under the Engagement Agreement during the cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Verita under the terms of the Engagement Agreement, as modified pursuant to this Order.

3

12.     Verita shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services, as provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Verita, or provide contribution or reimbursement to Verita, for any losses, claims, damages, judgments, liabilities or expenses that are either: (a) judicially determined (the determination having become final) to have arisen from Verita's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege a breach of Verita's contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Verita should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.     Before the earlier of: (a) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing these chapter 11 cases, should Verita believe that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, Verita must file an application in this Court, and the Debtors may not pay any such amounts to Verita before the entry of an order by this Court approving such application and the payment requested therein.  This paragraph is

4

intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Verita for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify Verita.  All parties in interest shall retain the right to object to any demand by Verita for indemnification, contribution, or reimbursement.

15.     In the event Verita is unable to provide the Claims and Noticing Services, Verita will immediately notify the Clerk and the Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

16.     The Debtors may submit a separate retention application, pursuant to § 327 of the Bankruptcy Code or any applicable law, for work that is to be performed by Verita but is not specifically authorized by this Order.

17.     The Debtors and Verita are authorized to take all steps necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

19.     Verita shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of this Court.

20.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

21.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

**Exhibit 1**

**Engagement Agreement**



## VERITA AGREEMENT FOR SERVICES

This Agreement is entered into as of the 16th day of April 2026, between Impac Mortgage Holdings, Inc. (together with its affiliates and subsidiaries, the "Company),[1] and Kurtzman Carson Consultants, LLC dba Verita Global (together with its affiliates and subcontractors, "Verita"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.    SERVICES

A.    Verita agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    Verita further agrees to provide (i) computer software support and training in the use of the support software, (ii) Verita's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "Verita Fee Structure").

C.    Without limiting the generality of the foregoing, Verita may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by Verita and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the Verita Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by Verita.

E.    The Company acknowledges and agrees that Verita will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that Verita may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that Verita shall not provide the Company or any other party with any legal advice.

II.    PRICES, CHARGES AND PAYMENT

A.    Verita agrees to charge and the Company agrees to pay Verita for its services at the rates and prices set by Verita that are in effect as of the date of this Agreement and in accordance with the Verita Fee Structure.  Verita's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  Verita reserves the right to reasonably increase its

---

[1]    The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



**VERITA AGREEMENT FOR SERVICES**

prices, charges and rates; provided, however, that if any such increase exceeds 15%, Verita will give thirty (30) days written notice to the Company.

B.      In addition to fees and charges for services, the Company agrees to pay Verita's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to Verita (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by Verita and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by Verita or paid by Verita to a taxing authority, provided, however, that Company shall not be responsible for any taxes based on Verita's net income, payroll, or employment obligations.

D.      Where the Company requires services that are unusual or beyond the normal business practices of Verita, or are otherwise not provided for in the Verita Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      Verita agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. Verita's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and Verita reasonably believes it will not be paid, Verita may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as two and one-half percent (2-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to Verita within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that Verita shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to Verita. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Verita will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.      To the extent permitted by applicable law, Verita shall receive a retainer in the amount of $35,000 (the "Retainer") that may be held by Verita as security for the Company's payment obligations under the



**VERITA AGREEMENT FOR SERVICES**

Agreement. The Retainer is due upon execution of this Agreement. In the event of a Chapter 11 Filing, Verita will first apply the Retainer to all pre-petition invoices, and thereafter, will have the Retainer replenished to the original amount. Verita shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Verita shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.   RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by Verita pursuant to this Agreement and/or developed during the course of this Agreement by Verita are the sole property of Verita. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Verita's performance of its services developed or utilized during the term of this Agreement by Verita shall be the exclusive property of Verita. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by Verita under this Agreement.

IV.   NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of Verita during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless Verita provides prior written consent to such solicitation or retention.

V.   CONFIDENTIALITY

Each of Verita and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

VI.   SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of Verita that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Verita invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by Verita where Verita reasonably believes it will not be paid.



**VERITA AGREEMENT FOR SERVICES**

B.      In the event that this contract is terminated, regardless of the reason for such termination, Verita shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and Verita shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with Verita's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to Verita) that discharges Verita from service and responsibility in the Company's bankruptcy case.

