**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC.,<br>*et al.*,[1]<br><br>   Debtors. | Chapter 11<br><br>Case No. 26-10593<br><br>(Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO CONTINUE (A) INSURANCE PROGRAM, AND (B) PREPETITION SURETY BONDS, AND PAY OBLIGATIONS ARISING THEREUNDER, AND (II) GRANTING RELATED RELIEF**

Impac Mortgage Holdings, Inc. and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"),[2] in these chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of interim and final orders: (i) authorizing the Debtors to continue their existing insurance policies and surety bond program and to pay all obligations arising thereunder; and (ii) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the commencement of these Chapter 11 Cases to consider approval of this Motion on a final basis. In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] All references to "§" or "section" herein are to sections of the Bankruptcy Code. All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to "Local Rules" are to provisions of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

1

## I.    PRELIMINARY STATEMENT

1.      The relief sought in this Motion is critical for the Debtors because maintaining their existing insurance policies and surety bond program is necessary for the Debtors to continue operating in the ordinary course of business.  In support of this Motion, the Debtors rely upon and refer this Court to the *First Day Declaration of George A. Mangiaracina* (the "First Day Declaration"). For these reasons, and as more fully explained below, the Debtors request that this Court grant the relief requested herein.

## II.    JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  The Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicates for the relief requested herein are §§ 105(a), 363(b), 363(c), and 1107(a), Bankruptcy Rules 6003 and 6004(h), and Local Rule 9013-1(f) and (m).

## III.    BACKGROUND

A.  General Background

5.      On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue

operating their businesses and managing their properties as debtors in possession pursuant to §§1107(a) and 1108.

6.      No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

7.      Additional information regarding the Debtors, including their business and the events leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration filed concurrently herewith.

B.  The Debtors' Insurance Program

8.      The Debtors maintain various insurance policies providing coverage for, among other things, the Debtors' property, general liability, automobile liability, umbrella coverage, workers' compensation, cyber liability, employment practices liability, directors and officers coverage, fiduciary liability, and professional liability/mortgage bankers' bond (collectively, the "Insurance Policies"), which the Debtors have obtained through various third-party insurance carriers (the "Insurance Carriers").  A list of the Insurance Policies and their corresponding premium amounts calculated on an annualized basis is attached hereto as **Exhibit C**.[3]

9.      In particular, given the proliferation of cybercrime in recent years, the Debtors have maintained insurance products to address the risks of cyber-attacks and data breaches.  Among the various Insurance Policies that the Debtors propose to maintain in the instant Motion, the Debtors seek authority to maintain an Insurance Policy designed to mitigate risks from such cyber-attacks and breaches.

---

[3] The Debtors believe that **Exhibit C** is a complete list of the Insurance Policies.  However, to the extent that any policy has been omitted or the Debtors enter into new or replacement policies, the Debtors request that the relief sought herein apply to such policies as well.

10.     The premium amounts for the Insurance Policies (the "Insurance Premiums") are determined annually and are due in their entirety at policy inception or renewal.  The Debtors' aggregate annual Insurance Premiums under the Insurance Policies total approximately $1.03 million.

11.     The Insurance Premiums are paid upfront.  As of the Petition Date, the Debtors believe they have made all required prepetition payments for Insurance Premiums and have otherwise satisfied all of their obligations concerning the Insurance Policies, but, out of an abundance of caution, seek authority to satisfy any outstanding financial obligations relating to the Insurance Policies.

12.     The Debtors make such payments indirectly to the Insurance Carriers through the Debtors' insurance brokers, HUB International Insurance Services Inc., Arthur J. Gallagher Risk Management Services LLC, and Willis Towers Watson plc (collectively, the "Brokers").  The Debtors employ the Brokers to assist with the procurement and management of the Insurance Policies.  The Brokers receive compensation from the Debtors in the form of a commission fee (the "Broker's Fees") in addition to the Insurance Premiums paid by the Debtors.  The retention of the Brokers allows the Debtors to obtain and manage the Insurance Policies in an efficient manner and to realize considerable savings in the procurement of such policies.  As of the Petition Date, the Debtors do not believe that any prepetition Broker's Fees are owed, but, out of an abundance of caution, to the extent any Broker's Fees are attributable to the prepetition period, the Debtors seek authority to pay any outstanding amounts.

13.     Under the terms of the Insurance Policies, the Debtors may be required to pay various deductibles, retention amounts, and administrative fees (together with the Insurance Premiums and Broker's Fees, the "Insurance Obligations"), depending upon the type of policy and

claims involved.  As of the Petition Date, the Debtors do not believe that any prepetition Insurance Obligations are owed, but, out of an abundance of caution, seek authority to satisfy any such outstanding obligations.

14.     The foregoing Insurance Policies, Insurance Premiums, Insurance Obligations, and all other related obligations, contracts, and benefits are referred to collectively as the Debtors' "Insurance Program."

