**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING, (II) ESTABLISHING PLAN AND DISCLOSURE STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED PROCEDURES, (III) APPROVING THE PREPETITION SOLICITATION PROCEDURES, (IV) APPROVING THE NOTICE OF COMMENCEMENT & CONFIRMATION HEARING NOTICE, AND FINDING NOTICE SUFFICIENT, (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI) WAIVING THE REQUIREMENT OF FILING SCHEDULES, STATEMENTS OF FINANCIAL AFFAIRS, RULE 2015.3 REPORTS AND SECTION 341 MEETING OF CREDITORS, AND (VII) GRANTING RELATED RELIEF**

Impac Mortgage Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this motion (the "Motion"), pursuant to §§ 105, 1107, 1108, 1125, 1126, 1128 and 1129 of chapter 11 of title 11 of the United States Code, §§ 101 et seq. (the "Bankruptcy Code").[2]  In support thereof, the Debtors rely upon the *Declaration of George A. Mangiaracina in Support of Chapter 11 Petitions and First Day Pleadings* filed contemporaneously herewith (the "First Day Declaration"), and respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] All references to 'section' or '§' herein pertain to the Bankruptcy Code.

1

## I.

## RELIEF REQUESTED

1.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting the following relief:

a.  scheduling a combined hearing (the "Confirmation Hearing") to consider (a) the adequacy of the *Disclosure Statement for the Prepackaged Chapter 11 Plan of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as amended, supplemented or otherwise modified from *time* to time, the "Disclosure Statement"), and (b) confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as amended, supplemented or otherwise modified from time to time, the "Plan") not less than 28 days after filing the Plan and Disclosure Statement;[3]

b.  establishing a deadline for objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving procedures and a deadline for the filing of a combined pleading in support of confirmation of the Plan and in reply to any objections to the Disclosure Statement or Plan (the "Reply Deadline");

c.  establishing a deadline to file a plan supplement (the "Plan Supplement Filing Deadline");

d.  approving the prepetition procedures regarding votes to accept or reject the Plan (the "Solicitation and Voting Procedures"), including the forms of Ballots (as defined below) and the Opt-In Release;

e.  approving the procedures and standard assumptions used for tabulating Ballots (as defined below) (the "Tabulation Procedures");

f.  approving the form of Ballots, substantially in the form attached to the Order as **Exhibits 1A** and **1B**, and the form of the Opt-In Release Form, substantially in the form attached to the Order as **Exhibit 2**;

g.  approving the form and manner of the notice of commencement of these Chapter 11 Cases, the Confirmation Hearing, and the Objection Deadline (the "Notice of Commencement & Confirmation Hearing Notice"), substantially in the form attached to the Order as **Exhibit 3**, and the form and manner of the publication of the Confirmation Hearing (the "Publication Notice"), substantially in the form attached to the Order as **Exhibit 4,** and not requiring

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings as ascribed to them in the Plan.

2

service of the Notice of Commencement & Confirmation Hearing Notice on the individuals that received notice of the Data Breach (as defined herein);

h. approving the forms of notices to be sent to counterparties to Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned pursuant to the Plan (an "Assumption Notice"), and the procedures, including the applicable objection deadline, for the assumption of executory contracts and unexpired leases under the Plan (the "Executory Contract Procedures"), substantially in the form attached to the Order as **Exhibit 5**;

i. conditionally directing the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") not to convene a meeting of creditors pursuant to § 341 of the Bankruptcy Code within seventy-five days of the Petition Date (as defined below);

j. conditionally waiving the requirements that the Debtors file schedules of assets and liabilities (the "Schedules"), the statements of financial affairs ("SOFAs"), and the initial reports of financial information with respect to which their chapter 11 estates hold a controlling interest, as set forth in Bankruptcy Rule 2015.3 (the "2015.3 Reports"); and

k. granting related relief.

2. In connection with the foregoing, the Debtors respectfully request that the Court approve the following schedule of proposed dates (the "Proposed Confirmation Schedule"), subject to the Court's availability.

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Voting Record Date[4] | April 22, 2026 | The date for determining (i) which holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan, opt-in to the Third-Party Release, and receive Solicitation Packages in connection therewith, (ii) which holders of Claims and Interests in the Non-Voting Classes are entitled to opt-in to the Third-Party Release, and (iii) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of the respective Claim. |

---

[4] The "Voting Record Date" is the date as of which a holder of record of a claim or interest entitled to vote on the Plan must have held such claim or interest to cast a vote to accept or reject the Plan.

| Event or Deadline | Date and Time | Description |
|---|---|---|
| Filing of Plan & Disclosure Statement | Petition Date | |
| Confirmation Hearing | Not less than 28 days after filing the Plan and Disclosure Statement | The date for the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement. |
| Publication Deadline | Two (2) business days following entry of the Confirmation Procedures Order Order (or as soon as reasonably practicable thereafter) | The last date by which the Debtors will submit the Notice of Commencement & Confirmation Hearing Notice in a format modified for publication. |
| Plan Supplement Filing Date | Not less than fourteen (14) days before the Confirmation Hearing | The date by which the Debtors shall file the Plan Supplement. |
| Confirmation Objection Deadline | Not less than seven (7) days (at 4:00 p.m. prevailing Eastern Time) before the Confirmation Hearing | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court and served so as to be **actually received** by the appropriate notice parties. |
| Opt-In Deadline | Not less than seven (7) days (at 4:00 p.m., prevailing Eastern Time) before the Confirmation Hearing | The deadline by which all opt-in forms (the "Opt-In Forms") must be properly executed, completed, and electronically submitted so that they are **actually received** by the Claims Agent. |
| Confirmation Brief and Plan and Disclosure Statement Objection Reply Deadline | Not less than 2 days in advance of the Confirmation Hearing | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan and deadline by which replies to objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court. |

## II.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4

5.      The bases for the relief requested are §§ 105, 1107, 1108, 1125, 1126, 1128 and 1129 of the Bankruptcy Code; rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and rules 2002-1, 3017-1, 9006-1, and 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

### III.

### BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtors each commenced a voluntary case for relief under chapter 11. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108.

7.      No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

8.      Additional information regarding the Debtors, including their businesses, and the events leading to the commencement of these Chapter 11 Cases, is set forth in the First Day Declaration filed concurrently herewith.

