**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10593 (CTG)<br><br>(Jointly Administered)<br><br>**Docket Ref. No. 6** |

**ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") for authority to employ and retain Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as claims and noticing agent in the Debtors' chapter 11 cases (the "Claims and Noticing Agent") effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Notwithstanding the terms of the Engagement Agreement attached hereto, the Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Verita, effective as of the Petition Date, under the terms of the Engagement Agreement, and Verita is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these cases, and all related tasks, all as described in the Application (the "Claims and Noticing Services").

3.      Verita shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases (if any) and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Verita is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary).

2

5. Verita is authorized to take such other action to comply with all duties set forth in the Application.

6. Without further order of this Court, the Debtors are authorized to compensate and reimburse Verita in accordance with the terms and conditions of the Engagement Agreement upon receipt of reasonably detailed invoices setting forth the services provided by Verita and the rates charged for each, and to reimburse Verita for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Verita to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7. Verita shall maintain records of all services performed showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel to the Debtors, counsel to any official committee monitoring the expenses of the Debtors, and any party-in-interest that specifically requests service of the monthly invoices.

8. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of such matter from this Court if resolution is not achieved.

9. Pursuant to § 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Verita under this Order shall be an administrative expense of the Debtors' estates.

10. Verita may apply its retainer to all prepetition invoices and, thereafter, have the retainer replenished to the original retainer amount and, thereafter, hold the retainer under the Engagement Agreement during the cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Verita under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services, as provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any losses, claims, damages, judgments, liabilities or expenses that are either: (a) judicially determined (the determination having become final) to have arisen from the Indemnified Parties' gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege a breach of the Indemnified Parties' contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Parties should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.     Before the earlier of: (a) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing these chapter 11 cases, should the Indemnified Parties believe that they are entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as

modified by this Order), including, without limitation, the advancement of defense costs, the Indemnified Parties must each file an application in this Court, and the Debtors may not pay any such amounts to the Indemnified Parties before the entry of an order by this Court approving such application and the payment requested therein.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties. All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

15.    In the event Verita is unable to provide the Claims and Noticing Services, Verita will immediately notify the Clerk and the Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

16.    The Debtors may submit a separate retention application, pursuant to § 327 of the Bankruptcy Code or any applicable law, for work that is to be performed by Verita but is not specifically authorized by this Order.

17.    The limitation of liability section in section VIII.B of the Services Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

18.    The Debtors and Verita are authorized to take all steps necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19.    Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

20. Verita shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of this Court.

21. In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

22. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

**Dated: April 28th, 2026**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**