**Exhibit 1A**

**Class 3 (Senior Indebtedness Claims) Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1]<br><br><div align="center">Debtors.</div> | Chapter 11<br><br>IMPORTANT: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |

**CLASS 3 (SENIOR INDEBTEDNESS CLAIMS)
BALLOT TO ACCEPT OR REJECT THE
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

As you have been informed, on or before April 26, 2026, Impac Mortgage Holdings, Inc. ("Impac"), Impac Funding Corporation ("IFC"), Impac Mortgage Corp. ("IMC"), Copperfield Financial, LLC ("CFLLC"), IMH Assets Corp. ("IMHAC"), Integrated Real Estate Service Corp. ("IRES"), Integrated Warehouse Lending Group, Inc. ("IWLG"), Copperfield Capital Corporation ("CCC"), Impac Commercial Capital Corporation ("ICCC"), Impac Secured Assets Corp. ("ISAC"), Synergy Capital Mortgage Corp. ("Synergy") and Impac Warehouse Lending, Inc. ("Warehouse"), the debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), will file their petitions for relief pursuant to chapter 11 of the Bankruptcy Code (the "Petitions"). Contemporaneously with the Petitions, the Debtors will file the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* (as may be subsequently amended, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc.* (the "Disclosure Statement"). You should have received a copy of the Plan and Disclosure Statement included in the packet you are receiving with this Ballot (collectively, the "Solicitation Package").

This ballot is being provided to you because records indicate that you are the Holder of a Class 3 Claim (Senior Indebtedness Claims) as of April 22, 2026 (the "Pre-Petition Voting Record Date"), and, accordingly, you have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. You agree that your vote on the Plan before the filing of the Petition shall be deemed to be your vote on the Plan for purposes of subsection (c) of section 1126 of the Bankruptcy Code.

**Your rights are described in the Disclosure Statement and the Plan. Please read the Disclosure Statement and the Plan and follow the enclosed voting instructions carefully before completing this ballot.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Services Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

If you have any questions regarding this ballot (the "Ballot") or the voting procedures, please contact Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, California 90017-5704, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com), or Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com).

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY 5:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 24, 2026 (the "Voting Deadline").**

If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you have voted.

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the materials delivered with this ballot.

**Item 1. Amount of Class 3 (Senior Indebtedness Claims) Claim.**

The undersigned hereby certifies that as of April 22, 2026, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Claim in the following principal amount (insert amount in box below).

> Not less than $23,950,000, consisting of principal in the amount of $20,000,000, plus interest, fees, and costs.

**Item 2. Vote of Class 3 Claim.**

The Holder of the Class 3 Claim set forth in Item 1 votes to (please check one):

| Accept the Plan | Reject the Plan |
|---|---|
| ☐ | ☐ |

**Subject to the limitations set forth herein, you have the right to opt-in to the Third-Party Release set forth in Section 10.5(b) of the Plan. You shall not be deemed to have consented to the Third-Party Release unless you check the box in Item 3 below.**

**Item 3. Release Opt-In Election.**

| | |
|---|---|
| ☐ | **The undersigned Claimant elects to grant (*i.e.*, OPTS IN to) the Third-Party Release provision set forth in Section 10.5(b) of the Plan.** |

**Item 4. Important Information Regarding Injunction, Release, and Exculpation Under the**

Plan.

Sections 10.4, 10.5, and 10.6 of the Plan provide as follows:

**Section 10.4**          *Injunction*.

**No Person or Entity holding a Claim or Interest may receive any payment from, or seek recourse against, directly or indirectly, any Assets of the Debtors and their Estates or the Reorganized Debtors other than Assets required to be distributed to that Person or Entity under the Plan.  Except as otherwise expressly provided for in the Plan or the Confirmation Order, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, or on account of any claim, interest, obligation, right, suit, damages, Cause of Action, remedy or liability discharged, released, dismissed, exculpated, settled or waived under the Plan or the Confirmation Order, from, directly or indirectly (collectively, the "Enjoined Matters"): (a) asserting any Enjoined Matters against any Assets of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, and their successors and assigns and any of their assets or properties, directly or indirectly; (b) commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; (c) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; (d) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; or (e) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties, directly or indirectly, except to the extent that a motion to effectuate such setoff or subrogation is timely Filed prior to the Confirmation Date.**

**Notwithstanding the foregoing, nothing in this Section 10.4 is intended or shall be deemed to enjoin Holders of Allowed Claims from enforcing the Debtors' obligations pursuant to the Plan.**

**Section 10.5**          *Releases*.

*(a) Releases by the Debtors.* **As of the Effective Date, for good and valuable consideration, pursuant to the Plan and the Confirmation Order, the Debtor Released Parties are forever released the ("Debtor/Estate Release") by the Debtors and the Estates, and anyone claiming by or through the Debtors and the Estates, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including, without limitation, any and all Avoidance Actions), remedies and liabilities whatsoever, including, without limitation, any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in**

3

law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that a Holder of any Claim or Interest would have been legally entitled to assert derivatively on behalf of the Debtors or otherwise by or through the Debtors, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined in a Final Order to have constituted actual fraud, gross negligence or willful misconduct.

(b) *Releases by Holders of Claims*. As of the Effective Date, for good and valuable consideration, the Third-Party Released Parties are forever released (the "Third Party Release") by the Releasing Parties, and anyone claiming by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of and anyone claiming by or through the Releasing Parties, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement or related agreements, instruments or other documents in the Chapter 11 Cases, except for any such act, omission, transaction, event or other occurrence that is determined by a Final Order to have constituted actual fraud, gross negligence or willful misconduct; provided, however, that the foregoing is not intended and shall not be deemed to be a release of (i) the Debtors' obligations pursuant to the Plan to Holders of Allowed Claims, or (ii) the rights of such Holders to enforce such obligations.

