**Exhibit A**

4920-3863-2877.1 40173.00001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-10593 (CTG) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | **Docket Ref. Nos. 7 and 70** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING
ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND
(V) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL**

Upon the motion [Docket No. 7] (the "Motion") of the debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to §§ 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the corresponding local rules of this District (the "Local Rules"), requesting entry of the Interim Order (as defined below) and a final order (this "Final Order")[2] authorizing the Debtors to, among other things:

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them below, or as set forth in the Motion or the DIP Agreement, as applicable.

i.        Obtain senior secured postpetition financing in an aggregate principal amount not to exceed $5,000,000 (the "DIP Credit Facility," and the loans provided to the Debtors thereunder, the "DIP Loans"), consisting of (a) $2,000,000 of principal of the Bridge Note, plus interest, fees and other amounts due thereunder, which obligations were previously rolled up pursuant to the Interim Order and converted into DIP Obligations on a dollar-for-dollar basis, subject to Paragraph 21 of this Final Order and the Carve-Out (the "DIP Roll-Up Loan"); (b) the $1,500,000 Initial Term Loan previously authorized pursuant to the Interim Order; and (c) additional new money term loans in an aggregate principal amount such that, when combined with the DIP Roll-Up Loan and the Initial Term Loan, the total outstanding principal amount of the DIP Credit Facility shall not exceed $5,000,000, which additional new money term loans shall be made available to the Debtors from time to time pursuant to the terms and subject to the conditions set forth in the DIP Agreement and the Orders (the "New Money Term Loan").

ii.       Enter into (a) that certain Debtor-In-Possession Loan and Security Agreement (the "DIP Agreement"), substantially in the form attached as Exhibit A to the Interim Order, by and among the Debtors, certain subsidiaries of the Debtors identified as a guarantor on the signature page thereto, and Hildene Re SPC, Ltd., acting for and on behalf of the account of SP 1 (in such capacity, the "DIP Lender") as lender and (b) the documents related to the DIP Agreement (together with the DIP Agreement, the "DIP Documents");

iii.      Borrow, on a final basis, pursuant to the DIP Documents and this Final Order, postpetition financing in an aggregate principal amount of up to $5,000,000;

iv.      Execute and deliver the DIP Agreement and the other DIP Documents to the DIP Lender pursuant thereto;

v.          Grant to the DIP Lender the DIP Liens on all of the DIP Collateral to secure the DIP Credit Facility and all obligations owing and outstanding under the DIP Documents and this Final Order (collectively, and including all "Obligations" as defined in the DIP Agreement, the "DIP Obligations"), subject only to prior payment of the Carve-Out;

vi.          Grant to the DIP Lender allowed superpriority administrative expense claims in the Chapter 11 Cases for all DIP Obligations;

vii.          Use the proceeds of the DIP Credit Facility in accordance with the DIP Agreement, the DIP Documents, and the Orders, in all cases in accordance with the Budget attached as Exhibit B to the Interim Order, as may be modified in accordance with the DIP Documents and this Final Order, and as otherwise provided in the DIP Documents;

viii.          Use any Prepetition Collateral, including the Cash Collateral, and provide adequate protection to those parties set forth in this Final Order that may have an interest in such Prepetition Collateral, including Cash Collateral, for any possible Diminution;

ix.          Vacate and modify the automatic stay imposed by § 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Documents and this Final Order; and

x.          Waive, to the extent applicable, any stay of the immediate effectiveness of this Final Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that this Final Order shall be immediately effective upon entry on the Court's docket.

The Court having considered the Motion, the *Declaration of George A. Mangiaracina in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 17], the *Declaration of Eric J. Held in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To Obtain Postpetition Secured Financing; (II) Granting Liens and*

*Providing Superpriority Administrative Expense Status; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Authorizing Use of Cash Collateral; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [Docket No. 7], the DIP Agreement, the evidence submitted or adduced and the arguments of counsel made at the hearing before this Court on April 28, 2026 (the "Interim Hearing"), after which it entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Authorizing the Debtors' Use of Cash Collateral and (VI) Scheduling a Final Hearing* [Docket No. 70] (the "Interim Order," and together with the Final Order, the "Orders"), and the evidence submitted or adduced and the arguments of counsel made at the Final Hearing on this Final Order; and notice of the Motion and the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014; and the Final Hearing having been held and concluded; and it appearing that granting the relief requested in the Motion on a final basis is an appropriate exercise of the Debtors' business judgment and is otherwise fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, and is essential for the preservation of the value of the Debtors' property; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED THAT**[3]:

A.     Petition Date.  On April 26, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with this Court commencing these

---

[3]   The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Chapter 11 Cases. On April 27, 2026, the Court entered an interim order [Docket No. 21] approving the joint administration of the Chapter 11 Cases for procedural purposes only, and on April 28, 2026, the Court entered the final order [Docket No. 62] approving same. The Debtors are continuing to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

B. Jurisdiction and Venue.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, and over the persons and property affected hereby.  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

C. Notice.  Notice of the Final Hearing and notice of the Motion has been given by the Debtors to (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the Debtors' thirty (30) largest unsecured creditors (excluding insiders); (iii) counsel to the DIP Lender and to the Prepetition Secured Parties; (iv) all known holders of liens upon the Debtors' assets; (v) the attorneys general in the states in which the Debtors conduct their business; (vi) the Internal Revenue Service; (vii) the United States Securities and Exchange Commission (the "SEC"); and (viii) all parties that have filed notices of appearance pursuant to Bankruptcy Rule 2002; in each case by facsimile transmission, email, overnight courier and/or hand delivery. Under the circumstances, such notice of the Final Hearing and Motion and the relief provided for

in this Final Order complies with § 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Rules and no further notice of the Final Hearing is required.

D.     <u>Debtors' Stipulations</u>. In requesting the financing from the DIP Lender and in exchange for and as a material inducement to the DIP Lender to agree to provide the financing in accordance with the DIP Credit Facility, and to the Prepetition Secured Parties in exchange for any potential Diminution, the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates, subject to the Challenge rights set forth in Paragraph 21 of this Final Order (solely with respect to the Prepetition Secured Parties) and without prejudice to the rights of interested parties other than the Debtors, as follows (the "<u>Stipulations</u>"):

(i)      As of the Petition Date, the Debtors have the following secured indebtedness:

a.     An aggregate outstanding amount of $23,950,000, inclusive of all accrued and unpaid interest, fees, costs, and expenses (collectively, the "<u>Prepetition Loan Obligations</u>"), owed pursuant to that certain Loan Agreement, dated as of May 6, 2024 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>Prepetition Loan Agreement</u>"), by and among Impac Mortgage Holdings, Inc. ("<u>Impac</u>"), each subsidiary of Impac that is a guarantor thereunder, and Hildene Re SPC, Ltd., acting for and on behalf of the account of SP 1 (in such capacity, the "<u>Prepetition Lender</u>"), which obligations are secured by the Prepetition Loan Collateral. An aggregate outstanding principal amount of $2,000,000, together with all accrued and unpaid interest, fees, costs, and expenses (collectively, the "<u>Prepetition Bridge Note Obligations</u>," and together with the Prepetition Loan Obligations, the "<u>Prepetition Obligations</u>"), owed pursuant to that certain Bridge Note, dated as of January 26, 2026 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>Bridge Note</u>"), by and among Impac and Hildene Re SPC, Ltd., acting for and on behalf of the account of SP 1, as successor-by-assignment to Trinity Park Investments, LLC, (in such capacity, the "<u>Bridge Note Lender</u>," and together with the Prepetition Lender, the "<u>Prepetition Secured Parties</u>"), which obligations are secured by the Bridge Note Collateral, with the consent of the Prepetition Lender, rank *pari passu* with the liens securing the Prepetition Loan Obligations (the Bridge Note Collateral, and together with the Prepetition Loan Collateral, the "<u>Prepetition Collateral</u>").