C.      Any data, programs, storage media or other materials furnished by the Company to Verita or received by Verita in connection with the services provided under the terms of this Agreement may be retained by Verita until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by Verita.  Verita shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay Verita for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized Verita's services under this Agreement for a period of at least ninety (90) days, Verita may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by Verita shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

Verita strives to provide continuous improvements in the quality of service to its clients.  Verita, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the Verita data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

VIII.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.      The Company shall indemnify and hold Verita, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Verita's performance under this Agreement. Such indemnification shall exclude Losses resulting from Verita's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party.  The Company shall notify Verita in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by Verita under this Agreement.   The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.      Except as provided herein, Verita's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if Verita has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of Verita, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which



## VERITA AGREEMENT FOR SERVICES

gave rise to the alleged Loss. In no event shall Verita be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement. In no event shall Verita's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to Verita for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.      The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to Verita and for the output of such information. Verita does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; Verita bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to Verita.

D.      The Company agrees that except as expressly set forth herein, Verita makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## IX.      FORCE MAJEURE

Verita will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

## X.      INDEPENDENT CONTRACTORS

The Company and Verita are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

## XI.      NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:



**VERITA AGREEMENT FOR SERVICES**

KCC/Verita Global, LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA  90245
Attn:  Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@veritaglobal.com

Impac Mortgage Holdings, Inc.
19800 MacArthur Blvd., Suite 500
Irvine, CA 92612
Attn: Legal Department
Email: generalcounsel@impacmail.com
Tel: (949) 495-6523

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIII.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of Verita.

XIV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by Verita to a wholly-owned subsidiary or affiliate of Verita.



**VERITA AGREEMENT FOR SERVICES**

XVI.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants, LLC dba Verita Global

DocuSigned by:

*Evan J. Gershbein*

41878F97BE7747D...

BY: Evan Gershbein                    DATE:  21-Apr-2026 | 4:25:54 PM EDT
TITLE: EVP, Corporate Restructuring Services


Company


_____        4/21/26
BY: Joseph Joffrion                    DATE:
TITLE: SVP, General Counsel & Secretary

**Exhibit B**

**Gershbein Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS'**
**APPLICATION FOR AUTHORIZATION TO EMPLOY AND**
**RETAIN KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL AS**
**CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Evan Gershbein, being duly sworn, state the following under penalty of perjury:

1.     I am an Executive Vice President of Corporate Restructuring Services for Kurtzman Carson Consultants, LLC dba Verita Global ("Verita"), whose offices are located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, California 90245.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.     This declaration (this "Declaration") is made in support of the *Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants, LLC dba Verita Global as Claims and Noticing Agent Effective as of the Petition Date* (the "Application").[2]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Application.

3.      Verita comprises leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Verita's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases.  Verita has acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  Verita's recent cases in this district include:  *In re Reliz Technology Group Holdings Inc., et al.*, Case No. 26-10371 (TMH) (Bankr. D. Del. Mar. 18, 2026); *In re Avenger Flight Group, LLC, et al.*, Case No. 26-10183 (MFW) (Bankr. D. Del. Feb. 13, 2026); *In re Salt House, Inc. (f/k/a Food52, Inc.)*, Case No. 25-12277 (LSS) (Bankr. D. Del. Dec. 31, 2025); *In re Apple Tree Life Sciences, Inc., et al.*, Case No. 25-12177 (LSS) (Bankr. D. Del. Dec. 17, 2025); *In re American Signature, Inc., et al.*, Case No. 25-12105 (JKS) (Bankr. D. Del. Nov. 26, 2025); *In re Hudson 1701/1706, LLC*, et al., Case No. 25-11853 (KBO) (Bankr. D. Del. Nov. 3, 2025); *In re AGDP Holding Inc., et al.*, Case No. 25-11446 (MFW) (Bankr. D. Del. Aug. 5, 2025); *In re Marelli Automotive Lighting USA LLC, et al.*, Case No. 25-11034 (CTG) (Bankr. D. Del. Jun. 12, 2025); *In re Molecular Templates, Inc., et al.*, Case No. 25-10739 (BLS) (Bankr. D. Del. Apr. 22, 2025); *In re Leisure Investments Holdings LLC, et al.*, Case No. 25-10606 (LSS) (Bankr. D. Del. Apr. 2, 2025); *In re F21 OpCo, LLC, et al.*, Case No. 25-10469 (MFW) (Bankr. D. Del. Mar. 18, 2025); *In re Village Roadshow Entertainment Group USA Inc., et al.*, Case No. 25-10475 (TMH) (Bankr. D. Del. Mar. 18, 2025); *In re Dynamic Aerostructures LLC, et al.*, Case No. 25-10292 (LSS) (Bankr. D. Del. Feb. 27, 2025); *In re Gritstone bio, Inc.,* Case No. 24-12305 (Bankr. D. Del. Oct. 16, 2024); *In re Fulcrum Bioenergy, Inc.*, et al., Case No. 24-12008 (Bankr. D. Del. Sep. 12, 2024); *In re QLess, Inc.*, Case No. 24-11395 (BLS) (Bankr. D. Del. Jun. 21, 2024); *In re Fisker Inc., et al.*, Case No. 24-11390 (TMH) (Bankr. D. Del. July 2, 2024); *In re Supply Source Enterprises, Inc., et al.*, Case No. 24-