C.  The Debtors' Surety Bond Program

15.     In the ordinary course of business, the Debtors are required to provide various types of surety bonds (each a "Surety Bond," and collectively the "Surety Bonds") from surety providers (each, a "Surety Issuer," and collectively, the "Surety Issuers"). These Surety Bonds secure the Debtors' payment or performance of certain obligations owed to various third parties, including certain governmental units or other public agencies. Certain Surety Bonds are required by state agencies in order for the Debtors to maintain their state mortgage lender, broker, and originator licenses.

16.     To that end, to continue their business operations during these Chapter 11 Cases, the Debtors are required to provide financial assurance to state governments, government sponsored enterprises, regulatory agencies, and other third parties.  These obligations require the Debtors to maintain the existing Surety Bond Program, including satisfying applicable obligations thereunder, renewing and executing agreements, and related matters.  Failing to provide, maintain, or timely replace Surety Bonds could prevent the Debtors from performing essential operations.

17.     Enterprise Bank & Trust issued a letter of credit in the face amount of $1.15 million as collateral for the Surety Bonds issued by Liberty Mutual Insurance Company which, in turn, is secured by cash held in a restricted account at Enterprise Bank & Trust.  The Debtors have

significantly reduced the number of the outstanding Surety Bonds over the last 12 months and, as such, anticipate a corresponding reduction in the required letter of credit amount and a release of any over-collateralized cash held in connection with the letter of credit in late 2026.

18.     As of the date of this Motion, the Debtors have two (2) outstanding Surety Bonds, totaling $190,000. Premiums are generally determined annually and are paid by the Debtors when a bond is issued or renewed (the "Surety Bond Premiums"). The Debtors' annual Surety Bond Premiums for the two (2) Surety Bonds is approximately $1,500.  The Debtors pay Surety Bond Premiums indirectly to the Surety Issuer through Gallagher Mortgage Banking, as broker (the "Surety Broker").   In connection with the Surety Bond Program, the Debtors compensate the Surety Broker by paying negotiated annual fees as a percentage of the face amount of the bonds procured (the "Surety Broker Fees"). The Surety Broker Fees are remitted to the Surety Broker as a portion of the Surety Bond Premiums. Because the Surety Broker takes its fee from the Surety Bond Premiums described above, the Debtors do not believe that there are any additional prepetition obligations due and owing on account of the Surety Broker Fees.

19.     A schedule of the outstanding Surety Bonds is attached as **Exhibit D**.[4]  As of the Petition Date, the Debtors believe that no prepetition invoices are outstanding on account of the Surety Bond Program.  Nevertheless, out of an abundance of caution, the Debtors seek authority to satisfy any outstanding prepetition amounts related to the Surety Bond Program following the Petition Date (collectively, the "Surety Bond Obligations").

---

[4] The Debtors believe that **Exhibit D** is a complete list of the Surety Bonds.  However, to the extent that any Surety Bond has been omitted, or the Debtors obtain new Surety Bonds, the Debtors request that the relief sought herein apply to such Surety Bonds as well.

20.     The foregoing Surety Bonds, Surety Bond Premiums, the Surety Bond Obligations, and all other related obligations, contracts, and benefits are referred to collectively as the Debtors' "Surety Bond Program."

## IV.     RELIEF REQUESTED

21.     The Debtors seek entry of interim and final orders (substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, the "Interim Order" and "Final Order," respectively) (i) authorizing, but not directing, the Debtors to (a) continue to administer, and as applicable, renew, their Insurance Program and Surety Bond Program in the ordinary course of business in accordance with practices and procedures in effect prior to the Petition Date, and (b) pay and perform prepetition and postpetition Insurance Obligations and Surety Bond Obligations; and (ii) granting related relief.

22.     In addition, the Debtors request that the Court schedule a final hearing to consider approval of this Motion on a final basis.

## V.     BASIS FOR RELIEF

23.     The relief requested by this Motion is both common and necessary, as maintaining insurance is a requirement to operate in chapter 11.  In fact, § 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 3 (the "U.S. Trustee Guidelines").  Accordingly, the Debtors aver that it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all Insurance Obligations related to the

7

Insurance Policies and related financing agreements, and the Surety Bond Obligations related to the Surety Bond Program, and receive authority to supplement, amend, extend, renew, or replace their Insurance Policies and Surety Bonds as needed, in their judgment, without further order of the Court.

24.     Under § 363(b)(1), a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  Section 363(c)(1) authorizes a debtor-in-possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing." Maintenance of the Insurance Policies and Surety Bond Program, including payment of prepetition and postpetition Insurance Obligations, renewal of the Insurance Policies and Surety Bonds, and entry into new insurance arrangements, is within the ordinary course of the Debtors' business.