### IV.

### PREPACKAGED PLAN OVERVIEW

9.      As of the Petition Date, the Debtors continue to operate and focus on their pre-existing mortgage broker business. The Plan implements, among other things, primarily a balance sheet restructuring agreed upon by the Debtors, the Plan Sponsor (which is also the Debtors' largest and most senior prepetition secured creditor) and its affiliates, as well as holders of 100% of the

Debtors' subordinated notes. The Plan provides for recoveries to most classes of creditors, including general unsecured creditors.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Administrative Claims | Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Reorganized Debtors shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date; and (ii) the first Business Day after the date that is fifteen (15) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable. | Unclassified—not entitled to vote |
| Unclassified | DIP Claims | Proceeds of the Exit Loan Facility shall be used to refinance the DIP Claims on account of, in full and complete discharge of, and in exchange for, such DIP Claims. | Unclassified—not entitled to vote |
| Unclassified | Priority Tax Claims | Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, release and discharge of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim; or (b) such other treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code. | Unclassified—not entitled to vote |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| Unclassified | Professional Fee Claims | Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to the Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. | Unclassified— not entitled to vote |
| 1 | Priority Non-Tax Claims | The legal, equitable and contractual rights of the Holders of Allowed Class 1 Priority Non-Tax Claims are unaltered by the Plan. Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete satisfaction, release and discharge of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Non-Tax Claim becomes an Allowed Claim. | Unimpaired— deemed to accept the Plan, not entitled to vote |
| 2(a) | Enterprise Claims | The Enterprise Obligations will be Reinstated under the Plan, subject to a consensual five-year extension of the maturity date on the Enterprise Obligations. | Unimpaired— deemed to accept the Plan, not entitled to vote |
| 2(b) | Unimpaired Secured Claims | Each Holder of an Allowed Unimpaired Secured Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange | Unimpaired— deemed to accept the Plan, not entitled to vote |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| | | for, such Allowed Unimpaired Secured Claims, at the option of the Reorganized Debtors: (i) payment in full in Cash; (ii) the collateral securing its Allowed Unimpaired Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Unimpaired Secured Claim; or (iv) such other treatment rendering such Allowed Unimpaired Secured Claim unimpaired. | |
| 3 | Senior Indebtedness Claims | Each Holder of an Allowed Senior Indebtedness Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Senior Indebtedness Claim, its pro rata share of the Plan Sponsor Common Stock on the terms set forth in Section 5.2(b) of the Plan. | Impaired – entitled to vote |
| 4 | Subordinated Notes Claims | Each Holder of a Subordinated Notes Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Subordinated Notes Claims, its pro rata share in the Contingent Payment Certificate. | Impaired – entitled to vote |
| 5 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive on account of, in full and complete satisfaction, release and discharge of, and in exchange for its Allowed General Unsecured Claim, a Pro Rata share of the GUC Consideration after payment in full of all GUC Expenses. | Impaired – deemed to reject |
| 6 | Intercompany Claims | On the Effective Date, each Intercompany Claim shall, at the option of the applicable Debtor or Reorganized Debtor, be adjusted, Reinstated, or canceled and released without any distribution; except as necessary or appropriate for tax efficiency; | Impaired – deemed to reject |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| | | provided, however, that no Distribution will be in Cash. | |
| 7 | 510(b) Claims | 510(b) Claims are Impaired and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. On the Effective Date, each 510(b) Claim shall be canceled, released and discharged and the Holders of such 510(b) Claims shall receive no distribution on account of such 510(b) Claims. Accordingly, Holders of 510(b) Claims are not entitled to vote to accept or reject the Plan. | Impaired – deemed to reject |
| 8(a) | Interests in Impac | All Interests in Impac will be cancelled, released, and extinguished, and will be of no further force or effect, and the Holders of Interests in Impac will receive no distribution on account of such Interests. | Impaired – deemed to reject |
| 8(b) | Interests in Debtor Subsidiaries | On the Effective Date, Interests in the Debtor Subsidiaries shall be Reinstated without any distribution. | Unimpaired – deemed to accept |

10.     Based on the foregoing, the Debtors solicited votes to accept or reject the Plan from holders of Claims in Classes 3 and 4 (the "Voting Classes"). The Debtors did not solicit votes from holders of Claims and Interests in Classes 1, 2(a), 2(b), 5, 6, 7, 8(a), and 8(b) (each a "Non-Voting Class" and collectively, the "Non-Voting Classes") because they are either unimpaired and deemed to accept the Plan, or impaired and deemed to reject or accept the Plan, as applicable. The Debtors were not required to solicit votes from the Non-Voting Classes under § 1126.

11.     The Proposed Confirmation Schedule above sets forth the timetable for the Chapter 11 Cases, including with respect to the solicitation, confirmation, and consummation of the Plan. The Debtors respectfully submit that the timetable in the Proposed Confirmation Schedule will

allow the Debtors to move through the Chapter 11 Cases to an expeditious resolution and support the continued operation of the Debtors' businesses as a going concern.

12. The Debtors submit that confirming the Plan on the Proposed Confirmation Schedule is in the best interests of the Debtors, their estates, and all stakeholders; accordingly, the Motion should be approved.

## V.

## BASIS FOR RELIEF

## A.    THE COURT SHOULD APPROVE THE DISCLOSURE STATEMENT AT THE CONFIRMATION HEARING.

13. Pursuant to § 1126(b)(2), the acceptance or rejection of a plan may be solicited from a holder of a claim or interest if the solicitation was commenced prior to the commencement of the bankruptcy case and was in compliance with any applicable nonbankruptcy laws, rules, or regulations governing the adequacy of disclosure of such solicitation. If no such law, rule, or regulation exists, the solicitation is valid if it provided adequate information as defined in § 1125(a). *See* 11 U.S.C. §§ 1125(a)(1) (defining "adequate information"); 1126(b)(2). As set forth more fully below, the Debtors' solicitation of acceptances with respect to the Plan complies with applicable nonbankruptcy law, which does not impose restrictions on solicitation. Accordingly, at the Confirmation Hearing, the Debtors will request that the Court find the Disclosure Statement contains "adequate information" as defined in § 1125(a).