(c) *Binding Nature of Opt-In Release; Waiver of Unknown Claims*. Each Person and Entity deemed to grant a release under this Section 10.5 shall be deemed to have granted such release notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, to the extent such section is applicable, which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of Confirmation.

(d) *Approval of Releases*. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Section 10.5, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release and Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for

4

**hearing; and (e) a bar to the assertion of any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

**Section 10.6** *Exculpation and Limitation of Liability.*

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, the Exculpated Parties shall be exculpated from any liability to any Person or Entity, including, without limitation, to any Holder of a Claim or an Interest, for any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the RSA, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation or consummation of the Plan, the Disclosure Statement, any contract, instrument, release or other agreement or document created, executed or contemplated in connection with the Chapter 11 Cases, the Plan, the RSA, the Confirmation Order, the Disclosure Statement, related agreements, instruments or other documents in the Chapter 11 Cases, or the administration of the Plan or the Assets to be distributed under the Plan; provided, however, that the exculpation provisions of this Section 10.6 shall not apply to acts or omissions constituting actual fraud, willful misconduct or gross negligence by any Exculpated Party, as determined by a Final Order.  The Confirmation Order and the Plan shall serve as a permanent injunction against any Person or Entity commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Exculpated Parties that has been exculpated pursuant to this Section 10.6 of the Plan.**

**Section 1.1** *Definitions.*

"*Released Parties*" means, collectively, the Debtor Released Parties and the Third-Party Released Parties.

"*Debtor Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); provided, however, that in each case a person or entity shall not be a Debtor Released Party if it objects to the Plan's release provisions; provided further, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the Debtors to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Debtors to whom they are related.

"*Third-Party Released Parties*" means, collectively, each of, and in each case in its capacity as such, (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f); provided, however, that in each case a person or entity shall not be a Third-Party Released Party if it objects to the Plan's release provisions;

provided further, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (g), the subject release will apply only to claims and causes of action of such party that (i) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (ii) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

"*Releasing Parties*" means, individually and collectively: (i) each party to the RSA; (ii) each Holder of a Claim or Interest that opts in to the Third Party Release; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns, transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action, by, through, for, or because of such Entities or Persons; provided that, notwithstanding any of the foregoing, strictly as to the scope of the subject release by the parties covered under the preceding clause (iii), the subject release will apply only to claims and causes of action of such party that (a) are derivative of the claims held by the primary Releasing Party to whom the party is related, or (b) solely to the extent such party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

**Item 5. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Pre-Petition Voting Record Date, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Class 3 Claim in the amount set forth in Item 1;

2. the Holder is eligible to be treated as the Holder of the Class 3 Claim set forth in Item 1 for the purposes of voting on the Plan;

3. the Holder has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

5. the Holder understands and acknowledges that only the latest-dated Ballot cast and actually received by the Pre-Petition Voting Deadline with respect to the Class 3 Claim set forth in Item 1 will be counted, and, if any other Ballot has been previously cast with respect to the Class 3 Claim set forth in Item 1, such other Ballot shall be deemed revoked;

6. the Holder understands and acknowledges that the Debtors shall verify the amount of the Class 3 Claim held by the Holder as of the Pre-Petition Voting Record Date set forth in Item 1; and

7.      the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

**Item 6. Holder Information and Signature.**

Name of Holder: _____

Signature: _____

Name of Signatory: _____
                              (if other than Holder)

Title: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY BY MAIL, HAND DELIVERY, OVERNIGHT DELIVERY, OR ELECTRONIC MAIL TO**

| |
|---|
| Impac Ballot Processing Center<br>c/o KCC dba Verita Global<br>222 N. Pacific Coast Highway,<br>Suite 300<br>El Segundo, CA 90245<br><br>-Or-<br><br>ImpacMortgageInfo@veritaglobal.com |

**BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 24, 2026**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CONTACT DENTONS US LLP OR PACHULSKI STANG ZIEHL & JONES LLP AS SET FORTH ABOVE**

**VOTING INSTRUCTIONS FOR**
**CLASS 3 (SENIOR INDEBTEDNESS CLAIMS) CLAIM**

1.    As described in the Disclosure Statement, the Debtors are soliciting the votes of the Holders of Class 3 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and Disclosure Statement are included in the Solicitation Package you are receiving with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.    The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one impaired class that votes on the Plan, determined without including any acceptance of the Plan by any insider, and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.

3.    To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 3 of the Ballot; and (c) sign and return the Ballot in accordance with the instructions on the Ballot by mail, hand delivery, overnight delivery, or email so that it is actually received by the Voting Deadline, to: ImpacMortgageInfo@veritaglobal.com or Impac Ballot Processing Center, c/o KCC dba Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245 (the "Voting Agent").

4.    The time by which a Ballot is actually received by the Voting Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. The Voting Deadline is April 24, 2026 at 5:00 p.m. (Prevailing Eastern Time).

5.    If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely delivery.

6.    If multiple Ballots are received from an individual Holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot.

7.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

8.    The Ballot does not constitute, and shall not be deemed to be: (a) a proof of claim or interest; or (b) an assertion or admission with respect to any claim or interest.

9.    Please be sure to sign or electronically sign (DocuSign or similar) and date your Ballot. If you are completing the Ballot on behalf of an Entity, indicate your relationship with that

8

Entity and the capacity in which you are signing.

10. You must vote your entire Class 3 Claim either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11. Any Ballot that is properly completed, executed, and timely returned to the Voting Agent that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

12. Subject to the discretion of the Debtors or authority of the Court, the following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Equity Interest in a Class that is entitled to vote on the Plan, (c) any unsigned Ballot; and/or (d) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.