(ii)      As of the Petition Date: (a) the Prepetition Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms (other

than in respect of the stay of enforcement arising from § 362 of the Bankruptcy Code to the extent applicable); (b) no recoupments, offsets, defenses, or counterclaims exist to the Prepetition Obligations; and (c) no portion of the Prepetition Obligations or any payments or other transfers made to the Prepetition Secured Parties or applied to the Prepetition Obligations prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, recoupment, offset, counterclaim, crossclaim, defense, or claim (as defined in § 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii)    The liens of the Prepetition Secured Parties (the "Prepetition Liens") constitute valid, binding, enforceable (other than with respect to the stay of an enforcement arising from § 362 of the Bankruptcy Code) and perfected liens with priority over any and all other liens in the Prepetition Collateral (except as otherwise provided in the Prepetition Loan Agreement, the Bridge Note, and / or any other documents relating thereto, respectively (collectively, the "Prepetition Loan Documents")), and are not subject to any challenge or defense, including without limitation, respectively, avoidance, subordination, recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, crossclaim, or claim (as defined in § 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    The Debtors have waived, discharged, and released any right they may have to challenge the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral and to assert any recoupments, offsets, defenses, claims, objections, challenges, causes of action and/or causes of action against any Prepetition Secured Party with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral;

(v)    Any payments made on account of the Prepetition Obligations before the Petition Date were payments made (a) out of the Prepetition Collateral, and/or (b) in the ordinary

-7-

course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors;

(vi)     All of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral;

(vii)    Neither the DIP Lender nor any of the Prepetition Secured Parties is a control person or insider (as defined in § 101(31) of the Bankruptcy Code) of any Debtor;

(viii)   Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime, or seek to prime (or otherwise cause to be subordinated in any way), (a) the liens provided to the DIP Lender, or (b) the Prepetition Liens securing the Prepetition Collateral in favor of the Prepetition Secured Parties, in each case by offering a subsequent lender, or any party-in-interest, a superior or *pari passu* lien or claim with respect to the DIP Collateral or the Prepetition Collateral, as applicable, pursuant to § 364(d) of the Bankruptcy Code or otherwise, except with respect to the Carve-Out;

(ix)     Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time seek allowance of any administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113 and 1114 of the Bankruptcy Code that is superior to or *pari passu* with the DIP Superpriority Claim and the Adequate Protection Liens provided herein, except with respect to the Carve-Out;

(x)      The Prepetition Secured Parties are entitled, pursuant to §§ 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the

Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the "Diminution"), that may be caused by or arising as a result of (a) the incurrence and payment of the DIP Obligations, (b) the use of Prepetition Collateral (including Cash Collateral), (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out, (e) the subordination of the Prepetition Obligations to the Carve-Out, and (f) imposition of the automatic stay pursuant to § 362 of the Bankruptcy Code.

E.      Cash Collateral. For the purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in § 363 of the Bankruptcy Code, in or on which the DIP Lender or the Prepetition Secured Parties have a lien, security interest, or any other interest (including, without limitation, any Adequate Protection Liens or security interests), whether existing on the Petition Date, arising pursuant to this Final Order or otherwise, and shall include, without limitation:

(i)      All cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, in or on which the DIP Lender or the Prepetition Secured Parties have a lien or a replacement lien, whether as part of the DIP Collateral or the Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)      All of the respective deposits, refund claims, and rights in retainers of the Debtors on which the DIP Lender or the Prepetition Secured Parties hold a lien or replacement lien, whether as part of the DIP Collateral or Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

(iii)     All cash and cash equivalents held in any depository or other accounts maintained by the Debtors, whether such cash and cash equivalents existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(iv)     The proceeds of any sale, transfer or other disposition of DIP Collateral or Prepetition Collateral; and

(v)     Any residual proceeds, after satisfaction of the Enterprise Loans (as defined in the Motion), that flow to the Debtors' estates from (a) the EB&T Pledged Accounts (as defined in the Motion), including any cash collateral contained in restricted cash accounts securing the Enterprise Loans, and (b) the cash surrender value or death benefit proceeds of the Life Insurance Policies (as defined in the Motion) assigned as collateral for the Enterprise Loans.

For the avoidance of doubt, and subject to this Final Order, the Debtors' authorization to use Cash Collateral shall automatically terminate, without further order of the Court, upon the earliest of: (a) the Maturity Date; (b) entry of any order by the Bankruptcy Court denying or terminating the Debtors' use of Cash Collateral; or (c) upon the occurrence or continuation of an Event of Default.

F.     Findings Regarding the DIP Credit Facility.

(i)     Need for the DIP Credit Facility and to Use Cash Collateral.  An immediate need exists for the Debtors to obtain funds pursuant to the DIP Credit Facility and to use Cash Collateral in order to continue operations, fund payroll, and operating expenses, and administer and preserve the value of their estates.  The ability of the Debtors to finance their operations through the DIP Credit Facility and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors' estates and to maximize the value of the Debtors' assets for the benefit of their creditors.

(ii)      Priming of Any Prepetition Liens.  The priming of any of the Primed Liens, as contemplated by the DIP Agreement and to the extent set forth in this Final Order, is a condition to the Debtors' borrowings under the DIP Credit Facility, which borrowing is necessary for the Debtors to be able to continue to operate their business and administer the Chapter 11 Cases for the benefit of their estates and creditors.  The parties holding Primed Liens have consented to such treatment, and the terms of the adequate protection arrangements provided for herein are fair and reasonable and otherwise sufficient under the circumstances to adequately protect the Prepetition Secured Parties against any Diminution with respect to the Prepetition Collateral as provided for herein.  For the avoidance of doubt, the Prior Permitted Liens are not being primed by the DIP Credit Facility.

(iii)      No Credit Available on More Favorable Terms.  The Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the estates on more favorable terms and conditions than those provided in the DIP Agreement and this Final Order.  The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections.

G.      Sections 506(c) and 552(b) Waivers. In light of (i) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Credit Facility and (ii) the Prepetition Secured Parties' agreement to subordinate their liens to the DIP Obligations, the Carve-Out, and the DIP Liens, and to permit the use of the Prepetition Collateral (including Cash Collateral for payments made in accordance with the Budget and the terms of this Final Order), each of the DIP Lender and the Prepetition Secured Parties are entitled to a waiver of the provisions

-11-

of § 506(c) and a waiver of the exceptions provided in §§ 552(b)(1) and (2) of the Bankruptcy

Code, in each case as provided for herein.

H.    Use of Proceeds of the DIP Credit Facility.  Proceeds of the DIP Credit Facility (net

of any amounts used to pay fees, costs, and expenses under the DIP Documents) shall be used in

a manner consistent with the terms and conditions of the DIP Agreement and this Final Order and

in accordance with the Budget.

I.    Application of Proceeds of DIP Collateral.  Subject solely to the Challenge rights

reserved in Paragraph 21 of this Final Order with respect to the DIP Roll-Up Loan, all net proceeds

of any sale or other disposition of the DIP Collateral, if any, shall, subject to the Carve-Out, be

applied first to repay the DIP Obligations in full.

J.    Effect of Reversal; Good Faith.  The DIP Lender has indicated a willingness to

provide financing to the Debtors solely in accordance with the DIP Agreement and this Final

Order, *provided that* the DIP Obligations, DIP Liens and other protections granted by this Final

Order and the DIP Documents will not be affected by any subsequent reversal or modification of

this Final Order to the extent provided in § 364(e) of the Bankruptcy Code.  The DIP Lender has

acted in good faith in agreeing to provide the DIP Credit Facility approved by this Final Order.