2

11054 (BLS) (Bankr. D. Del. Jun. 13, 2024); *In re ProSomnus, Inc., et al.*, Case No. 24-10972 (JTD) (Bankr. D. Del. May 9, 2024); *In re Sticky's Holding LLC, et al.*, Case No. 24-10856 (JKS) (Bankr. D. Del. Apr. 26, 2024); *In re SC Healthcare Holding, LLC, et al.*, Case No. 24-10443 (TMH) (Bankr. D. Del. Mar. 22, 2024); *In re Cano Health, Inc., et al.*, Case No. 24-10164 (KBO) (Bankr. D. Del. Feb. 6, 2024); *In re InVivo Therapeutics Corporation, et al.*, Case No. 24-10137 (MFW) (Bankr. D. Del. Feb. 6, 2024); *In re AN Global, LLC, et al.*, Case No. 23-11294 (JKS) (Bankr. D. Del. Aug. 29, 2023); *In re Proterra Inc., et al.*, Case No. 23-11120 (BLS) (Bankr. D. Del. Aug. 10, 2023); *In re Novan, Inc., et al.*, Case No. 23-10937 (LSS) (Bankr. D. Del. July 19, 2023); *In re Lordstown Motors Corp., et al.*, Case No. 23-10831 (MFW) (Bankr. D. Del. June 28, 2023); *In re KDC Agribusiness LLC, et al.*, Case No. 23-10786 (CTG) (Bankr. D. Del. June 21, 2023); *In re PGX Holdings, Inc., et al.*, Case No. 23-10718 (CTG) (Bankr. D. Del. June 6, 2023); *In re Plastiq Inc., et al.*, Case No. 23-10671 (BLS) (Bankr. D. Del. May 25, 2023); *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023); *In re Structurlam Mass Timber U.S., Inc., et al.*, Case No. 23-10497 (CTG) (Bankr. D. Del. Apr. 26, 2023); *In re Catalina Mktg. Corp.*, Case No. 23-10620 (KBO) (Bankr. D. Del. Mar. 31, 2023); *In re CBCRC Liquidating Corp., et al.*, Case No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023); *In re First Guaranty Mortgage Corporation, et al.*, Case No. 22-10584 (CTG) (Bankr. D. Del. July 1, 2022)..

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Verita will perform at the request of the Clerk's office the noticing and claims-related services specified in the Application.  In addition, at the Debtors' request, Verita will perform such other noticing, claims, technical, administrative, and support services specified in the Application, subject to 28 U.S.C. § 156(c) and the Claims Agent Protocol.

3

5.    Verita represents, among other things, the following:

(a)    Verita is not a creditor of the Debtors;

(b)    Verita is a "disinterested person" within the meaning of § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code;

(c)    Verita will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(d)    by accepting employment in these chapter 11 cases, Verita waives any rights to receive compensation from the United States government as claims and noticing agent;

(e)    in its capacity as the claims and noticing agent in these chapter 11 cases, Verita will not be an agent of the United States and will not act on behalf of the United States;

(f)    Verita will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these chapter 11 cases;

(g)    in its capacity as the claims and noticing agent in these chapter 11 cases, Verita will not intentionally misrepresent any fact to any person;

(h)    Verita will be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Verita will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    none of the services provided by Verita as the claims and noticing agent will be at the expense of the Clerk's office.