25.     Further, even if the continuation and/or renewal of the Insurance Policies and Surety Bonds is not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to § 363(b) represents a reasonable business judgment on the part of the debtor, such use should be approved. *See*, *e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to §363(b)).

26.     Moreover, § 105 and the "necessity of payment" doctrine further authorize payment of prepetition claims of those parties whose goods or services are critical to reorganization of the debtor's operations. *See*, *e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the railroad during reorganization, payment may be authorized even if it is made out of corpus."); *In re Columbia Gas Sys.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (stating that the necessity of payment doctrine is applicable where "payment is essential to continued operation of the business"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that §105(a) "provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of Delaware all accept the authority of the bankruptcy court "to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"). The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Accordingly, pursuant to §§ 105(a) and 363(b), this Court is empowered to grant the relief requested herein.

27.     The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Program and Surety Bond Program on an ongoing and uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under the Insurance Program and Surety Bond Program could result in one or more of the Insurance Carriers terminating the Debtors' existing policies, declining to renew the Debtors' policies, or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance

Program and/or Surety Bond Program are allowed to lapse without renewal, the Debtors could be exposed to substantial liability for damages to persons and property of the Debtors and others, which could negatively impact the value of the Debtors' estates. It could also impact their state and other licensures.  Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at what would likely be a significantly higher cost. Accordingly, the Debtors must meet all of the obligations with respect to the Insurance Program and Surety Bond Program.

28.    Indeed, courts in this district have routinely granted relief similar to that requested herein, including in "prepack" cases.  *See*, *e.g.*, *In re Mallinckrodt plc*, Case No. 23-11258 (JTD), Docket No. 264 (Bankr. D. Del. Sept. 15, 2023) (prepack case); *In re First Guaranty Mortgage Corporation*, Case No. 22-10584 (CTG), Docket No. 206 (Bankr. D. Del. Jul. 26, 2022); *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD), Docket No. 222  (Bankr. D. Del. Apr. 7, 2021); *In re Highpoint Resources Corp.*, Case No. 21-10565 (CSS), Docket No. 84 (Bankr. D. Del. Mar. 16, 2021) (prepack case); *In re Rentpath Holdings, Inc.*, Case No. 20-10312 (BLS), Docket No. 166 (Bankr. D. Del. Mar. 10, 2020).

29.    Accordingly, by this Motion, the Debtors seek authority pursuant to §§363(b) and 105(a) to honor the obligations set forth above and to continue their Insurance Program and Surety Bond Program without interruption, as such programs were in effect as of the Petition Date.[5]

---

[5] For the avoidance of doubt, nothing contained in this Motion or any actions taken pursuant to the relief requested is intended to or should be construed as (i) an admission as to the validity of any prepetition claim against the Debtors, (ii) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds, or (iii) a promise or requirement to pay any prepetition claim.

### VI.    COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

30.    The Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and 6004(h) is appropriate.

31.    Bankruptcy Rule 6003 provides:

Unless relief is needed to avoid immediate and irreparable harm, the court must not, within 21 days after the petition is filed, grant an application or motion to: . . . (2) use, sell, or lease property of the estate, including a motion to pay all or a part of a claim that arose before the petition was filed, [or] (3) incur any other obligation regarding the property of the estate . . . .

Fed. R. Bankr. P. 6003(a)(2), (a)(3).

32.    The Unted States Court of Appeals for the Third Circuit has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions.  In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See*, *e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See*, *e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

33.    As described above and in the First Day Declaration, continuing insurance coverage during these Chapter 11 Cases is necessary for the continuation of the Debtors' business operations. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' business operations at this critical juncture and add needless costs to the administration of these cases. As a result, the Debtors respectfully

submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

34.     The Debtors further seek a waiver of any stay of the effectiveness of the Order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors submit that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtors and their estates.

35.     Accordingly, the Debtors respectfully submit that the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

36.     Finally, should the Court be inclined to grant the Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## VII.     RESERVATION OF RIGHTS

37.     Nothing in the Proposed Orders or this Motion: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to § 365 or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any of the Insurance Carriers or other parties; or (iv) shall be construed as a promise to pay a claim. Likewise, any payment made pursuant to the Proposed Orders is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12

## VIII.    <u>NOTICE</u>

38.    Notice of this Motion shall be given to the following parties: (i) the Office of the United States Trustee; (ii) counsel for the Debtors' prepetition and postpetition lenders; (iii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iv) the Insurance Carriers; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion seeks "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## IX.    <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>**: (i) granting the relief requested herein and (ii) granting such other and further relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: April 26, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel:     (302) 652-4100
Email:   ljones@pszjlaw.com
         debertenthal@pszjlaw.com
         tcairns@pszjlaw.com

-and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:     (213) 623-9300
Email:   tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Tel:     (212) 768-6700
Email:   john.beck@dentons.com
         geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*