14. As will be demonstrated at the Confirmation Hearing, the Disclosure Statement contains "adequate information" as defined in § 1125(a) because it is both extensive and comprehensive and includes sufficient detail for a Holder of a Class 3 or Class 4 Claim to make an informed decision concerning whether to vote to accept or reject the Plan. Specifically, while the determination of what constitutes "adequate information" is based upon the facts and

circumstances of each case, the critical focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here. *See* 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records[...]."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

15.     Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Voting Procedures and Requirements | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | § 3 |
| Confirmation Procedures | Confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | § 3 |
| Feasibility Analysis | An overview of the Debtors' ability to meet their respective obligations under the Plan. | § 3 |
| Business Overview and Debtors' Corporate and Capital Structure | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | § 4 |

11

| | | |
|---|---|---|
| Overview of Anticipated Chapter 11 Cases, including Circumstances Leading to These Chapter 11 Cases | An overview of (i) the prepetition challenges faced by the Debtors' business, the Debtors' response thereto, and the Debtors' efforts to continue operations while developing the Plan; and (ii) anticipated events during the Chapter 11 Cases. | §§ 4, 5 |
| Certain Factors to be Considered | An overview of certain risks associated with the Debtors' business, the Plan, and the Effective Date Transactions contemplated thereunder, forward-looking statements within the Disclosure Statement, and an overall disclaimer regarding the information provided in the Disclosure Statement. | § 13 |
| Certain Securities Laws Matters | A description of the applicability of § 1145 of the Bankruptcy Code and the issuance of new equity interests pursuant to the Plan. | § 14 |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | § 15 |
| Conclusion and Recommendation | A recommendation by the Debtors to Holders of Claims in the Voting Classes to vote to accept the Plan. | § 18 |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit B |
| Financial Projections | An overview of the Debtors' financial projections for the next [31 months]. | Exhibit C |
| Corporate Organizational Chart | A chart depicting the organizational structure of the Debtors. | Exhibit D |

16.    In addition, the Disclosure Statement and the Plan were subject to extensive review and comment by the members of the Voting Classes, who are also the Plan Sponsor or affiliates thereof. Moreover, each of the Voting Classes has affirmatively voted to accept the Plan. Accordingly, the Debtors submit that the Disclosure Statement contains adequate information

within the meaning of § 1125(a) of the Bankruptcy Code and request that it be approved at the Confirmation Hearing.

B.   **THE COURT SHOULD APPROVE THE PROPOSED CONFIRMATION SCHEDULE AND PROPOSED CONFIRMATION HEARING AND NOTICE.**

17.   **The Court Should Approve a Combined Hearing**. The Court may combine the hearing on the adequacy of the disclosure statement with the confirmation hearing and the Debtors' request for a combined hearing is consistent with the practice for prepackaged cases and will facilitate an expeditious and efficient reorganization that will promptly permit the Debtors to emerge from Chapter 11. *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing); *see also In re iRobot Corp.,* No. 25-12197 (BLS) (Bankr. D. Del. Dec. 14, 2025) (approving combined confirmation and disclosure statement hearing on prepackaged plan); *In re Wag Group, Co.*, No. 25-11358 (TMH) (Bankr. D. Del. Jul. 21, 2025) (same); *In re Wheel Pros, LLC.*, No. 24-11939 (JTD) (Bankr. D. Del. Sept. 8, 2024) (same); *In re Novation Companies Inc.*, No. 23-11153 (JTD) (Bankr. D. Del. Oct. 6, 2023) (same); *In re Adara Enterprises Corp.*, No. 21-10736 (JKS) (Bankr. D. Del. Apr. 27, 2021) (same); *In re Ferrellgas Partners, L.P.*, No. 21-0021 (MFW) (Bankr. D. Del. Jan. 13, 2021) (same).

18.   The Debtors seek a Confirmation Hearing to consider approval of the Disclosure Statement and confirmation of the Plan, to be held, subject to the Court's availability, not less than 28 days after filing the Plan and Disclosure Statement.

19.   The Debtors submit that a combined hearing on the Disclosure Statement and Plan would promote judicial economy and expedite the reorganization of the Debtors for the benefit of their economic stakeholders, vendors, customers, and employees.

20.     Accordingly, the Debtors request that the Court schedule a single Confirmation Hearing to consider the Disclosure Statement and Plan. In so doing, the Court will enable the Debtors to minimize the adverse effects that the chapter 11 filings might have on the Debtors' business and going-concern value, as other courts in this district have acknowledged by granting similar relief.

21.     **The Court Should Approve the Proposed Schedule for the Confirmation Hearing**. Bankruptcy Rules 2002(b) and 3017(a) require that the Debtors provide twenty-eight (28) days' notice by mail to all creditors, equity security holders, and other parties in interest of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to this Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1). Section 1128(a) further provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Local Rule 3017-1 provides that "[u]nless ordered otherwise, the notice served under Fed. R. Bankr. P. 2002(b) and 3017 must provide at least 35 days' notice of the disclosure statement hearing and at least 28 days' notice of the deadline to object to approval of the disclosure statement." Local Rule 3017-1. Additionally, § 105(d)(2)(B)(vi) permits the Court to combine the hearing on the adequacy of a disclosure statement with the hearing on confirmation of the related plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi).

22.     The Debtors respectfully submit that it is appropriate to set the Confirmation Hearing, subject to the Court's availability, as not less than 28 days after filing the Plan and Disclosure Statement, for at least three reasons. First, the milestones set forth in the DIP facility documents require the Debtors to seek a combined hearing on the Plan and Disclosure Statement and obtain confirmation of the Plan on or before 45 days from the Petition Date (*i.e.*, by June 10, 2026), and to substantially consummate the Plan on or before 60 days from the Petition Date (*i.e.*,

by June 25, 2026). The Debtors therefore request that the Court set the date for the Confirmation Hearing as not less than 28 days after filing the Plan and Disclosure Statement (or as soon thereafter as possible) to enable the Debtors to meet the deadlines set forth in the DIP Credit Agreement.

23.     Second, the proposed scheduling is appropriate because the Debtors have already substantially completed one of the most significant and complex tasks required to effectuate a successful reorganization—the negotiation, formulation, and solicitation of a consensual joint chapter 11 plan of reorganization. Specifically, the Debtors distributed the Solicitation Packages to the Voting Class on April 24, 2026. The Disclosure Statement contained in the Solicitation Package notified parties of a projected hearing date to consider the adequacy of the information in the Disclosure Statement and confirmation of the Plan once these Chapter 11 Cases were commenced. Therefore, each Holder of Impaired Claims received at least 28 days' notice of the proposed Confirmation Hearing, and, significantly, all Holders of Claims entitled to vote have already submitted Ballots accepting the Plan, evidence that sufficient notice was actually received by all impacted stakeholders. The Debtors have received sufficient votes in favor of the Plan from the Voting Classes to confirm the Plan, consistent with § 1126(c). Accordingly, no party should require additional time, and there is no reason to delay consideration of the adequacy of the Disclosure Statement and confirmation of the Plan.