K.    DIP Roll-Up Loan.  Pursuant to the Interim Order, but subject to the provisions of

Paragraph 21 of this Final Order and the Carve-Out*,* all outstanding Prepetition Bridge Note

Obligations were rolled up and converted into DIP Obligations.  The Bridge Note Lender, who is

also the DIP Lender, would not have consented to extend the Bridge Note Loan, DIP Loans, or

other financial accommodations to the Debtors without the inclusion of the DIP Roll-Up Loan in

the DIP Obligations.  Thus, the DIP Roll-Up Loan was consideration for, and solely on account

of, the agreement of the DIP Lender to extend the DIP Loans and not on account of the Prepetition Bridge Note Obligations.

L. Business Judgment and Good Faith Pursuant to § 364(e).

(i) The terms and conditions of the DIP Credit Facility and the DIP Documents as set forth in this Final Order or the Motion, and the fees paid and to be paid thereunder are fair, reasonable, and the best reasonably available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii) The DIP Documents and use of Cash Collateral were negotiated in good faith and at arms' length between the Debtors and the DIP Lender and the Prepetition Secured Parties; and

(iii) The DIP Credit Facility loan proceeds to be funded to the Debtors pursuant to the DIP Documents will be advanced in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protection and benefits of § 364(e) of the Bankruptcy Code.

M. Immediate Entry of Final Order. The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2. The permission granted herein and pursuant to the Interim Order to enter into the DIP Documents, obtain financing thereunder, and use the Prepetition Collateral (including the Cash Collateral) is necessary to preserve and maximize the value of the Debtors' estates and represents a sound exercise of the Debtors' business judgment. This Court concludes that entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary to administer the Chapter 11 Cases, to sustain the operation of the Debtors'

existing business and to further enhance the Debtors' prospects for a successful reorganization. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing and Final Hearing, and good and sufficient cause appearing therefor;

NOW, THEREFORE, based upon the foregoing findings, and upon consideration of the Motion and the record made before this Court with respect to the Motion, including the record created during the Interim Hearing and Final Hearing, all papers filed on the docket, and with the consent of the Debtors, the DIP Lender, and the Prepetition Secured Parties to the form and entry of this Final Order, and good and sufficient cause appearing therefor, and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      Motion Granted.  The Motion is GRANTED on a final basis in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived, or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.      The DIP Documents.

(a)      Approval of Entry into the DIP Documents.  The Debtors are authorized to execute, deliver and perform in accordance with the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Documents and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Documents.  The Debtors are hereby authorized to use Cash Collateral subject to the terms of this

-14-

Final Order. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Agreement and all other DIP Documents as such become due.

(b) <u>Authorization for DIP Financing</u>. To enable the Debtors to continue to preserve the value of their estates and subject to the terms and conditions of this Final Order, the Budget, and the DIP Documents, upon the execution of the DIP Agreement and the other DIP Documents, the Debtors are hereby authorized to borrow, pursuant to the DIP Credit Facility, an aggregate principal amount of up to $5,000,000.

(c) <u>DIP Roll-Up Loan</u>. Pursuant to the Interim Order, but subject to the provisions of Paragraph 21 of this Final Order and the Carve-Out, all outstanding Prepetition Bridge Note Obligations were rolled up and converted into DIP Obligations.

(d) <u>Conditions Precedent</u>. The DIP Lender shall have no obligation to make any loans under the DIP Agreement unless the conditions precedent to making such loans under the DIP Agreement, as set forth in Section 7 thereof, have been satisfied in full or waived by the DIP Lender in its sole discretion.

(e) <u>Enforceable Obligations</u>. The DIP Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto, and their creditors or representatives thereof, in accordance with their terms.

(f) <u>Protection of the DIP Lender and Other Rights</u>. From and after the Petition Date, the Debtors shall use the proceeds of the DIP Credit Facility only for the purposes specifically set forth in the DIP Agreement, this Final Order, and, notwithstanding any other order

of this Court authorizing disbursements by the Debtors, in strict compliance with the Budget (subject only to any variances thereto that may be permitted by the DIP Agreement or the Budget).

       3.      <u>The DIP Lien Priority</u>.

       (a)      To secure the DIP Obligations, the DIP Lender, effective as of entry of the Interim Order, is granted on a final basis pursuant to, and in accordance with, §§ 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, valid, enforceable and fully perfected liens (the "<u>DIP Liens</u>") in and on all of the DIP Collateral, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to all cash, accounts, accounts receivable, goods, inventory, property, plant and equipment, commercial tort claims, intellectual property, contract rights, tax refunds, prepaid expenses, deposits, general intangibles, real estate, leaseholds, the EB&T Pledge Accounts (as defined in the Motion), and all cash and other property held therein, all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Documents or not) and any and all proceeds and property recovered therefrom, any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that constitute Prepetition Collateral, and all other property and assets including, without limitation, Cash Collateral, all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above, and all proceeds or property recovered in connection with any and all claims, causes of action, rights, or remedies of any Debtor or its estate arising under chapter 5 of the Bankruptcy Code (including, without limitation, §§ 544, 545, 547, 548, 549, 550, and 553 thereof), and any similar or related claims,

-16-

causes of action, or rights arising under applicable state or other non-bankruptcy law ("Avoidance Actions"), but, for the avoidance of doubt, excluding the Avoidance Actions themselves, (collectively, the "DIP Collateral"), subject only to prior payment of the Carve-Out and any Prior Permitted Liens;

(b)     The DIP Liens, effective as of entry of the Interim Order and granted on a final basis, shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date or created thereafter, including under §§ 363 or 364(d) of the Bankruptcy Code or otherwise, other than prior payment of the Carve-Out and the Prior Permitted Liens;

(c)     The DIP Liens shall be, and hereby are deemed, fully perfected liens and security interests, effective and perfected upon the date of the Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements or any other agreements, filings or instruments, such that no action whatsoever need be taken by the DIP Lender, the Debtors, or any other party (including, without limitation, any depository bank or securities intermediary) to perfect such interests.

(d)     For the avoidance of doubt, until indefeasible payment in full in cash of the DIP Obligations, and subject in all cases to the Carve-Out and the terms of the Interim Order and this Final Order, the DIP Lender shall have the following priority claims and liens:

(i)     pursuant to § 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims against each Debtor and its estate with priority over any and all administrative expenses and other claims of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code and otherwise as set forth in the Orders, subject to, solely with respect to the DIP Roll-Up Loan, the Challenge rights reserved in Paragraph 21 of this Final Order;

(ii)     pursuant to § 364(c)(2) of the Bankruptcy Code, perfected first priority, senior liens on and security interests in all DIP Collateral that, as of the

-17-

Petition Date, was not subject to any valid, perfected, and unavoidable lien, or was subject only to invalid, unperfected, or avoidable liens;

(iii)    pursuant to § 364(c)(3) of the Bankruptcy Code, perfected junior liens on, and security interests in, all DIP Collateral that, as of the Petition Date, was subject to a valid, perfected, and unavoidable lien in existence at the commencement of the Chapter 11 Cases, other than the Primed Liens (such third-party senior liens, "Prior Permitted Liens"); and

(iv)    pursuant to § 364(d)(1) of the Bankruptcy Code, and except with respect to any property subject to Prior Permitted Liens, perfected, first-priority senior priming liens on, and security interests, in all DIP Collateral that is subject to the existing liens in favor of the Prepetition Secured Parties securing the Prepetition Obligations (the "Primed Liens"), which Primed Liens shall be primed by and made subject and subordinate to the perfected first-priority senior priming DIP Liens granted to the DIP Lender hereunder; such priming DIP Liens shall also prime any liens granted after the Petition Date as adequate protection of any Primed Liens, all as provided in the Interim Order and this Final Order; *provided* that, notwithstanding the foregoing, effective upon the making of the Roll-Up Loan pursuant to the Interim Order, any prepetition liens and security interests, if any, securing the Bridge Note Obligations were deemed replaced by the DIP Liens securing the DIP Obligations (including the DIP Roll-Up Loan), as provided in the Orders, subject to the Challenge rights reserved in Paragraph 21 of this Final Order and the Carve-Out.