6.    Although the Debtors do not propose to retain Verita under § 327 pursuant to the Application,[3] and Verita is an administrative service provider that does not provide legal or other professional advice, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases.

---

[3] As stated in the Application, such retention will be sought by separate application.

4

The list of Potential Parties in Interest was provided by the Debtors and included, among other things, the Debtors, non-Debtor affiliates, significant equity holders, the Debtors' current and former directors and officers, secured creditors, top 50 unsecured creditors, vendors, and other parties. The results of the conflict check were compiled and reviewed by Verita professionals under my supervision. Based on this review, Verita is not aware of any connection to disclose as part of the Application other than as described below. Should Verita discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Verita will use reasonable efforts to promptly file a supplemental declaration.

7.      In addition, to the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Verita, nor any of its professionals, has any material adverse connection to the Debtors' estates with respect to any matter upon which Verita is to be engaged. Certain of the Debtors' creditors may be involved as vendors in cases in which Verita serves or has served in a neutral capacity as claims and noticing agent or administrative advisor for another chapter 11 debtor.

8.      On May 1, 2023, funds affiliated with GCP Capital Partners LLC ("GCP") indirectly acquired a controlling equity interest in Verita (the "Acquisition"). Pursuant to the Acquisition, an indirect, non-controlling, beneficial minority interest in Verita was acquired by funds affiliated with J.P. Morgan Investment Management Inc. ("JPMIM"). GCP is a middle-market private equity investment firm based in New York. GCP has made investments in a number of industries, including tech-enabled business services, payments, and select financials. JPMIM is a U.S. registered investment adviser. Designees of GCP are members of the Board of Managers (the "Board") of Verita's ultimate parent company, KCC Parent LLC ("Parent"). Parent wholly owns Verita Intermediate, LLC, which in turn wholly owns Verita Global, LLC, which in turn

wholly owns Verita Global Services, LLC, which in turn wholly owns Verita. One representative of JPMIM is entitled to attend and observe (but not vote) at all meetings of the Board, but no designee of JPMIM is a member of the Board.

9.     Verita searched all entities listed in the list of Potential Parties in Interest against an internal database that includes (i) Verita's parent entities, affiliates, and subsidiaries and (ii) GCP, GCP's funds, and each such fund's respective portfolio companies and investments as set forth in the list most recently provided to Verita by GCP. Based solely on the foregoing search, Verita has determined, to the best of its knowledge, that there are no material connections.  Several JPMorgan entities are listed on the Potential Parties in Interest List.  There are information barriers between JPMIM and the line of business where those entities may be associated with the Debtors.

10.     To the extent Verita learns of any other connections between the funds or investments included in the above-described conflicts search and the Debtors, Verita will promptly file a supplemental disclosure.  In addition, Verita may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more GCP or JPMIM entities including, among others, portfolio companies of GCP.

11.     Verita has no contract or relationship with XClaim Inc. or with any other party under which Verita provides or will provide exclusive access to claims data and/or under which Verita will be compensated for claims data that is made available by Verita.

12.     Verita has and will continue to represent clients in matters unrelated to these chapter 11 cases.  Verita has working relationships with certain of the professionals retained by the Debtors and other parties herein, but such relationships, except to the extent that Verita has communicated with the Debtors' other professionals concerning the preparation of these cases, are completely unrelated to these Chapter 11 Cases.  Francine Gordon Durrer, a Senior Managing

Director of Corporate Restructuring Services at Verita, is married to Van C. Durrer, II, a partner with the law firm of Dentons US LLP, proposed counsel to the Debtors.  Ms. Durrer will not be utilized by Verita to perform services for the Debtors.  In addition, Verita and its personnel have and will continue to have relationships in the ordinary course of business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases. Verita may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

13.    To the best of my knowledge, neither Verita nor any of its employees represents any interest materially adverse to the Debtors' estates with respect to any matter upon which Verita is to be engaged.  Based on the foregoing, I believe that Verita is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: April 26, 2026      Respectfully submitted,


          */s/ Evan Gershbein*
          Evan Gershbein
          Executive Vice President
          Kurtzman Carson Consultants, LLC dba
          Verita Global
          Telephone: (310) 823-9000