24.     Third, a combined hearing on the Disclosure Statement and Plan will allow the Debtors to effectuate their restructuring expeditiously, preserve and maximize value for all parties, and ensure minimal disruption to the Debtors' businesses. The proposed schedule will serve to minimize administrative expenses—thereby benefiting parties in interest in the Chapter 11 Cases, which is the hallmark of a prepackaged plan of reorganization.

25.    Courts in this and other districts have routinely permitted combined hearings in similar fashion in other prepackaged chapter 11 cases. *See, e.g., In re iRobot Corp.,* No. 25-12197 (BLS) (Bankr. D. Del. Dec. 14, 2025) (scheduling a combined hearing 39 days from petition date); *In re Wag Group, Co.*, No. 25-11358 (TMH) (Bankr. D. Del. Jul. 21, 2025) (scheduling a combined hearing 40 days from petition date); *In re Wheel Pros, LLC.*, No. 24-11939 (JTD) (Bankr. D. Del. Sept. 8, 2024) (scheduling a combined hearing 37 days from petition date); *In re Ferrellgas Partners, L.P.*, No. 21-0021 (MFW) (Bankr. D. Del. Jan. 13, 2021) (scheduling a combined hearing 39 days from petition date); *In re Pa. Real Estate Inv. Tr.*, No. 20-12737 (KBO) [D.I. 83] (Bankr. D. Del. Nov. 3, 2020) (scheduling a combined hearing 23 days from petition date); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019) (scheduling a combined hearing 15 days from petition date); *In re Joerns Woundco Holdings, Inc.*, No. 19-11401 (JTD) [D.I. 66] (Bankr. D. Del. June 26, 2019) (scheduling a combined hearing 31 days from petition date); *In re Arsenal Energy Holdings LLC*, No. 19-10226 (BLS) [D.I. 30] (Bankr. D. Del. Feb. 6, 2019) (scheduling a combined hearing 9 days from petition date); *In re Rand Logistics, Inc.*, No. 18-10175 (BLS) [D.I. 47] (Bankr. D. Del. Jan. 31, 2018) (scheduling a combined hearing 29 days from petition date).

26.    The Debtors also request that the Court set the Objection Deadline for filing responses or objections to approval of the Disclosure Statement or confirmation of the Plan as 4:00 p.m. (prevailing Eastern Time) no less than seven (7) days before the Confirmation Hearing. The proposed Objection Deadline will provide holders of Claims and Interests with sufficient notice of the deadline, while still affording the Debtors and any parties in interest time to file a reply brief and attempt to consensually resolve as many of those objections as possible.

27.    The Debtors further request that the Court require any responses or objections to either approval of the Disclosure Statement or confirmation of the Plan to: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (iv) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to either the Disclosure Statement or Plan that would resolve such objections; and (v) be filed with the Court with proof of service thereof and served on the following parties (the "Notice Parties") so as to be actually received by the Objection Deadline. The Notice Parties are: (a) the Debtors, 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612 (*Attn*: Joe Joffrion, joe.joffrion@impacmail.com); (b) proposed counsel for the Debtors, (i) Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron, tania.moyron@dentons.com, and Van C. Durrer II, van.durrer@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones, ljones@pszjlaw.com, David M. Bertenthal, debertenthal@pszjlaw.com, and Timothy Cairns, tcairns@pszjlaw.com); (c) counsel for the Plan Sponsor, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020 (Attn: Daniel B. Besikof, dbesikof@lowenstein.com) and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Curtis S. Miller, cmiller@morrisnichols.com); (d) the Office of the United States Trustee for the District of Delaware (Attn: [•]); and (e) any other party entitled to notice under Bankruptcy Rule 2002.

28.    In addition, the Debtors request that they (and other parties that support the Plan, including the Plan Sponsor) be permitted to file a combined brief in support of confirmation of the Plan and final approval of the Disclosure Statement, as well as replies to any objections or

responses to approval of the Disclosure Statement and/or confirmation of the Plan received by the Objection Deadline until not less than two (2) days in advance of the Confirmation Hearing.

29.     Given the circumstances of the Chapter 11 Cases, the relief requested herein is appropriate and consistent with Bankruptcy Rule 9006(c)(1). The relief requested will assist the Debtors in moving toward expeditious confirmation of the Plan and implementation of the transactions contemplated thereby, with the least possible disruption or harm to their businesses, for the benefit of all stakeholders.

30.     **The Court Should Approve the Form and Manner of Notice of the Confirmation Hearing**. A debtor is typically required to provide notice of a hearing to consider the adequacy of the disclosure statement and a hearing to consider confirmation of a plan to all creditors, equity security holders, and the U.S. Trustee. *See* Bankruptcy Rules 2002(b), 3017(d). Additionally, Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors. Fed. R. Bankr. P. 2002(f)(1). Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders. Fed. R. Bankr. P. 2002(d).

31.     To reduce administrative costs and expedite the Debtors' restructuring, the Debtors are seeking this Court's approval to serve the Notice of Commencement & Confirmation Hearing Notice to all creditors, equity security holders, and the office of the United States Trustee for Region 3 (the "U.S. Trustee"). The Debtors request approval of the Notice of Commencement & Confirmation Hearing Notice, substantially in the form attached to the Order as **Exhibit 3**, and the Publication Notice, substantially in the form attached to the Order as **Exhibit 4**.

32.     In accordance with Bankruptcy Rules 2002 and 3017(d), the Notice of Commencement & Confirmation Hearing Notice will: (a) provide notice of the commencement of

these Chapter 11 Cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Confirmation Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide instructions for obtaining copies of the Disclosure Statement and Plan.

33. The Notice of Commencement & Confirmation Hearing Notice will be served upon all known Holders of Claims against or Interests in the Debtors, which service will occur no later than three (3) business days following entry of the Order, or as soon as reasonably practicable thereafter. The Notice of Commencement & Confirmation Hearing Notice likewise will be served upon both the Voting Classes and Non-Voting Classes.

34. In addition, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtors request that the Court authorize them, in their sole discretion, to provide the Publication Notice as soon as reasonably practicable following the entry of the Order in the *Wall Street Journal* to inform (a) those creditors who are unknown to, or not reasonably ascertainable by, the Debtors and (b) those creditors with potential claims unknown to the Debtors. *See* Fed. R. Bankr. P. 2002(l). In addition, the Debtors will cause the Notice of Commencement & Confirmation Hearing Notice to be posted electronically on the case website maintained by the Claims Agent.