Each of the foregoing shall be (i) valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (a "Successor Case"), or upon the dismissal of any of the Chapter 11 Cases or Successor Case; and (ii) pursuant to the terms of the Interim Order and this Final Order, subject to the Carve-Out.

4.    Superpriority Administrative Claim. Effective as of entry of the Interim Order, the DIP Lender is granted and approved on a final basis an allowed superpriority administrative expense claim (the "DIP Superpriority Claim," together with the DIP Liens, the "DIP Protections") pursuant to § 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and in any Successor Case(s) for all DIP Obligations, including the DIP Roll-Up Loan (subject to the Challenge rights reserved in Paragraph 21 of this Final Order), having priority over any and all

-18-

other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under §§ 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from all pre- and post-petition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of Avoidance Actions (but excluding the Avoidance Actions themselves). The DIP Superpriority Claim shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out. The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases or any Successor Case(s).

5.      <u>Authorization to Use Proceeds of the DIP Credit Facility and Cash Collateral</u>. Pursuant to the terms and conditions of this Final Order, the DIP Agreement and the other DIP Documents, and in accordance with the Budget and any variances thereto that may be permitted pursuant thereto or pursuant to the DIP Agreement, the Debtors are authorized to use the borrowings pursuant to the DIP Agreement and to use Cash Collateral until the earliest to occur of the (a) the Maturity Date; (b) entry of any order by the Bankruptcy Court denying or terminating the Debtors' use of Cash Collateral; or (c) upon the occurrence or continuation of an Event of Default.  Subject to the terms of the DIP Agreement, the Debtors and the DIP Lender may agree in writing to modify the Budget in the DIP Lender's sole discretion at any time that the DIP Credit Facility remains outstanding; *provided, however*, that any such updated, modified or supplemented Budget provided to the DIP Lender shall be deemed approved at 5:00 p.m. (Eastern Time) five (5)

days following the delivery of such Budget to the DIP Lender if the DIP Lender has neither approved nor rejected such Budget.

6. Relief from the Automatic Stay.

(a) Subject to Paragraph 16 of this Final Order, only upon five (5) Business Days' prior written notice to the Debtors (the "Remedies Notice Period"), counsel approved by this Court for any official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"), if one is appointed, the Prepetition Secured Parties, and the U.S. Trustee, the DIP Lender is hereby granted relief from any stay of proceeding (including, without limitation, the automatic stay applicable under § 362 of the Bankruptcy Code to the holder or holders of any security interest) to permit the DIP Lender, upon the occurrence of and continuance of an Event of Default, to exercise any rights and remedies provided to the DIP Lender under the DIP Documents or at law or equity, including all remedies provided under the Bankruptcy Code. Furthermore, the DIP Lender is hereby granted immediate relief from the automatic stay to take steps to perfect the DIP Liens, as described below. The automatic stay of § 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Committee, the Prepetition Secured Parties, and/or the U.S. Trustee have not obtained an order providing otherwise (a "Stay Enforcement Order") from this Court prior to the expiration of the Remedies Notice Period; *provided* that the hearing on whether the automatic stay shall be terminated may be sought on an expedited basis; and *provided further* that the sole basis on which the Debtors shall be permitted to seek a Stay Enforcement Order is that no Event of Default has occurred.

(b) Upon an Event of Default and subject to the expiration of the Remedies Notice Period without entry of a Stay Enforcement Order, and notwithstanding § 362 of the

-20-

Bankruptcy Code, the Prepetition Lender, solely in its capacity as party to any deposit account control agreement(s) or similar control agreements in effect as of the Petition Date with respect to any Debtor's deposit, securities, or other bank accounts (collectively, "DACAs"), shall be granted limited relief from the automatic stay to deliver any "notice of exclusive control," "activation notice," or similar instruction required under the DACAs to acknowledge and implement that the Prepetition Lender has exclusive control over the applicable account(s) for the benefit of itself and the DIP Lender pursuant to this Final Order.  Any bank, financial institution, depository, or securities intermediary subject to a DACA (each, a "Depository Institution") is authorized to comply with any such notice or instruction without further order of the Court, and shall have the protections of § 364(e) of the Bankruptcy Code and any other applicable protections afforded by this Final Order for taking such actions in good faith.  For the avoidance of doubt, any such exercise shall be limited to effectuating the Prepetition Lender's and the DIP Lender's exclusive control consistent with the DIP Documents and this Final Order.  Nothing in this Paragraph requires the Prepetition Lender or any Depository Institution to sweep, transfer, or apply funds in any account before the expiration of the Remedies Notice Period.  All parties' rights with respect to cash management relief and orders remain reserved, and this Paragraph 6 is intended to complement, and not conflict with, any cash management order entered in these Chapter 11 Cases.

7. Postpetition Lien Perfection.

(a) This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the

-21-

DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may, at its sole discretion, file financing statements, without notice to the Debtors, with all appropriate jurisdictions to perfect or protect the DIP Lender's interest or rights hereunder, including a notice that any disposition of the DIP Collateral, by any of the Debtors or any other Person, shall be deemed to violate the rights of the DIP Lender under the Uniform Commercial Code. Such financing statements may indicate the DIP Collateral as "all assets of the Borrower" or words of similar effect, or as being of an equal or lesser scope, or with greater detail, all in the DIP Lender's discretion, and is hereby granted relief from the automatic stay of § 362 of the Bankruptcy Code in order to do so, and any and all of such financing statements, mortgages, notices of lien and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

(b)      The Debtors shall from time to time execute and deliver to the DIP Lender, at the written request of the DIP Lender, all negotiable collateral, all financing statements and other documents that the DIP Lender may reasonably request, in form satisfactory to the DIP Lender, to perfect and continue the perfection of the DIP Lender's security interests in the DIP Collateral and in order to fully consummate all of the transactions contemplated under the DIP Documents.

8.      Authorization and Direction for Payment of DIP Lender and Prepetition Secured Parties' Fees and Expenses. Subject to the provisions of this Paragraph 8 and Paragraph 2(a) of this Final Order, all reasonable and documented fees paid or payable, and all reasonable and documented costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Documents and the DIP Lender's reasonable and documented attorneys' fees and expenses), by the Debtors to the DIP Lender are hereby approved, but solely to the extent provided in the DIP Agreement. The Debtors are hereby authorized and

directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Agreement, the Interim Order, and this Final Order, as well as all reasonable and documented fees and expenses payable to the Prepetition Secured Parties' pursuant to Paragraph 12(d), without any requirement that the Debtors, the DIP Lender, the Prepetition Secured Parties or their respective attorneys file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs or expenses. The Debtors shall pay all reasonable and documented prepetition and postpetition out of pocket costs and expenses of DIP Lender and the Prepetition Secured Parties in connection with the Chapter 11 Cases and any Successor Case(s), including, without limitation, in connection with (a) the preparation, negotiation, execution and delivery of the DIP Documents, the Interim Order, this Final Order, and the funding of all DIP Loans under the DIP Credit Facility, (b) the administration of the DIP Credit Facility and any amendment or waiver of any provision of the DIP Documents, the Interim Order, or this Final Order, (c) the administration of the Chapter 11 Cases and any Successor Case(s), (d) the enforcement or protection of the DIP Lender's rights and remedies under the DIP Documents, the Interim Order, or this Final Order, and (e) as provided in Paragraph 12(d). Notwithstanding anything to the contrary herein, the payment of all such reasonable and documented fees, costs and expenses of DIP Lender and the Prepetition Secured Parties, whether incurred before or after the Petition Date, including, without limitation, all reasonable and documented fees referred to in the DIP Documents, all fees referred to in Paragraph 12(d) and all attorneys' fees and expenses, shall (i) be subject to Paragraph 21 of this Final Order, be deemed non-refundable and irrevocable, and (ii) not be subject to the Budget.  None of DIP Lender's or the Prepetition Secured Parties' attorneys' fees or disbursements shall be subject to the approval (whether prior to payment or after) of this Court or the guidelines of the Office of the U.S. Trustee, and no recipient of any such