35. To provide another layer of notice to parties in interest in the Chapter 11 Cases, the Debtors will post to the Claims Agent's website various chapter 11 documents, including the following: (i) the Plan; (ii) the Disclosure Statement (with all exhibits); (iii) this Motion and any orders entered in connection with this Motion; and (iv) the Notice of Commencement & Confirmation Hearing Notice.

36.     Therefore, the Debtors respectfully submit that the proposed service of the Notice of Commencement & Confirmation Hearing Notice will provide sufficient notice to all parties in interest in the Chapter 11 Cases of the commencement of such cases, the date, time, and place of the Confirmation Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan.

37.     With respect to the data breach in 2024 (the "Data Breach") disclosed in the Debtors' Disclosure Statement at page 30, the Debtors propose to include information about these Chapter 11 Cases on the website that Cyberscout maintains with respect to the Data Breach and the Debtors will include information about Cyberscout's services for the Debtors on the website that the Debtors' Claims Agent will maintain regarding the Chapter 11 Cases. As the Debtors already provided impacted individuals with direct personal notice of the Data Breach, as well as an opportunity to participate in a free credit monitoring, it would be redundant, unduly burdensome and prohibitively expensive for the Debtors to provide such parties with additional notice other than that proposed herein on the various website and that already received regarding the Data Breach. The Debtors will continue to honor the Cyberscout creditor monitoring.  Consequently, the Debtors respectfully request that the Court find that such notice is sufficient.

**C.      THE COURT SHOULD APPROVE THE SOLICITATION PROCEDURES.**

38.     Section 1126(f) states that "a class that is not impaired under a plan . . . [is] conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f). Additionally, § 1126(g) states that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." *Id.* § 1126(g).

39.     As set forth above, the Plan provides that Classes 1, 2(a), 2(b) and 8(b) are unimpaired (the "Unimpaired Classes"). Pursuant to § 1126(f), the Holders of Claims or Interests in each of the Unimpaired Classes are conclusively presumed to have accepted the Plan and thus are not entitled to vote. Accordingly, the Debtors have not solicited votes from such Holders. Nor have the Debtors solicited votes from Holders of Claims or Interests in Classes 5, 6, 7 and 8(a) (the "Rejecting Classes"), which are deemed to reject the Plan. *See* 11 U.S.C. §1126(g). It would have been unnecessarily expensive and burdensome to solicit votes from Class 5 both on a substantive basis and due to the additional month delay necessary to solicit votes from Class 5, which would have exacerbated the Debtors' already tight liquidity constraints. Specifically, although the bulk of the Debtors' restructuring transaction focuses on claims against the Debtors for borrowed money, all of which are held by the Plan Sponsor, its affiliates, or entities under common ownership with the Plan Sponsor, there was no exemption available for the prepetition solicitation of holders of claims in Class 5. Under such circumstances, bankruptcy courts  often approve the deemed rejection of similar classes even where the class is intended to receive a modest distribution under a plan, as is the case here. *See In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Nov. 19, 2025) (approving plan providing that claims in class 8 were deemed to reject and not entitled to vote even where holders would receive a distribution, to the extent funds were available, from the 'equity liquidating trust interests'); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D. N.J. May 30, 2024) (approving plan where two classes were not entitled to vote, deemed to accept or reject plan, and if deemed to reject, each class may have been "set off, settled, or distributed" as applicable); *In re W.E. Parks Lumber Co., Inc.*, 19 B.R. 285, 290 (Bankr. W.D. La. 1982) (approving plan where class was receiving value but was not entitled to vote).

40. With respect to the Unimpaired Classes and the Rejecting Classes, the Solicitation Procedures undertaken by the Debtors and described herein comply with the Bankruptcy Code and should be approved. The Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these classes at the Confirmation Hearing.

41. **<u>Solicitation of Voting Classes</u>**. Section 1126(b) expressly permits a debtor to solicit votes from holders of claims or interests prepetition and without a court-approved disclosure statement if the solicitation complies with applicable non-bankruptcy law—including generally applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited holders receive "adequate information" within the meaning of § 1125(a). *Id.* § 1126(b).

42. The Debtors commenced solicitation of the Voting Classes prior to the Petition Date in accordance with the Solicitation Procedures described herein, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Specifically, on April 24, 2026, the Debtors distributed solicitation packages via e-mail (the "<u>Solicitation Packages</u>") to the Holders of Class 3 and Class 4 Claims. Each Solicitation Package included (i) the Plan, (ii) the Disclosure Statement, together with the exhibits thereto, and (iii) Ballots in the form attached to the Order at **<u>Exhibits 1A</u>** and **<u>1B</u>** (the "<u>Ballots</u>").

43. The Solicitation Packages clearly disclosed the Debtors' expectations and intentions to: (a) commence the Chapter 11 Cases; (b) request that the Court approve the Solicitation Procedures as set forth in the Disclosure Statement, including setting April 20, 2026, at 4:00 p.m. (prevailing Eastern Time) as the Voting Deadline; (c) request that the Court set an Objection Deadline; and (d) request that the Court set a Confirmation Hearing. Holders in the Voting Classes that received the Solicitation Package were directed in the Disclosure Statement and applicable Ballot to follow the instructions contained therein (and described in the Disclosure

Statement) to complete and submit their Ballots to cast a vote to accept or reject the Plan. Each

Holder was informed in the Disclosure Statement and applicable Ballot that such Holder needed

to submit its Ballot so that it was actually received by the Debtors (with a copy to the Claims

Agent) on or before the Voting Deadline in order to be counted. Holders of Claims and Interests

in Classes presumed to accept the Plan under § 1126(f), or deemed to reject the Plan under

§ 1126(g), were not provided a Solicitation Package.

44.     As described above, the Debtors distributed the Solicitation Packages and solicited

votes to accept or reject the Plan prior to the Petition Date in accordance with §§ 1125 and 1126

of the Bankruptcy Code. *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to

filing chapter 11 petitions); 11 U.S.C. § 1126(b) (holders of claims or interests that accepted or

rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the

plan so long as the solicitation provided adequate information).

45.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders

of claims and interests for the purpose of soliciting their votes to accept or reject a plan of

reorganization. Bankruptcy Rule 3017(e) provides that "the court must . . . determine the adequacy

of the procedures for sending the documents and information listed in (d)(1) to beneficial holders

of stock, bonds, debentures, notes, and other securities; and issue any appropriate orders." Fed. R.

Bankr. P. 3017(e). As set forth herein, the Solicitation Procedures comply with the Bankruptcy

Code and the Bankruptcy Rules. Accordingly, the Debtors seek approval of such Solicitation

Procedures.