payment shall be required to file with respect thereto any interim or final fee application with this Court. Any such fees, costs and expenses shall be paid by the Debtors within fourteen (14) days after delivery of a summary invoice to the Debtors and without the need for application to or order of the Court. Such summary invoice may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. A copy of such summary invoice shall be provided by DIP Lender or the Prepetition Secured Parties, as applicable to the U.S. Trustee contemporaneously with the Debtors' receipt of such summary invoice. Notwithstanding the foregoing, if (x) the Debtors or the U.S. Trustee object to the reasonableness of a summary invoice submitted by the DIP Lender or the Prepetition Secured Parties and (y) the parties cannot resolve such objection, in each case within the fourteen (14) day period following receipt of such summary invoice, the Debtors or the U.S. Trustee, as the case may be, shall file with the Court and serve on the DIP Lender or Prepetition Secured Party submitting the fee request a fee objection (a "Fee Objection"), which Fee Objection shall be limited to the issue of the reasonableness of such fees and expenses. The Debtors shall promptly pay and/or the DIP Lender is hereby authorized to make an advance under the DIP Agreement to timely pay, any submitted invoice after the expiration of the fourteen (14) day period if no Fee Objection is filed with the Court and served on the DIP Lender or the Prepetition Secured Parties (as applicable) in such fourteen (14) day period. If a Fee Objection is timely filed and served, the Debtors shall promptly

-24-

pay and/or the DIP Lender is hereby authorized to make an advance under the DIP Agreement to timely pay, the undisputed amount of the summary invoices, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the Fee Objection.

9.      Carve-Out; Professional Fee Escrow.

(a)      "Carve-Out" means (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a) (without regard to the notice set forth in (c) below) (the "U.S. Trustee Fees"); (b) to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court, solely to the extent provided for in the Budget, all unpaid fees (including, without limitation, transaction fees paid upon the closing of the respective transaction but excluding success fees) and expenses (collectively, the "Professional Fees") accrued or incurred by persons or firms retained by the Debtors pursuant to §§ 327, 328, or 363 of the Bankruptcy Code (the "Professionals") and any Committee professionals (the "Committee Professionals" and, together with the Professionals, the "Professional Persons") employed by the Committee (if such Committee is appointed in these Chapter 11 Cases pursuant to §§ 328 or 1103 of the Bankruptcy Code) at any time on or prior to delivery by or on behalf of the DIP Lender of a Carve-Out Trigger Notice, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (c) the Professional Fees in an aggregate amount not to exceed $125,000 for amounts incurred after the date of delivery of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court (the amounts set forth in this clause (c) being the "Post-Carve-Out Trigger Notice Cap"). "Carve-Out Trigger Notice" means a written notice delivered by email (or other electronic means) to the Debtors and their counsel, the U.S. Trustee, and counsel to the

-25-

Committee, if any, and the Prepetition Secured Parties, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Documents, stating (x) that the Post-Carve-Out Trigger Notice Cap has been invoked, (y) the DIP Loans have been accelerated, and (z) the DIP Lender does not intend to fund further advances under the DIP Loans or consent to further use of Cash Collateral.  Except as otherwise provided herein, no portion of the Carve-Out or proceeds of the DIP Credit Facility may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the Challenge of, (a) the liens and/or claims of the DIP Lender or the Prepetition Secured Parties, or the initiation or prosecution of any claim or action against the DIP Lender or the Prepetition Secured Parties, including, without limitation, any Avoidance Actions, and any other federal, state or foreign law, in respect of the DIP Documents or (b) any claims or causes of actions against the DIP Lender or the Prepetition Secured Parties, their advisors, professionals, agents and sub-agents, including formal discovery proceedings in anticipation thereof.

(b)    The Debtors shall wire transfer funds, on a weekly basis, to an escrow agent as the Debtors and the DIP Lender may agree in writing, in an amount equal to, but not to exceed, the amounts set forth in the professional fee line items under the "Restructuring Disbursements" subheading in the Budget for each such week (the "Professional Fee Escrow").  The Debtors shall use funds held in the Professional Fee Escrow exclusively to pay Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, in accordance with any interim or final orders of the Court; *provided*, however, that the Debtors' obligations to pay such allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fee Escrow.  Upon delivery of a Carve-Out Trigger Notice, the Debtors may also fund the Professional Fee Escrow with the amount of the

Post-Carve-Out Trigger Notice Cap. Except as provided in this Final Order, no funds of the Debtors shall be transferred or otherwise deposited into the Professional Fee Escrow. The Professional Fee Escrow shall not be subject to the control of the DIP Lender, and the funds transferred to the Professional Fee Escrow shall not be subject to the DIP Liens, the Adequate Protection Liens or any other liens, nor constitute DIP Collateral, Prepetition Collateral or collateral for any other obligation; *provided*, *however*, that the DIP Liens shall automatically attach to any residual interest in the Professional Fee Escrow (which liens were deemed automatically perfected as of entry of the Interim Order and shall remain automatically perfected as of entry of this Final Order), and upon satisfaction of all amounts payable from the Professional Fee Escrow, any excess proceeds shall revert to the DIP Lender until the DIP Obligations have been satisfied in full and thereafter to the Debtors (including as reorganized pursuant to a chapter 11 plan).

10. For the avoidance of doubt, notwithstanding any (i) occurrence of any Event of Default, (ii) delivery of a Carve-Out Trigger Notice, or (iii) termination of the DIP Documents, the Debtors shall be permitted to fund and make payments from the Professional Fee Escrow in accordance with the Budget and this Final Order; *provided, that*, for the further avoidance of doubt, nothing in this subparagraph is intended or shall be deemed to obligate the DIP Lender to make any further DIP Loans or advance any further funds under the DIP Credit Facility upon the occurrence of any of the events identified at (i), (ii), and (iii) in this subparagraph.

11. Payment of Compensation. Nothing herein shall (i) limit or cap the amount of U.S. Trustee Fees or any professional fees of the Debtors or any Committee that may ultimately be allowed or paid from sources other than the DIP Collateral or Prepetition Collateral, or (ii) be construed as consent to the allowance of any professional fees or expenses of the Debtors or any

Committee or affect the right of any party in interest to object to the allowance and payment of such fees and expenses.

12.    <u>Adequate Protection for Prepetition Secured Parties</u>. As adequate protection in respect of, and as consideration for any Diminution resulting from any of the incurrence and payment of the DIP Obligations, the use of Cash Collateral, the use of other Prepetition Collateral, the granting of the DIP Liens and the DIP Superpriority Claim, the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out and the imposition of the automatic stay pursuant to § 362 of the Bankruptcy Code, the Prepetition Secured Parties are hereby granted (in each case subject only to the DIP Liens, the DIP Superpriority Claim, and prior payment of the Carve-Out) the following adequate protection (subject to the Challenge rights reserved in Paragraph 21 of this Final Order):

(a)    <u>Adequate Protection Liens</u>. Effective as of the entry of the Interim Order, the Prepetition Secured Parties are hereby granted and approved on a final basis (effective and perfected by operation of law immediately upon entry of this Final Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements, filings or instruments) valid, perfected, postpetition security interests and liens (the "<u>Adequate Protection Liens</u>") in and on all of the DIP Collateral, with a priority subject and subordinate only to (i) the DIP Liens, (ii) prior payment of the Carve-Out and (iii) any liens senior by operation of law or otherwise permitted under the Prepetition Loan Documents (solely to the extent that any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, or valid, non-avoidable senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code).