46.     Indeed, similar procedures have been approved in other chapter 11 cases in this

District. *See*, *e.g.*, *In re View, Inc.*, No. 24-10692 (CTG) [D.I. 201] (Bankr. D. Del. May 20, 2024)

(approving solicitation procedures and deadlines similar to those utilized here); *In re Secure Home*

*Holdings LLC*, No. 21-10745 (JKS) [D.I. 170] (Bankr. D. Del. May 25, 2021) (same); *In re TNT Crane & Rigging, Inc.*, Case. No. 20-11882 (BLS) [D.I. 71] (Bankr. D. Del. Aug. 25, 2020) (same); *In re Pace Industries*, No. 20-10927 (MFW) [D.I. 79] (Bankr. D. Del. Apr. 15, 2020) (same).

47. **Voting Record Date**. Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b). The Disclosure Statement and the Ballots clearly identify April 22, 2026, as the Voting Record Date, or the date for determining which Holders of Claims in the Voting Classes were entitled to vote to accept or reject the Plan. The Ballots also require each Holder completing a Ballot to certify the amount of its Claim as of the Voting Record Date.

48. **Plan Distribution and Voting Deadline**. Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are only valid if the plan was transmitted to substantially all the holders of claims or interests in the same voting class, the time for voting was not unreasonably short, and the solicitation complied with § 1126(b) of the Bankruptcy Code. The Solicitation Packages were distributed to all Holders of Claims in the Voting Classes on April 24, 2026. As clearly set forth in the Disclosure Statement and the Ballots, the Voting Deadline is April 24, 2026, at 4:00 p.m. (*prevailing* Eastern Time).

49. As the Voting Classes had approximately 1 day to review the materials, the Debtors respectfully submit that the Holders of Claims in the Voting Classes had adequate time to consider the Plan and the Disclosure Statement and submit a Ballot before the Voting Deadline. The Debtors further submit that the Holders of Claims in the Voting Classes are sophisticated market participants, represented by sophisticated counsel, and/or are able to evaluate the merits of the

Plan. Moreover, the actions proposed in the Plan are the product of extensive arm's-length negotiations among the Debtors and members of the Voting Classes, who also constitute the Plan Sponsor, affiliates thereof, or entities under common ownership with the Plan Sponsor prior to the commencement of solicitation, and that the Plan and Disclosure Statement were subject to review and comment by representatives of such parties. Thus, the Debtors respectfully submit that the voting period in the Solicitation Procedures satisfies the minimum voting period and that Holders of Claims in the Voting Classes have had adequate time to consider the Plan and Disclosure Statement and submit an applicable Ballot before the Voting Deadline. Additionally, the voting period was agreed to by 100% of the holders of all Voting Classes, and all such holders agree that such period was not "unreasonably short" as contemplated by Rule 3018(b)(2)(B).

50.    **The Ballots, Solicitation Package, Additional Materials, and Transmittal Thereof**. Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection must . . . be in writing; identify the plan or plans [accepted or rejected]; be signed by the creditor or equity security holder—or an authorized agent; and conform to Form 314." Fed. R. Bankr. P. 3018(c).

51.    The Debtors caused the Solicitation Packages to be transmitted to Holders of Class 3 and Class 4 Claims on April 24, 2026. The Solicitation Packages contained the Ballots and the Disclosure Statement with the exhibits thereto (which include the Plan, the Financial Projections, the Feasibility Analysis, and the Liquidation Analysis). The Debtors believe that providing electronic delivery of the Solicitation Packages has provided the most effective and efficient means to provide notice to each Holder of Class 3 and Class 4 Claims.

25

52.     The Ballots used in the Solicitation Packages are based on Official Form No. 314 and have been modified, as applicable, to address the particular circumstances of the Chapter 11 Cases to include certain information that the Debtors believe is relevant and appropriate for Holders of Claims and Interests entitled to vote to accept or reject the Plan. *See* Fed. R. Bankr. P. 3017(d). The forms of the Ballots used in the solicitation are attached as **Exhibits 1A** and **1B** to the Order. The Debtors respectfully submit that each form of Ballot complies with the Bankruptcy Rules and, therefore, should be approved.

53.     **Vote Tabulation**. The Bankruptcy Code states that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c); *see also* Fed. R. Bankr. P. 3018(a).

54.     The Debtors request that the Court approve the Tabulation Procedures, which include the following standard assumptions to tabulate the Ballots, subject to the Debtors' right to waive any of the below specified requirements for the completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:[5]

| | |
|---|---|
| **Votes Not Counted** | • Any Ballot that partially rejects and partially accepts the Plan. <br><br> • Any Ballot not marked to accept or reject the Plan, or any Ballot marked both to accept and reject the Plan. <br><br> • Any unsigned Ballot or Ballot lacking an original signature. |

---

[5] The Claims and Notice Agent will file a declaration regarding the solicitation of votes and tabulation of Ballots cast with respect to the Plan (the "Voting Report"). The Voting Report shall, among other things, set forth any aggregation of votes, as well as delineate every Ballot that did not conform to the voting instructions or that contained any form of irregularity, including, but not limited to, those Ballots that were late, (in whole or in material part) illegible, unidentifiable, lacking signatures, lacking necessary information, received via facsimile, or damaged (collectively, in each case, the "Irregular Ballots"). The Voting Report shall indicate the Debtors' intentions with regard to each Irregular Ballot.

|  | |
|---|---|
|  | • Any Ballot that was illegible or contained insufficient information to permit identification of the Holder of the Claim.<br><br>• Ballots sent to the Debtors, the Debtors' agents, or the Debtors' financial or legal advisors.<br><br>• Ballots sent by facsimile or email.<br><br>• Any Ballot cast by a Person or Entity that did not hold a Claim in a Class entitled to vote on the Plan.<br><br>• Any Ballot submitted by any Person or Entity not entitled to vote pursuant to the Solicitation Procedures. |
| **No Vote Splitting** | • Holders were required to vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and were not permitted to split any votes. |
| **Vote Aggregation** | • Separate Claims held by a single creditor in a particular Class may have been aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim were treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities, including any funds or accounts advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims were not aggregated and were not treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity or managed fund or account was counted separately as a vote to accept or reject the Plan. |

55.     As described above, the Debtors used standard tabulation procedures in tabulating votes and the proposed Tabulation Procedures are consistent with those previously approved in cases in this District. *See*, *e.g.*, *In re View, Inc.*, No. 24-10692 (CTG) [D.I. 201] (Bankr. D. Del. May 20, 2024) (approving tabulation procedures similar to those utilized here); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) [D.I. 170] (Bankr. D. Del. May 25, 2021) (same); *In re Pennsylvania Real Estate Investment Trust*, No. 20-12737 [D.I. 83] (Bankr. D. Del. Nov. 3, 2020) (same); *In re Pyxus Int'l, Inc.*, No. 20-11570 (LSS) [D.I. 83] (Bankr. D. Del. June 17, 2020) (approving vote tabulation procedures substantially similar to those utilized here); *In re Anna*

*Holdings, Inc.*, No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC,* No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019) (same). These procedures are consistent with § 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).