(b)     Superpriority Claims. Effective as of entry of the Interim Order, the Prepetition Secured Parties are granted and approved on a final basis, administrative superpriority expense claims in the Chapter 11 Cases and any Successor Case(s) (the "Adequate Protection Superpriority Claims"), junior and subordinate only to the DIP Obligations and the Carve-Out, pursuant to section 507(b) having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under §§ 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed Adequate Protection Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof including, without limitation, any proceeds or property recovered in connection with the pursuit of Avoidance Actions. The DIP Superpriority Claim shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out.

(c)     506(c) and 552(b) Waivers. The Prepetition Secured Parties' consent to use of Cash Collateral and Prepetition Collateral under the Interim Order and this Final Order and the Debtors' right to use Cash Collateral and Prepetition Collateral: (i) is in lieu of any § 506(c) claim, payment or priority for the costs or expenses of the administration of any of these Chapter 11 Cases; and (ii) is granted as consideration for (among other things) the waiver of the exceptions provided in §§ 552(b)(1) and (2) of the Bankruptcy Code, and accordingly, such exception set forth under § 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or the Prepetition

Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral.

(d)    Prepetition Secured Parties' Fees and Expenses.  The Debtors shall pay all outstanding prepetition and all postpetition reasonable and documented fees and expenses incurred by Prepetition Secured Parties, including, without limitation, the reasonable and documented fees and expenses of counsel to the Prepetition Secured Parties in accordance with the procedures identified in Paragraph 8.

13.    Credit Bid Rights.  In connection with any sale or disposition of all or any portion of the DIP Collateral, including in each case pursuant to §§ 9-610 or 9-620 of the Uniform Commercial Code, at any sale thereof conducted under the provisions of the Bankruptcy Code, including § 363 of the Bankruptcy Code or as part of a restructuring plan subject to confirmation under § 1129 of the Bankruptcy Code, or at any sale or foreclosure conducted by the DIP Lender, by a chapter 7 trustee under § 725 of the Bankruptcy Code, or otherwise, in each case in accordance with applicable law and, with respect to any credit bid, § 363(k) of the Bankruptcy Code, (a) the DIP Lender shall have the power and right to "credit bid" the full amount of all DIP Obligations (inclusive of the DIP Roll-Up Loan, subject to the Challenge rights in Paragraph 21 of this Final Order) in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral and (b) subject to the terms of Paragraph 21 herein, the Prepetition Lender shall have the right to credit bid the Prepetition Loan Obligations, in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the Prepetition Loan Collateral.  The Debtors, on behalf of themselves and the estates, further hereby agree not to challenge the rights granted to the DIP Lender and the Prepetition Lender in this Paragraph and shall not support any Challenge to such rights.  Notwithstanding any termination of the DIP Credit

Facility, the right to credit bid shall continue until all DIP Obligations have been indefeasibly paid in full in cash.

14.     Maturity Date.  The maturity date (the "Maturity Date") of the DIP Agreement is the earlier of (a) the date which is ninety (90) days following the Petition Date, (b) the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases; (c) the date of filing or support by the Debtors of a plan of reorganization other than the plan contemplated by the Restructuring Agreement; (d) entry of an order by the Bankruptcy Court converting the Chapter 11 Cases to a proceeding or proceedings under chapter 7 of the Bankruptcy Code or appointing a chapter 11 trustee; (e) entry of a final order by the Bankruptcy Court dismissing the Chapter 11 Cases; or (f) the date of termination of the DIP Credit Facility and the acceleration of any outstanding extensions of credit under the Loans in accordance with the terms of the DIP Agreement.

15.     Events of Default.  The occurrence of an "Event of Default" by the Debtors pursuant to Section 10 of the DIP Agreement shall constitute an event of default under this Final Order, unless expressly waived by the DIP Lender in its sole discretion in writing in accordance with the DIP Documents (each, an "Event of Default").

16.     Rights and Remedies Upon Event of Default. Upon the occurrence and during the continuance of an Event of Default, the DIP Lender shall have all rights to which it is entitled under the DIP Agreement, the Interim Order and this Final Order, subject to the rights and defenses of the Debtors under this Final Order.

17.     Proofs of Claim.  Neither the DIP Lender nor the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  The Stipulations set forth in Paragraph D of this Final Order shall be deemed to

constitute a timely filed proof of claim for the Prepetition Secured Parties upon approval of this Final Order.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement as it sees fit) a proof of claim and/or proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

18.    Other Rights and Obligations.

(a)    Good Faith Under Section 364(e) of the Bankruptcy Code.  The DIP Lender and the Prepetition Secured Parties have acted in good faith in connection with (i) negotiating the DIP Documents and the loans to be made pursuant thereto, (ii) consenting to the Debtors' use of Cash Collateral, and (iii) their reliance on the Interim Order and this Final Order.  Based on the findings set forth in the Interim Order and this Final Order and the record made during the Interim Hearing and Final Hearing, and in accordance with § 364(e) of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), in the event any or all of the provisions of the Interim Order or this Final Order are hereafter reversed or modified by a subsequent order of this or any other Court, the DIP Lender and the Prepetition Secured Parties are entitled to all of the benefits and protections to the extent provided in § 364(e) of the Bankruptcy Code.

(b)    Binding Effect.  The DIP Liens, DIP Superpriority Claim, and the Adequate Protection Liens and other rights and remedies granted under the Interim Order and this Final Order to the DIP Lender and the Prepetition Secured Parties, as applicable, shall continue in these Chapter 11 Cases and any Successor Case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any Successor Case(s), and such liens and security interests

shall maintain their first priority as provided in the Interim Order and this Final Order until all the DIP Obligations or the Prepetition Obligations, as applicable, have been indefeasibly paid in full in accordance with the DIP Documents, the Prepetition Loan Documents or the Orders, as applicable; *provided*, for the avoidance of doubt, that the DIP Liens (to the extent of the DIP Roll-Up Loan), DIP Superpriority Claim (to the extent of the DIP Roll-Up Loan), and the Adequate Protection Liens shall be subject to the Challenge rights reserved in Paragraph 21 of this Final Order.

(c)     DIP Lender Expenses.  If any Debtor fails to pay any amounts or furnish any required proof of payment due to third persons or entities to safeguard or preserve the DIP Collateral, including to obtain any insurance policies DIP Lender reasonably determines to be appropriate, or otherwise as required under the terms of the DIP Agreement, then the DIP Lender may do any or all of the following after reasonable notice to the Debtors:  (i) make payment of the same or any part thereof; (ii) set up such reserves as the DIP Lender deems necessary to protect the DIP Lender from the exposure created by such failure; or (iii) obtain and maintain insurance policies, including of the type discussed in Section 9(c) of the DIP Agreement, and take any action with respect to such policies as the DIP Lender deems prudent.  Any reasonable and documented costs and expenses incurred by the DIP Lender in connection with actions permitted by the DIP Documents to protect or preserve the DIP Collateral or to enforce rights thereunder shall constitute DIP Obligations under the DIP Agreement, shall be secured by the DIP Liens on the DIP Collateral, and shall be payable on demand; any such amounts not paid when due shall accrue interest at the Default Rate as provided in Section 3(b) of the DIP Agreement.  Any payments made by the DIP Lender shall not constitute an agreement by the DIP Lender to make similar

payments in the future or a waiver by the DIP Lender of any Event of Default under the DIP Agreement.