56.     **Approval of the Opt-In Release Form**. The Debtors have proposed third-party releases that are strictly consensual and will bind only those parties that affirmatively opt in to such releases. Accordingly, the proposed releases comply with the formulation recognized as permissible under *Harrington v. Purdue Pharma L.P.*, which held that the Bankruptcy Code does not authorize a bankruptcy court to approve non-consensual releases or injunctions that extinguish claims against non-debtor third parties without the consent of the affected claimants. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 215 (2024). Because the releases here require express, affirmative consent, they do not implicate the concerns identified in *Purdue* and are properly included in the Debtors' proposed voting procedures. *See id.*; *see also In re Smallhold, Inc.*, 665 B.R. 704, 717 (Bankr. D. Del. 2024) ("As a general proposition, creditors must affirmatively express consent to the release in order to be bound by it.").

57.     The Opt-In Release Form affords parties in interest a clear and affirmative opportunity to elect whether they wish to grant the third-party releases. The form is structured to require an express, voluntary indication of consent and does not presume acceptance through inaction. The notices and descriptions of the applicable releases are prominently displayed, written in plain and conspicuous language, and specifically designed to stand out so that recipients are fully informed of the nature and consequences of granting such releases. The ballot materials clearly explain that granting the release is optional and that a holder's decision whether or not to opt in will not affect the allowance of its Claim or its entitlement to distributions under the Plan.

58.     The Debtors respectfully submit that the Opt-In Release Form, substantially in the form attached to the Order as **Exhibit 2**, provides adequate and appropriate notice, satisfies the requirements of the Bankruptcy Rules, and comports with applicable law governing consensual third-party releases.[6] Because the form ensures that any release is the product of an informed and affirmative election, the Debtors submit that it is procedurally proper and should be approved.

59.     **Inapplicability of or Exemption from Nonbankruptcy Registration and Disclosure Requirements**. The Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

11 U.S.C. § 1125(g).

60.     It further provides, in § 1126, that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

*Id*. at § 1126(b).

61.     The Debtors believe that the issuance of Plan Sponsor Common Stock will be an issuance of "securities" as defined in the Securities Act, § 101, and any applicable state securities laws (the latter, "Blue Sky Laws"). The Debtors further believe that the issuance of Plan Sponsor Common Stock will be exempt from federal and state securities registration under the Securities Act, the Bankruptcy Code, and applicable Blue Sky Laws because it complies with applicable

---

[6] The law regarding permissible releases after the Purdue decision continues to evolve. The adoption of an "opt-in" mechanic in the Chapter 11 Cases shall not be deemed an admission or commentary on alternative approaches in future chapter 11 cases.

bankruptcy and non-bankruptcy laws. The Securities Act, at § 77d(a)(2), provides that the registration requirements of the Securities Act do not apply to "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2); *see also* 11 U.S.C. § 1145(a)(1) (exempting securities issued under a plan of reorganization by a debtor or its successor). Prepetition solicitation must either comply with generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under § 1125 of the Bankruptcy Code.

62. The prepetition solicitation of votes on the Plan is exempt from registration under the Securities Act and Blue Sky Laws, including, without limitation, 15 U.S.C. § 77f and similar Blue Sky Laws, and any similar rules, regulations, or statutes. The Debtors are issuing securities under a Plan. Further, the Debtors do not have any contract, arrangement, or understanding relating to, and will not, directly or indirectly, pay any commission or other remuneration to any broker, dealer, salesperson, agent, or other person for soliciting votes to accept or reject the Plan, and no broker, dealer, salesperson, agent, or any other person is engaged or authorized to express any statement, opinion, recommendation, or judgment with respect to the relative merits and risks of the Plan. Accordingly, the Debtors' solicitation of votes to accept or reject the Plan is exempt from the registration requirements of the Securities Act and any otherwise applicable Blue Sky Laws.

63. Debtors frequently rely on § 77d(a)(2) of the Securities Act to exempt the prepetition solicitation of votes on a plan from the registration and disclosure requirements of the Securities Act and Blue Sky Laws. *See, e.g., In re 2U, Inc.*, No. 24-11279 (MEW) (Bankr. D. Del. Sept. 9, 2024); *In re View, Inc.*, No. 24-10692 (CTG) (Bankr. D. Del. May 15, 2024); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Feb. 23, 2021); *In re Key Energy Servs., Inc.*, No. 16-

12306 (BLS) (Bankr. D. Del. Oct. 25, 2016); *In re Physiotherapy Holdings, Inc., et al.*, No. 13-12965 (Bankr. D. Del. Nov. 14, 2013); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013).

64.    Therefore, the Debtors submit that the requirements of § 1126(b)(1) are inapplicable to the Debtors' prepetition solicitation. As discussed more fully below, the Debtors will seek a determination from the Court at the Confirmation Hearing that all solicited Holders received "adequate information" as defined by § 1125(a) and in accordance with § 1126(b)(2).

65.    **Waiver of Certain Solicitation Package Mailing Requirements**. The Debtors respectfully request that the Court waive the requirement that they mail a copy of the Solicitation Package to Non-Voting Holders. *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise). Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement." Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here, considering the prepetition solicitation process employed. *See also* 11 U.S.C. §§ 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).

66.    Similar waivers to those requested by the Debtors have been granted in other chapter 11 cases in this District. *See, e.g., In re View, Inc.*, No. 24-10692 (CTG) [D.I. 68] (Bankr. D. Del. April 4, 2024); *In re Pennsylvania Real Estate Investment Trust*, No. 20-12737 [D.I. 83] (Bankr. D. Del. Nov. 3, 2020); *Pyxus Int'l, Inc.*, No. 20-11570 (LSS) [D.I. 83] (Bankr. D. Del. June 17, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) [D.I. 82] (Bankr. D. Del. June 16, 2020); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019); *In*

31

*re Blackhawk Mining LLC*, No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019); *In re Elk Petroleum, Inc.*, No. 19-11157 (LSS) [D.I. 61] (Bankr. D. Del. May 24, 2019).