(d)     The DIP Lender's Liability for DIP Collateral.  So long as the DIP Lender complies with reasonable commercial lending practices, the DIP Lender shall not in any way or manner be liable or responsible for:  (i) the safekeeping of the DIP Collateral; (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (iii) any diminution in the value thereof; or (iv) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other person whomsoever, provided that this Paragraph 18(d) shall not apply to CERCLA liability.  All risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors.

(e)     Remedies Cumulative; No Waiver.  The DIP Lender's rights and remedies under the DIP Agreement, the DIP Documents, and all other agreements shall be cumulative.  The DIP Lender shall have all other rights and remedies not inconsistent herewith as provided under the New York Uniform Commercial Code, by law, or in equity, subject to the requirements of the Bankruptcy Code.  No exercise by the DIP Lender of one right or remedy shall be deemed an election.  The failure or delay by the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise any right or remedy under the Interim Order, this Final Order, the DIP Documents, the Prepetition Loan Documents, or applicable law shall not constitute a waiver thereof, and no waiver of any Event of Default shall be deemed a continuing waiver.  No waiver or consent by the DIP Lender or the Prepetition Secured Parties shall be effective unless made in writing and signed by the applicable party, and then shall be effective only in the specific instance and for the specific purpose for which it was given.  No consent required hereunder by any of the

DIP Lender or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by the DIP Lender or the Prepetition Secured Parties, respectively.

(f)      Demand; Protest.  The Debtors waive demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees at any time held by the DIP Lender on which the Debtors may in any way be liable.

(g)      Borrower Liability.  Any of the Debtors may, acting singly, request a Loan under the DIP Agreement.  Each of the Debtors hereby appoint each other as agent for the other for all purposes under the DIP Agreement, including with respect to requesting Loans.  Each of the Debtors shall be jointly and severally obligated to repay all Loans made under the DIP Agreement, regardless of which of the Debtors actually receives said Loans, as if each of the Debtors directly received all Loans.  Each of the Debtors waive any right to require the DIP Lender to:  (i) proceed against the Debtors or any other person; (ii) proceed against or exhaust any security; (iii) seek to impose the equitable doctrine of marshalling; or (iv) pursue any other remedy.  Subject to the terms of the Interim Order, this Final Order, and the DIP Agreement, the DIP Lender may exercise or not exercise any right or remedy it has against any Debtor or any security they hold (including the right to foreclose by judicial or non-judicial sale) without affecting any of the Debtors' liability.  Notwithstanding any other provision of the DIP Agreement or other related document, each Debtor irrevocably waives all rights that it may have at law or in equity (including, without limitation, any law subrogating the Debtors to the rights of the DIP Lender under the DIP Agreement) to seek contribution, indemnification or any other form of reimbursement from any other Debtor, or any other Person now or hereafter primarily or secondarily liable for any of the

-35-

DIP Obligations, for any payment made by the Debtors with respect to the DIP Obligations in connection with the DIP Agreement or otherwise and all rights that it might have to benefit from, or to participate in, any security for the DIP Obligations as a result of any payment made by the Debtors with respect to the Obligations in connection with the DIP Agreement or otherwise; *provided*, *further*, that, notwithstanding anything to the contrary herein or in the DIP Agreement or any other related document, no Debtor shall have any obligation to indemnify, contribute to, or reimburse the DIP Lender or any of its affiliates, agents, or representatives for any losses, claims, damages, liabilities, or expenses to the extent arising from or relating to a successful Challenge (as defined in Paragraph 21 of this Final Order).

(h)    Amendments in Writing, Integration.  Except as expressly set forth in the DIP Agreement, all amendments to or terminations of the DIP Agreement or the DIP Documents must be in writing signed by each of the parties thereto.  All prior agreements, understandings, representations, warranties, and negotiations between any of the parties thereto with respect to the subject matter of the DIP Agreement and the DIP Documents, if any, are merged into the DIP Agreement and the DIP Documents.

19.    Releases.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 19 and the Stipulations set forth in Paragraph D of this Final Order shall be deemed effective upon entry of this Final Order, subject only to the rights set forth in Paragraph 21 below.

(a)    The Debtors forever and irrevocably release, discharge, and acquit (i) the DIP Lender, solely in its capacity as DIP Lender, under the DIP Documents; (ii) the DIP Lender's affiliates and predecessors in interest; and (iii) the DIP Lender's former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors,

shareholders, managers, consultants, accountants, and attorneys, solely in their capacity as such (collectively, the "DIP Lender Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, including without limitation, all Avoidance Actions, provided that no such parties will be released, discharged, and acquitted for any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such parties' actual fraud, gross negligence, bad faith, self-dealing or willful misconduct.  For the avoidance of doubt, nothing contained herein shall relieve the DIP Lender from fulfilling any of its commitments under this Final Order or the DIP Documents.

(b)    Subject to the Challenge rights set forth in Paragraph 21 of this Final Order and without prejudice to the rights of interested parties under Paragraph 21 of this Final Order, the Debtors forever and irrevocably release, discharge, and acquit the Prepetition Secured Parties, solely in their capacity as prepetition lenders, respectively, under the Prepetition Loan Documents, and their affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys, solely in their capacity as such (collectively, the "Prepetition Secured Party Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, including without limitation, all Avoidance Actions, provided that no such parties will be released, discharged, and acquitted for any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations to the extent determined in a final, non-appealable judgment of a court of competent

jurisdiction to have resulted from such parties' actual fraud, gross negligence, bad faith, self-dealing or willful misconduct. For the avoidance of doubt, the foregoing release applies only to conduct, acts and omissions that occurred on or prior to the entry of the Final Order, and the release does not apply to future conduct, acts or omissions or ongoing obligations of the Prepetition Secured Parties to the Debtors under the Prepetition Loan Documents.

20.    <u>Indemnity</u>. The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Loans, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Credit Facility, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the DIP Lender shall be and hereby is indemnified and held harmless by the Debtors and their estates in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such party will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such party's actual fraud, gross negligence, bad faith, or willful misconduct; *provided*, *further*, that, notwithstanding anything to the contrary herein or in the DIP Agreement or any other related document, no Debtor shall have any obligation to indemnify, contribute to, or reimburse the DIP Lender or any of its affiliates, agents, or representatives for any losses, claims, damages, liabilities, or expenses to the extent arising from or relating to a successful Challenge (as defined in Paragraph 21 of this Final Order). No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this Paragraph 20 or in the DIP Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender.