67.     The Plan provides that, except for Class 3 and Class 4, the remaining Classes are either Unimpaired Classes or Rejecting Classes. Pursuant to §§ 1126(f) and (g), Holders of Claims and Interests in the Non-Voting Classes (the "Non-Voting Holders") were not solicited. Nevertheless, the Debtors are making this request out of an abundance of caution, and to avoid unnecessary expense.

68.     In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to serve such Non-Voting Holders by mail with the Notice of Commencement & Confirmation Hearing Notice, which sets forth, among other things, a summary of the Plan and the treatment of such Non-Voting Holders' Claims or Interests, the manner in which a copy of the Plan and the Disclosure Statement may be obtained, and the manner in which such Non-Voting Holders may object to confirmation of the Plan. The Debtors also have made the Solicitation Package (excluding the Ballots) publicly available to all parties at no cost on their restructuring website maintained by the Claims Agent.

69.     The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and should be approved. Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Non-Voting Holders.

**D.     PROCEDURES IN RESPECT OF ASSUMPTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES PURSUANT TO THE PLAN.**

70.     The Plan provides that, as of the Effective Date, the Debtors shall be deemed to have rejected each Executory Contract and Unexpired Lease to which they are parties in accordance with, and subject to, the provisions and requirements of §§ 365 and 1123, without the

need for any further notice to or action, order, or approval of the Court. The exceptions to this deemed rejection are: (a) if the Plan specifically provides otherwise; or (b) such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the Debtors pursuant to a final order of the Court, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed on or before the Effective Date, or (iv) is identified on the Assumption Schedule to be filed in the Plan Supplement. The assumption of Executory Contracts and Unexpired Leases under the Plan may include the assignment of contracts with the Reorganized Debtors. The order confirming the Plan will constitute an order of the Court approving the above-described assumptions and assignments.

71.      In addition to the Notice of Commencement & Confirmation Hearing Notice, the Debtors will provide notices to counterparties to Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned under the Plan, in substantially the form attached as **Exhibit 5** to the Order. Any objection by an Executory Contract or Unexpired Lease counterparty to a proposed assumption, assumption and assignment, or related cure cost, on any grounds, including those set forth in § 365, must be filed, served, and actually received by the Debtors within fourteen (14) days after service of the Assumption Notice on such counterparties. Any objections to cure costs may be scheduled for a separate hearing in the Debtors' discretion.

72.      The Debtors respectfully submit that the Assumption Notice complies with the Bankruptcy Code and, therefore, should be approved.

E.      **THE COURT SHOULD EXCUSE THE DEBTORS FROM CONVENING A MEETING OF CREDITORS OR EQUITY HOLDERS AND FROM FILING SOFAS AND SCHEDULES BECAUSE CAUSE EXISTS.**

73.      Section 341 allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case. Specifically, § 341(e) provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States Trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

*Id.* §341(e).

74.     Because votes on the Plan were solicited prior to the Petition Date and the Debtors' only voting creditors have voted to accept the Plan, the Debtors' aim is to confirm the Plan in thirty (30) days and emerge from the Chapter 11 Cases immediately thereafter. As a result, the Debtors request that the requirement to file Schedules, 2015.3 Reports, and SOFAs be waived in the event that the Plan is confirmed within seventy-five (75) days of the Petition Date.

75.     The Court has authority to grant an extension of the deadline for filing such documents "for cause" pursuant to Bankruptcy Rule 1007(c). Here, cause exists to extend the deadlines, given the prepackaged and substantially consensual nature of the Chapter 11 Cases. Moreover, the Debtors will be filing on the docket a schedule of general unsecured claims, which will indicate whether such claims are disputed, unliquidated or contingent. That schedule will, from the perspective of creditors, serve the key purpose of allowing creditors to determine whether they will need to file a proof of claim in the Debtors' cases. Accordingly, the Schedules, 2015.3 Reports, and SOFAs would be of limited utility to most parties in interest, as the Debtors already have enough support to meet the voting requirements of §§ 1126(c) and (d). The minimal benefit of requiring the Debtors to prepare the Schedules, 2015.3 Reports, and SOFAs would be significantly outweighed by the expenditure of time and resources the Debtors would be required to devote to the preparation and filing of these documents at the same time as they focus on their restructuring. For these reasons, the Court should only conditionally require the Debtors to file Schedules, 2015.3 Reports, and SOFAs if the Plan is not confirmed within seventy-five (75) days of the Petition Date.

76.     Courts have frequently waived the requirements for the U.S. Trustee to convene a meeting of creditors and for a debtor to file Schedules, 2015.3 Reports, and SOFAs in other prepackaged chapter 11 cases. *See, e.g., In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. May 25, 2021); *In re Ferrellgas Partners, L.P.*, No. 21-0021 (MFW) (Bankr. D. Del. Jan. 13, 2021) (conditionally waiving requirement to convene § 341 creditors' meeting and filing of schedules and statements subject to plan confirmation within 75 days); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 22, 2019) (same); *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. Apr. 4, 2018) (granting contingent 72-day extension to convene § 341 creditors' meeting and file schedules and statements); *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (granting 100-day contingent extension). For the reasons discussed above, similar relief is appropriate in these Chapter 11 Cases as well.

77.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a meeting of creditors and for the Debtors to file Schedules, 2015.3 Reports, and SOFAs. The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a meeting of creditors and file Schedules, 2015.3 Reports, and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

## VI.

## NON-SUBSTANTIVE MODIFICATIONS

78.     The Debtors request authorization to make changes to the Plan and Disclosure Statement, Notice of Commencement & Confirmation Hearing Notice, Solicitation Packages, Ballots, Publication Notice, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to any other materials in the Solicitation Packages before distribution.

## VII.

## RESERVATION OF RIGHTS

79.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection of, or seek avoidance of, all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## VIII.

### NO PRIOR REQUEST

80.     No prior request for the relief sought in this Motion has been made to this or any other court.

## IX.

### NOTICE

81.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' prepetition and postpetition lenders; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; and (g) any party entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

## X.

### CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order.

Dated: April 26, 2026                              **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (pro hac vice pending)
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com
        debertenthal@pszjlaw.com
        tcairns@pszjlaw.com
-and-

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Geoffrey M. Miller (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Email: john.beck@dentons.com
        geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*