21.    <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>. The releases set forth in Paragraph 19 above and the Stipulations set forth in Paragraph D of this Final Order were binding in all circumstances upon the Debtors upon entry of the Interim Order, as ratified by this Final Order, and shall be binding upon the Debtors and any of their respective successors and assigns in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges as of the Petition Date.  In addition, such releases and Stipulations shall be binding upon the Debtors' estates and all other parties in interest, including any Committee and any other person acting on behalf of the Debtors' estates (including any chapter 7 trustee or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to § 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), unless and to the extent that a party in interest with proper standing granted by order of this Court (to the extent required) has filed an adversary proceeding or initiated a contested matter under the Bankruptcy Rules (i) by no later than the earlier of seventy-five (75) calendar days after entry of the Interim Order or confirmation of a chapter 11 plan, subject to further extension by (a) written agreement of the Debtors and the Prepetition Secured Parties; or (b) an order of this Court obtained on notice and after a hearing (in each case, a "<u>Challenge Period</u>" and the date of expiration of each Challenge Period, a "<u>Challenge Period Termination Date</u>"); (ii) seeking to avoid, object to, or otherwise challenge the findings in the Interim Order or this Final Order and the Debtors' Stipulations or releases (any such claim, a "<u>Challenge</u>"); and (iii) in which this Court enters a final order in favor of the plaintiff or the movant sustaining any such Challenge in any such filed adversary proceeding or initiated contested matter.  Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any

such Challenge is filed and overruled), (i) any and all such Challenges by any party (including any Committee, any chapter 11 trustee and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; and (ii) the Stipulations set forth in Paragraph D of this Final Order shall be binding on all parties in interest, including any Committee.  For the avoidance of doubt, if any party in interest timely commences a Challenge, the releases and Stipulations set forth in Paragraph 19 and Paragraph D of this Final Order shall remain binding in all respects on all other parties in interest other than the challenging party, and such releases and Stipulations shall continue in full force and effect as to all such non-challenging parties.  The releases and Stipulations set forth in Paragraph 19 and Paragraph D of this Final Order shall also remain binding on the challenging party except solely to the extent of the specific claims and defenses expressly asserted in the timely and properly filed Challenge, and only if and to the extent such Challenge is subsequently sustained by a final order. Nothing in the Interim Order or this Final Order vests or confers on any person or entity, including, without limitation, any Committee, standing or authority to pursue any claims or causes of action belonging to the Debtors or their estates, including, without limitation, any Challenges.  For the avoidance of doubt, notwithstanding anything else to the contrary in the Interim Order or this Final Order, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall have until the expiration of Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this Paragraph, to bring a Challenge regardless whether such party is deemed a successor to the Debtors and such chapter 7 or chapter 11 trustee shall not be bound by the Debtors' Stipulations in the Interim Order or this Final Order prior to the expiration of the Challenge Period.

22.     <u>Restrictions on Use of Funds</u>. Subject to the final sentence of this Paragraph 22, but notwithstanding any other provision in the Interim Order, this Final Order or the DIP Documents to the contrary, without the express written consent of the DIP Lender, no proceeds of the DIP Credit Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, any Committee, any trustee appointed under these Chapter 11 Cases or any Successor Case(s), or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to § 364 of the Bankruptcy Code or otherwise, other than from the DIP Lender, unless the proceeds of such loans or accommodations are or will be sufficient, and will be first used, to indefeasibly pay in full in cash all DIP Obligations; (b) investigate (except as set forth in this Paragraph below), assert, join, commence, support or prosecute any Challenge or other action or claim, counter-claim, proceeding, application, motion, objection, defense, or other adversary proceeding or contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the DIP Lender or any other DIP Lender Releasee or the Prepetition Secured Parties or any other Prepetition Secured Party Releasees with respect to any transaction, occurrence, omission, or action including, without limitation, (i) any Avoidance Actions, (ii) any action relating to any act, omission or aspect of the relationship between or among any of the DIP Lender Releasees or the Prepetition Secured Party Releasees, on the one hand, and any of the Debtors, on the other, (iii) any action with respect to the validity and extent of the DIP Obligations, the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens or the Adequate Protection Liens, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the DIP Liens, the Prepetition Obligations,

-41-

the Prepetition Liens, or the Adequate Protection Liens, or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) DIP Lender in respect of the enforcement of the DIP Liens; (c) subject to authority provided to the Debtors pursuant to the DIP Documents, pay any claim (as defined in the Bankruptcy Code) of a prepetition creditor (as defined in the Bankruptcy Code) if the Debtors have received a written objection to such payment from the DIP Lender; and/or (d) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Documents, without the express written consent of the DIP Lender.  Notwithstanding the foregoing, up to $25,000 (the "Challenge Budget") in the aggregate of the DIP Credit Facility, DIP Collateral, Cash Collateral and Carve-Out may be used by any Committee or any chapter 7 or 11 trustee appointed or elected during the Challenge Period to investigate Challenges against the Prepetition Secured Party Releasees and the legality, validity, priority, perfection, enforceability and extent of the Prepetition Liens.

23.     Limitation on Surcharge. Without limiting the terms of the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender, the Prepetition Secured Parties, the Carve-Out (other than the Professional Persons that are the beneficiaries of the Carve-Out as provided for in the Budget), the DIP Collateral or the Prepetition Collateral, pursuant to §§ 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender and the Prepetition Secured Parties (and the Professional Persons that are the beneficiaries of the Carve-Out as provided for in the Budget in the case of an asserted surcharge against the Carve-Out); *provided* that nothing herein shall alter the Challenge Budget.  No action, inaction or acquiescence by the DIP Lender or the Prepetition Secured Parties shall be deemed to be or shall

be considered evidence of any alleged consent to a surcharge against either the DIP Lender, the DIP Collateral, the Prepetition Secured Parties or the Prepetition Collateral.

24.    No Marshaling.  The Prepetition Secured Parties and the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, no party (other than the Prepetition Secured Parties and the DIP Lender) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral or the Prepetition Collateral (as applicable) after an Event of Default under the DIP Documents.

25.    Limits on Lender Liability.  Nothing in this Final Order, any of the Prepetition Documents or the DIP Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of the Chapter 11 Cases or any Successor Case(s).  The DIP Lender and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Credit Facility or authorized the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a fiduciary or agent with respect to the operation or management of the Debtors.  Nothing in this Final Order or the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

26.     <u>Survival</u>.  The provisions of the Interim Order and this Final Order and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) confirming any Plan in the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or a Successor Case, (c) to the extent authorized by applicable law, dismissing the Chapter 11 Cases, (d) withdrawing the reference of the Chapter 11 Cases from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court and the Orders.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Lender and the Prepetition Secured Parties pursuant to the Interim Order, this Final Order, and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(e), above, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Case(s), and shall maintain their priority as provided by this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted) and all commitments to extend credit under the DIP Credit Facility have been terminated.  The terms and provisions of this Final Order shall be binding upon, and inure to the benefit of, the Debtors, the DIP Lender, the Prepetition Secured Parties and each of their respective successors and assigns, including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed or elected in a case for any Debtor under any chapter of the Bankruptcy Code, including any Successor Case.  Subject to Paragraph 21, the terms and provisions of this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed or elected under chapter 7 or chapter 11 of the Bankruptcy Code.

(a)     Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(b)     Enforceability.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry of this Final Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

27.     Interim Order.  Except as specifically amended, superseded, or modified herein, the provisions of the Interim Order and any actions taken by the Debtors, the DIP Lender, or the Prepetition Secured Parties in accordance therewith shall remain in effect and are hereby ratified by this Final Order, and the liens, claims, and protections granted pursuant to this Final Order shall be in addition to, and not in replacement of, those granted pursuant to the Interim Order.

28.     No Modification of Final Order.  Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Credit Facility have been terminated, the Debtors shall not seek or consent to, directly or indirectly, any modification, stay, vacatur, or amendment to the Interim Order or this Final Order without the prior written consent of the DIP Lender and the Prepetition Secured Parties, and no such consent shall be implied by any action or inaction of the DIP Lender or the Prepetition Secured Parties.

29.     No Third-Party Rights.  Except as explicitly provided for herein, the Interim Order and this Final Order do not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

30.     Headings.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

31.     Governmental Consents.  Except as otherwise provided herein, the execution, delivery and performance by the Debtors of the DIP Documents and the consummation of the transactions contemplated by the DIP Documents do not and will not require any registration with, consent or approval of, or notice to, or other action to, with or by, any governmental authority.

32.     Service of Final Order.  Within two (2) business days following entry of this Final Order, the Debtors shall serve notice of the entry of this Final Order, together with copies of this Final Order, on: (i) the parties having been given notice of the Final Hearing; and (ii) any party which has filed prior to such date a request for notices with this Court.

33.     Retention of Jurisdiction.  This Court has and will retain jurisdiction to enforce this Final Order.