**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 26-10593 (CTG) |
| Debtors. | (Jointly Administered) |
| | **RE:  Docket Nos. 9 and 13** |

**MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF
AN ORDER: (I) APPROVING THE ADEQUACY OF THE DISCLOSURE
STATEMENT; AND (II) CONFIRMING THE JOINT PREPACKAGED
CHAPTER 11 PLAN OF REORGANIZATION OF IMPAC
<u>MORTGAGE HOLDINGS, INC. AND AFFILIATES THEREOF</u>**

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:    (213) 623-9300
Email: tania.moyron@dentons.com
           van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Geoffrey M. Miller (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Tel:    (212) 768-6700
Email: john.beck@dentons.com
           geoffrey.miller@dentons.com

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel:    (302) 652-4100
Email: ljones@pszjlaw.com
           debertenthal@pszjlaw.com
           tcairns@pszjlaw.com

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT...........................................................................................1

II.     BACKGROUND ............................................................................................................2

III.    OVERVIEW OF THE PLAN ........................................................................................4

IV.     SOLICITATION OF VOTES ON THE PLAN............................................................7

V.      COMBINED HEARING NOTICE..............................................................................8

VI.     OBJECTIONS TO APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN ........................................................................................9

VII.    THE DISCLOSURE STATEMENT SATISFIES THE REQUIREMENTS OF § 1125
AND SHOULD BE APPROVED...........................................................................................9

VIII.   THE CONFIRMATION ORDER RESOLVES INFORMAL COMMENTS RECEIVED
BY THE DEBTORS .............................................................................................................11

IX.     THE PLAN SATISFIES THE REQUIREMENTS OF § 1129 AND SHOULD BE
CONFIRMED .......................................................................................................................12

    A.    The Plan Satisfies § 1129(a)(1): Compliance with the Bankruptcy Code. .......................12

        1.    The Plan's Classification of Claims and Interests Satisfies § 1122. ...........................13

        2.    The Plan Satisfies § 1123(a): Mandatory Contents of the Plan. ................................16

        3.    The Plan Complies with § 1123(b): Discretionary Contents of the Plan......................19

    B.    The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code
    (§ 1129(a)(2))......................................................................................................................25

    C.    The Plan Was Proposed in Good Faith (§ 1129(a)(3))....................................................28

    D.    All Payments to Be Made by the Debtors in Connection with these Cases Have Been
    Approved by or Are Subject to the Approval of the Court (§ 1129(a)(4))...............................30

    E.    The Plan Discloses All Required Information Regarding Post-Confirmation Directors,
    Management, and Insiders (§ 1129(a)(5))..............................................................................31

    F.    The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval (§
    1129(a)(6)). .........................................................................................................................32

    G.    The Plan Satisfies the "Best Interests" Test (§ 1129(a)(7)). ............................................33

    H.    The Plan Does Not Satisfy § 1129(a)(8) But May Still be Confirmed Pursuant to §§
    1129(a)(10) and 1129(b). .....................................................................................................34

    I.    The Plan Provides for the Payment of Unclassified Claims (§ 1129(a)(9)). ....................35

    J.    An Impaired Class Has Accepted the Plan (§ 1129(a)(10))..............................................36

K.    The Plan is Feasible (§ 1129(a)(11))..................................................................... 36

L.    The Plan Provides for the Payment of Certain Fees (§ 1129(a)(12))............................. 40

M.    Miscellaneous Provisions (§ 1129(a)(13)-(16))...................................................... 40

N.    The Plan Satisfies the "Cramdown" Requirements. ................................................. 40

    1.    The Plan Does Not Discriminate Unfairly with Respect to the Deemed Rejecting Classes........................................................................................................... 41

    2.    The Plan is "Fair and Equitable". .................................................................... 42

O.    The Plan Satisfies § 1129(c): Only One Plan. ....................................................... 43

P.    The Plan Satisfies § 1129(d): Principal Purpose.................................................... 43

X.    IMMEDIATE EFFECTIVENESS .............................................................................. 44

XI.    CONCLUSION.................................................................................................... 45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2U, Inc.*,
No. 24-11279 (MEW) (Bankr. D. Del. Sept. 9, 2024)...............................................................27

*In re Adamson Co.*,
42 B.R. 169 (Bankr. E.D. Va. 1984)........................................................................................38

*In re Adelphia Bus. Solutions, Inc.*,
341 B.R. 415 (Bankr. S.D.N.Y. 2003) .....................................................................................37

*In re Am. Capital Equip., LLC*,
688 F.3d 145 (3d Cir. 2012).....................................................................................................37

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006) ....................................................................................................41

*In re Belk, Inc.*,
No. 21-30630 (MI) (Bankr. S.D. Tex. Feb. 23, 2021).............................................................27

*In re Caribbean Petroleum Corp.*,
444 B.R. 263 (Bankr. D. Del. 2010) ........................................................................................30

*In re Cellular Info. Sys., Inc.*,
171 B.R. 926 (Bankr. S.D.N.Y. 1994)......................................................................................37

*In re Clarkson*,
767 F.2d 417 (8th Cir. 1985) ...................................................................................................38

*In re Coram Healthcare Corp.*,
271 B.R. 228 (Bankr. D. Del. 2001) .......................................................................................29

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) .......................................................................................14

*In re Deluca*,
No. 95-11924, 1996 WL 910908 (Bankr. E.D. Va. Apr. 12, 1996) ........................................38

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992)..........................................................................33, 36, 37

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)................................................................................................25, 42

*In re Exide Techs.*,
  303 B.R. 48 (Bankr. D. Del. 2003) ...................................................................12, 43

*In re FTX Trading LTD.*,
  No. 22-11068 (JTD) (Bankr. D. Del. June 26, 2024) ...........................................23

*In re Gilbertson Rests. LLC*,
  No. 04-00385, 2005 WL 783063 (Bankr. N.D. Iowa Apr. 4, 2005).......................29

*In re Jersey City Med. Ctr.*,
  817 F.2d 1055 (3d Cir. 1987)...........................................................................14, 42

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
  987 F.2d 154 (3d Cir. 1993).............................................................................13, 41

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *order aff'd*, 843 F.2d 636 (2d Cir. 1988) ..12, 31, 37, 42

*In re Kaiser Aluminum Corp.*,
  No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006), *aff'd*, 343
  B.R. 88 (D. Del. 2006).........................................................................................13

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988)...........................................................................33, 37

*In re Key Energy Servs., Inc.*,
  No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016) ...........................................27

*In re Leslie Fay Cos.*,
  207 B.R. 764 (Bankr. S.D.N.Y. 1997).................................................................33

*In re Machne Menachem, Inc.*,
  233 F. App'x 119 (3d Cir. 2007) ........................................................................12

*In re Mallinckrodt PLC*,
  No. 23-11258 (JTD) (Bankr. D. Del. Oct. 10, 2023)...........................................23

*In re Maxcom Telecomunicaciones, S.A.B. de C.V.*,
  No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013) ...........................................27

*In re My Job Matcher, Inc.*,
  No. 25-11280 (KBO) ...........................................................................................44

*Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re
  Integrated Resources, Inc.)*,
  147 B.R. 650 (S.D.N.Y. 1992).............................................................................30

*In re One Times Square Assocs. Ltd. P'ship*,
159 B.R. 695 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd mem.*, 41 F.3d 1502 (2d Cir. 1994) ...................................................................37

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988)............................................................................10

*In re Pace Indus., LLC*,
No. 20-10927 (MFW), 2020 WL 5015839 (Bankr. D. Del. May 29, 2020) ...........................44

*In re Paragon Offshore PLC*,
No. 16-10386 (CSS), 2016 WL 6699318 (Bankr. D. Del. Nov. 15, 2016) ...........................38

*In re Physiotherapy Holdings, Inc., et al.*,
No. 13-12965 (Bankr. D. Del. Nov. 14, 2013) ........................................................27

*In re Powin, LLC*,
No. 25-16137 (MBK) (Bankr. D. N.J. Dec. 1, 2025) .................................................23

*In re PPI Enters. (U.S.), Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998) ...................................................................29

*In re Prudential Energy Co.*,
58 B.R. 857 (Bankr. S.D.N.Y. 1986)...............................................................37, 38

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000).....................................................................24, 26, 28

*In re Quiksilver, Inc.*,
No. 15-11880 (BLS) (Bankr. D. Del. Jan. 29, 2016)..................................................25

*In re Samson Resources Corp.*,
No. 15-11934 (CSS) (Bankr. D. Del. Feb. 13, 2017) .................................................25

*In re SGL Carbon Corp.*,
200 F.3d 154 (3d Cir. 1999)...........................................................................28

*In re Sherwood Square Assocs.*,
107 B.R. 872 (Bankr. D. Md. 1989) ...............................................................31, 32

*Smith v. Van Gorkom*,
488 A.2d 858 (Del. 1985) .............................................................................30

*In re Sound Radio, Inc.*,
93 B.R. 849 (Bankr. D.N.J. 1988), *aff'd in part*, 103 B.R. 521 (D.N.J. 1989),
*aff'd*, 908 F.2d 964 (3d Cir. 1990) .................................................................38

*In re Source Enters., Inc.*,
   No. 06-11707, 2007 WL 2903954 (Bankr. S.D.N.Y. Oct. 1, 2007), *aff'd*, 392
   B.R. 541 (S.D.N.Y. 2008)................................................................................29

*In re Spansion, Inc.*,
   426 B.R. 114 (Bankr. D. Del. 2010) ................................................20, 21, 23

*In re Spiegel, Inc.*,
   No. 03-11540 (BRL), 2005 WL 1278094 (Bankr. S.D.N.Y. May 25, 2005) ..........................18

*In re Texaco Inc.*,
   84 B.R. 893 (Bankr. S.D.N.Y. 1988)................................................32, 37, 38

*In re Tidewater Inc.*,
   Case No. 17-11132 (BLS) (Bankr. D. Del. July 17, 2017)................................25

*In re Toy & Sports Warehouse, Inc.*,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984)..............................................................38

*In re Trans. World Airlines, Inc.*,
   185 B.R. 302 (Bankr. E.D. Mo. 1995)............................................................32

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011) ..........................................................12, 37

*In re View, Inc.*,
   No. 24-10692 (CTG) (Bankr. D. Del. May 15, 2024) ....................................27

*W. Mining & Invs., LLC v. Bankers Trust Co.*,
   No. C.A. 02-1445 GMS, 2003 WL 503403 (D. Del. Feb. 19, 2003)................24

*In re W.E. Parks Lumber Co.*,
   19 B.R. 285 (Bankr. W.D. La. 1982)..............................................................32

*In re W.R. Grace & Co.*,
   446 B.R. 96 (Bankr. D. Del. 2011) ................................................................24

*In re Waern Bldg. Corp.*,
   145 F.2d 584 (7th Cir. 1944) ..........................................................................37

*In re Walker*,
   165 B.R. 994 (Bankr. E.D. Va. 1994)............................................................38

*In re Washington Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011)..............................................................21

*In re WeWork Inc.*,
   No. 23-19865 (JKS) (Bankr. D. N.J. May 30, 2024)......................................23

iv

*In re Whittaker Mem'l Hosp. Ass'n*,
   149 B.R. 812 (Bankr. E.D. Va. 1993)......................................................................37

*In re WorldCom Inc.*,
   Case No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31,
   2003) ........................................................................................................................42

*In re Zenith Elec. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ...........................................................22, 23, 41

**Statutes**

11 U.S.C. § 1122.............................................................................................................13, 16

11 U.S.C. § 1123(a) ...............................................................................................................16

11 U.S.C. § 1123(a)(1)...........................................................................................................16

11 U.S.C. § 1123(a)(2)...........................................................................................................17

11 U.S.C. § 1123(a)(3)...........................................................................................................17

11 U.S.C. § 1123(a)(4)...........................................................................................................17

11 U.S.C. § 1123(a)(5)......................................................................................................17, 18

11 U.S.C. § 1123(a)(6)...........................................................................................................18

11 U.S.C. § 1123(a)(7)...........................................................................................................19

11 U.S.C. § 1123(b)(1), (2)....................................................................................................19

11 U.S.C. § 1123(b)(3)(A)......................................................................................................20

11 U.S.C. § 1123(b)(6) ...........................................................................................................23

11 U.S.C. § 1125(a)(1)............................................................................................................10

11 U.S.C. § 1125(b)..............................................................................................................2, 26

11 U.S.C. § 1129(a)(1)............................................................................................................12

11 U.S.C. § 1129(a)(2)......................................................................................................26, 28

11 U.S.C. § 1129(a)(3)..................................................................................................28, 29, 30

11 U.S.C. § 1129(a)(4)......................................................................................................30, 31

11 U.S.C. § 1129(a)(5)..................................................................................................31, 32, 33

11 U.S.C. § 1129(a)(5)(A)(ii) ...................................................................................31

11 U.S.C. § 1129(a)(6) ............................................................................................33

11 U.S.C. § 1129(a)(8) ........................................................................................35, 41

11 U.S.C. § 1129(a)(9) ........................................................................................35, 36

11 U.S.C. § 1129(a)(9)(B) .......................................................................................36

11 U.S.C. § 1129(a)(9)(C) .......................................................................................36

11 U.S.C. § 1129(a)(10) ...........................................................................................36

11 U.S.C. § 1129(a)(11) .................................................................................36, 37, 40

11 U.S.C. § 1129(a)(12) ...........................................................................................40

11 U.S.C. §§ 1129(a)(13)-(16) .................................................................................40

11 U.S.C. § 1129(b)(1) .............................................................................................41

11 U.S.C. § 1129(b)(2)(B) .......................................................................................43

11 U.S.C. § 1129(b)(2)(C) .......................................................................................43

11 U.S.C. § 1129(c) .................................................................................................44

11 U.S.C. § 1129(d) .................................................................................................44

28 U.S.C. § 1930 .....................................................................................................40

28 U.S.C. § 1930(a) .................................................................................................40

United States Code title 11 § 1129 ..............................................................1, 2, 12, 19

Bankruptcy Code chapter 7 ...................................................................................33, 34

Bankruptcy Code chapter 11 ............................................................................... *passim*

Bankruptcy Code § 506(b) .........................................................................................5

Bankruptcy Code § 507(a) ........................................................................................14

Bankruptcy Code § 510(b) ........................................................................................16

Bankruptcy Code §§ 1122 and 1123 ......................................................................12, 13

Bankruptcy Code § 1124 ..........................................................................................15

Bankruptcy Code § 1125 ........................................................................................9, 10, 11, 26

Bankruptcy Code §§ 1125 and 1126..........................................................................................26

Bankruptcy Code § 1126(g)..........................................................................................6, 35, 41

Bankruptcy Code § 1129(a)(7) ..........................................................................................33, 34

Securities Act of 1933...........................................................................................................27

Securities Act of 1933 § 5.................................................................................................18, 44

Securities Act Section 4(a)(2)...................................................................................................27

**Other Authorities**

Bankruptcy Rule 3016(c)...........................................................................................................11

Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002.................................................................44

Fed. R. Bankr. P. 3016(c) ........................................................................................................11

Federal Rules of Bankruptcy Procedure Rule 1015(b) ..................................................................2

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 .........................................10

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 .........................................12

Rule 144A ...............................................................................................................................27

*Rule 2015.3* .............................................................................................................................3

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787..............................................12

Impac Mortgage Holdings, Inc. ("Impac") and its subsidiaries, the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby submit this memorandum of law in support of the request, pursuant to § 1129 of title 11 of the United States Code (the "Bankruptcy Code"), [2] for the entry of an order (the "Confirmation Order"): (a) approving the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 9] (the "Disclosure Statement"); and (b) confirming the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 13], and as it may be further amended, modified, and supplemented from time to time (the "Plan").[3] In support of confirmation of the Plan and approval of the Disclosure Statement, the Debtors respectfully represent as follows:

## I.

## PRELIMINARY STATEMENT

1. After months of extensive, good-faith, arm's-length negotiations with their key stakeholders, the Debtors entered into that certain Restructuring Support Agreement (the "RSA") prepetition and then filed these Chapter 11 Cases to effectuate a restructuring through the implementation of the terms of the RSA and the related Plan, which provide the Debtors with a clear path to emerge from these Chapter 11 Cases.

2. The Debtors did not receive any objections to the Disclosure Statement and Plan. The Debtors received a couple of limited comments from the U.S. Trustee, the Securities and Exchange Commission, the Department of Justice, Enterprise Bank, and Newport Gateway Office

---

[2] All references to 'section' or '§' herein are to the Bankruptcy Code unless otherwise noted.

[3] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan and Disclosure Statement, as applicable.

LLC, the Debtors' landlord. The comments received in connection with the Plan have been or will be addressed in the Confirmation Order, as discussed below.

3. The Debtors now seek the entry of an order approving the Disclosure Statement and the entry of the Confirmation Order approving the Plan, which provides for a comprehensive restructuring of the Debtors' prepetition obligations, preserves the going-concern value of the Debtors' businesses, and maximizes recoveries for creditors.

4. For the reasons fully set forth below, (a) the Disclosure Statement satisfies the requirements of § 1125, and (b) the Plan satisfies all of the necessary prerequisites to confirmation under § 1129, plus also achieves the objectives of chapter 11 and is in the best interests of all of the Debtors' stakeholders.

5. Consequently, the Debtors respectfully request that the Court approve the Disclosure Statement and confirm the Plan.

## II.

## BACKGROUND

6. On April 26, 2026, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108.

7. The Chapter 11 Cases are jointly administered for procedural purposes, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") did not appoint a creditors' committee in the Chapter 11 Cases, nor has any trustee or examiner been appointed.

8. The Debtors operate a mortgage broker business. Additional factual background regarding the Debtors, including their business operations, capital structure, and the events leading

to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of George A. Mangiaracina in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 17] (the "First Day Declaration") and the Disclosure Statement.

9.     For an overview of other facts relevant to the relief discussed herein, the Debtors respectfully refer the Court to the record of the Chapter 11 Cases, including:

   a.  the Disclosure Statement;

   b.  the Plan;

   c.  the First Day Declaration;

   d.  the Plan Supplement (defined below);

   e.  the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Prepetition Solicitation Procedures, (IV) Approving the Notice of Commencement & Combined Hearing Notice, (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases, (VI) Waiving the Requirement of Filing Schedules, Statements of Financial Affairs, Rule 2015.3 Reports and Section 341 Meeting of Creditors and (VII) Granting Related Relief* [Docket No. 15] (the "Scheduling Motion");

   f.  the *Order Granting Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Prepetition Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases, (VI) Waiving the Requirement of Filing Schedules, Statements of Financial Affairs, Rule 2015.3 Reports and Section 341 Meeting of Creditors and (VII) Granting Related Relief* [Docket No. 73] (the "Scheduling Order");

   g.  the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Joint Chapter 11 Plan, and Related Matters, and (III) Objection Deadline* [Docket No. 75] (the "Combined Hearing Notice");

   h.  the *Declaration of Adam J. Gorman Regarding the Solicitation and Tabulation of Votes in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 146] (the "Voting Declaration");

3

i.   the *Declaration of Eric S. Held in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings Inc. and Affiliates Thereof*, filed contemporaneously herewith (the "Held Declaration"); and

j.   the various affidavits and declarations of service related to the foregoing.

10.   The Debtors incorporate herein, by reference, the foregoing documents and any testimony and other declarations that may be adduced or submitted at or in connection with the combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan scheduled for May 28, 2026 at 2:00 p.m. (Prevailing Eastern Time) (the "Combined Hearing") pursuant to the Scheduling Order.

## III.

## OVERVIEW OF THE PLAN

11.   Contemporaneous with the commencement of the Chapter 11 Cases, the Debtors filed the Plan and Disclosure Statement. The Plan provides each Class of Claims or Interests with the following treatment:

| Class | Treatment | Status and Voting Right |
|---|---|---|
| Class 1: Priority Non-Tax Claims, estimated to be minimal or zero<br><br>**Estimated Recovery: 100%** | The legal, equitable and contractual rights of the Holders of Allowed Class 1 Priority Non-Tax Claims are unaltered by the Plan. Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete satisfaction, release and discharge of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty | Unimpaired – deemed to accept the Plan, not entitled to vote |

4

| | | |
|---|---|---|
| | (30) calendar days after the date a Priority Non-Tax Claim becomes an Allowed Claim. | |
| Class 2(a): Enterprise Claims, estimated to total approx. $16,400,000<br><br>**Estimated Recovery: 100%** | The Enterprise Obligations will be Reinstated under the Plan, subject to a consensual five-year extension of the maturity date on the Enterprise Obligations. | Unimpaired – deemed to accept the Plan, not entitled to vote |
| Class 2(b): Unimpaired Secured Claims, estimated to total approx. $10,000<br><br>**Estimated Recovery: 100%** | Each Holder of an Allowed Unimpaired Secured Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Unimpaired Secured Claims, at the option of the Reorganized Debtors: (i) payment in full in Cash; (ii) the collateral securing its Allowed Unimpaired Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Allowed Unimpaired Secured Claim; or (iv) such other treatment rendering such Allowed Unimpaired Secured Claim unimpaired. | Unimpaired – deemed to accept the Plan, not entitled to vote |
| Class 3: Senior Indebtedness Claims, estimated to total approx. $23,950,000 in principal and interest<br><br>**Estimated Recovery: Undetermined[4]** | Each Holder of an Allowed Senior Indebtedness Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Senior Indebtedness Claim, its pro rata share of the Plan Sponsor Common Stock on the terms set forth in Section 5.2(b) of the Plan. | Impaired – entitled to vote |

---

[4] *See* Section 2.5 of the Plan.

| Class 4: Subordinated Notes Claims, estimated to total approx. of $76,354,000 in principal and interest<br><br>**Estimated Recovery: 0.33%-6.55%** | Each Holder of a Subordinated Notes Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of, in full and complete satisfaction, release and discharge of, and in exchange for, such Allowed Subordinated Notes Claims, its pro rata share in the Contingent Payment Certificate. | Impaired – entitled to vote |
|---|---|---|
| Class 5: General Unsecured Claims, estimated to total approx. $222,000 – $1,200,000<br><br>**Estimated Recovery: 24.36%-100%** | Each Holder of an Allowed General Unsecured Claim shall receive on account of, in full and complete satisfaction, release and discharge of, and in exchange for its Allowed General Unsecured Claim, a Pro Rata share of the GUC Consideration after payment in full of all GUC Expenses. | Impaired – deemed to reject |
| Class 6: Intercompany Claims<br><br>**Estimated Recovery: 0%** | On the Effective Date, each Intercompany Claim shall, at the option of the applicable Debtor or Reorganized Debtor, be adjusted, Reinstated, or canceled and released without any distribution; except as necessary or appropriate for tax efficiency; provided, however, that no Distribution will be in Cash. | Impaired – deemed to reject |
| Class 7: 510(b) Claims<br><br>**Estimated Recovery: 0%** | 510(b) Claims are Impaired and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. On the Effective Date, each 510(b) Claim shall be canceled, released and discharged and the Holders of such 510(b) Claims shall receive no distribution on account of such 510(b) | Impaired – deemed to reject |

| | | |
|---|---|---|
| | Claims. Accordingly, Holders of 510(b) Claims are not entitled to vote to accept or reject the Plan. | |
| Class 8(a): Interests in Impac **Estimated Recovery: 0%** | All Interests in Impac will be cancelled, released, and extinguished, and will be of no further force or effect, and the Holders of Interests in Impac will receive no distribution on account of such Interests. | Impaired – deemed to reject |
| Class 8(b): Interests in Debtor Subsidiaries **Estimated Recovery: N/A** | On the Effective Date, Interests in the Debtor Subsidiaries shall be Reinstated without any distribution. | Unimpaired – deemed to accept |

12.     On May 14, 2026, the Debtors filed the *Plan Supplement with Respect to the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 104] (as may be further amended, supplemented, or modified from time to time pursuant to the terms of the Plan, the "Plan Supplement"). The Plan Supplement consists of the: (a) Schedule of Assumed Contracts and Leases; (b) Tax Preservation Rights Plan; (c) Amended Certificate and Bylaws; (d) Management Incentive Plan; (e) Identities of the Initial Board of Directors of the Reorganized Debtors; and (f) Identity of Plan Administrator.

**IV.**

**SOLICITATION OF VOTES ON THE PLAN**

13.     On April 23, 2026, the Debtors commenced the prepetition solicitation of votes on the Plan from Holders of Class 3 and Class 4 Claims, the only classes entitled to vote on the Plan (the "Voting Classes"), in accordance with the procedures for solicitation and tabulation of votes outlined in the Disclosure Statement and the Scheduling Motion (the "Solicitation Procedures"),

7

and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), by distributing copies of the ballots in the form attached as an exhibit to the Scheduling Motion (the "Ballots"), the Plan, and the Disclosure Statement (collectively, the "Solicitation Package") to the members of the Voting Classes via email, with instructions to return their respective Ballots on or prior to 4:00 p.m. (Prevailing Eastern Time) on April 24, 2026. *See* Voting Declaration ¶¶ 5-7. As mentioned above, the tabulation of properly executed and received Ballots showed that 100% of the Voting Classes, in aggregate principal amount and number, voted in favor of the Plan. *See* Voting Declaration ¶ 9. As permitted by the Scheduling Order, the Debtors did not serve a Solicitation Package on Holders that were presumed to accept or deemed to reject the Plan pursuant to § 1126(f). Instead, such Holders received notice of the Combined Hearing as described below.

## V.

## COMBINED HEARING NOTICE

14.    As set forth in the Scheduling Order, the Court scheduled the Combined Hearing for May 28, 2026, at 2:00 p.m. (Prevailing Eastern Time). On April 29, 2026 (i.e., approximately 29 days before the date scheduled for the Combined Hearing), the Debtors, in accordance with the Scheduling Order, caused Kurtzman Carson Consultants LLC d/b/a Verita Global, the Debtors' claims and noticing agent ("Verita") to serve the Combined Hearing Notice on: (a) all known creditors and equity security holders; (b) the United States Trustee; and (c) all other parties entitled to notice in the Chapter 11 Cases. *See* Certificate of Service filed May 11, 2026 [Docket No. 101]. In addition, the Debtors caused the publication form of the Combined Notice (the "Publication Notice") to be published in *The Wall Street Journal* on May 4, 2026, in *The Orange County*

8

*Register* on May 5, 2026, and in *Inside Mortgage Finance* on May 8, 2026. *See* Affidavit of Publication of the Combined Notice dated May 19, 2026 [Docket No. 113].

15.    The Combined Hearing Notice provided, among other things: (a) notice that the Debtors filed voluntary petitions for relief under the Bankruptcy Code; (b) notice of the Combined Hearing to consider the adequacy of the information contained in the Disclosure Statement and confirmation of the Plan; (c) instructions for obtaining copies of the Disclosure Statement and the Plan; (d) notice of the objection deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan; and (e) a summary of the Plan.

**VI.**
**OBJECTIONS TO APPROVAL OF THE**
**DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN**

16.    The deadline to file objections to approval of the Disclosure Statement and Confirmation of the Plan was May 21, 2026, at 4:00 p.m. (prevailing Eastern Time) (the "Plan Objection Deadline"). As of the Plan Objection Deadline, the Debtors did not receive any objections with respect to confirmation of the Plan or the assumption or rejection of the Debtors' Executory Contracts and Unexpired Leases.

17.    The Debtors did not receive any comments or objections to approval of the Disclosure Statement.  The comments received in connection with the Plan have been addressed in the Confirmation Order as discussed below.

**VII.**

**THE DISCLOSURE STATEMENT SATISFIES THE**
**REQUIREMENTS OF § 1125 AND SHOULD BE APPROVED**

18.    The Disclosure Statement contains "adequate information" regarding the Plan as required by § 1125. For the reasons set forth below, the Debtors respectfully request that it be approved.

9

19.     Section 1125 defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

20.     Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. Rep. No. 95-595 at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365; *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case.").

21.     The Disclosure Statement is detailed and comprehensive and satisfies the elements of § 1125. The Disclosure Statement provides information regarding, among other things: (a) the Plan; (b) the Debtors' prepetition indebtedness and proposed capital structure post-emergence; (c) the Debtors' business and operations; (d) circumstances surrounding the Chapter 11 Cases; (e) relevant financial information, including the Liquidation Analysis and Financial Projections; (f) certain risk factors related to the Plan and the actions contemplated therein; and (g) federal tax implications of the Plan. The Voting Classes here also participated in the negotiation of the Plan and are intimately familiar with its terms. Accordingly, the Debtors submit that the Disclosure

Statement contains "adequate information" within the meaning of § 1125, particularly under the circumstances of the Debtors' cases.

22.     Further, the Disclosure Statement provides sufficient notice and information regarding the discharge, release, injunction, and exculpation provisions of the Plan. Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. *See* Fed. R. Bankr. P. 3016(c). The language in § 10.4 of the Plan and § 6.20 of the Disclosure Statement describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, and such language is in bold, capital font, making it conspicuous to any reader. Thus, the Disclosure Statement satisfies Bankruptcy Rule 3016(c).

**VIII.**

**THE CONFIRMATION ORDER RESOLVES INFORMAL COMMENTS TO THE PLAN RECEIVED BY THE DEBTORS**

23.     The Debtors incorporated into the Confirmation Order certain language at the request of various parties, including the U.S. Trustee, the Securities and Exchange Commission, the Department of Justice, and Enterprise Bank, including, among other things: (a) clarifying that the Court's authorization of the adoption and implementation of the Management Incentive Plan does not approve any specific terms of the Management Incentive Plan; (b) clarifying that any equity issuances under the Management Incentive Plan are not being made pursuant to § 1145, to the extent applicable; (c) clarifying that the Enterprise Obligations are consensually extended to April 30, 2031 and that Enterprise's liens remain unchanged and in full force and effect after the Effective Date to the same extent and priority as prior to the Petition Date; (d) specifically adding the Governmental Bar Date of October 23, 2026; (e) clarifying that the Plan Administrator is not

11

exculpated in its capacity as such; and (f) adding certain language relating to the scope of the discharge of claims of the United States. The Debtors also received informal comments to the Confirmation Order from Newport Gateway Office LLC, the Debtors' landlord. The parties are actively working to resolve these comments prior to the Confirmation Hearing.

24.     Here, the Holders of Claims in the Voting Classes are the only parties entitled to vote on the Plan, and they have consented to the Confirmation Order changes, which do not materially and adversely affect or change the treatment of any other Claims or Interests. As discussed below, the Confirmation Order complies with the requirements of §§ 1122 and 1123.

### IX.

### <u>THE PLAN SATISFIES THE REQUIREMENTS OF § 1129 AND SHOULD BE CONFIRMED</u>

25.     To confirm the Plan, the Court must find that both the Plan and the Debtors comply with each of the requirements of § 1129(a). *See In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. 2011); *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003). As set forth below, the Debtors and the Plan satisfy all of the requirements of § 1129(a). Accordingly, the Plan should be confirmed.

**A.      The Plan Satisfies § 1129(a)(1): Compliance with the Bankruptcy Code.**

26.     Section 1129(a)(1) provides that a plan of reorganization may be confirmed only if "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1); *see also In re Machne Menachem, Inc.*, 233 F. App'x 119, 120 (3d Cir. 2007). The legislative history of § 1129(a)(1) explains that this provision encompasses the requirements of §§ 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of the plan, respectively. *See* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *see also In re*

*Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (noting that confirmation objections under § 1129(a)(1) usually involve failure of a plan to conform to either § 1122(a) or § 1123), *order aff'd*, 843 F.2d 636 (2d Cir. 1988). As demonstrated below, the Plan complies with the applicable provisions of §§ 1122 and 1123 in all respects.

1.   The Plan's Classification of Claims and Interests Satisfies § 1122.

27.   Section 1122 provides:

(a)   Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)   A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

28.   Courts in this Circuit and elsewhere have recognized that plan proponents have significant flexibility in placing claims and interests into different classes, provided there is a rational legal or factual basis to do so and all claims or interests within a particular class are substantially similar. *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 159 (3d Cir. 1993) (noting that a classification scheme is permissible if a legal difference exists between the classes); *In re Kaiser Aluminum Corp.*, No. 02-10429, 2006 WL 616243, at *5 (Bankr. D. Del. Feb. 6, 2006) (finding that the classification was proper under § 1122 because the classification scheme reflected the "diverse characteristics" of those claims and interests), *aff'd*, 343 B.R. 88 (D. Del. 2006).

29.   The Plan meets these classification requirements. In addition to Administrative Claims (including Professional Fee Claims and United States Trustee Fee Claims), DIP Claims and Priority Tax Claims, which are not required to be classified, the Plan designates eight (8) Classes of Claims and Interests. Section 2 of the Plan provides for the separate classification of

these Claims and Interests based upon differences in the legal nature or priority of such Claims and Interests. *See, e.g., In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (acknowledging the reasonableness of distinguishing various unsecured claims based on factors underlying such claims); *In re Coram Healthcare Corp.*, 315 B.R. 321, 350–51 (Bankr. D. Del. 2004) (holding noteholders represented "a voting interest that is sufficiently distinct from the trade creditors to merit a separate voice in this reorganization case"). Further, all Claims or Interests within each Class are substantially similar to other Claims or Interests included in the same Class.

30.     The Classes of Claims against and Interests in the Debtors under the Plan are as follows:

- Class 1 – Priority Non-Tax Claims
- Class 2(a) – Enterprise Claims
- Class 2(b) – Unimpaired Secured Claims
- Class 3 – Senior Indebtedness Claims
- Class 4 – Subordinated Notes Claims
- Class 5 – General Unsecured Claims
- Class 6 – Intercompany Claims
- Class 7 – 510(b) Claims
- Class 8(a) – Interests in Impac
- Class 8(b) – Interests in Debtor Subsidiaries

31.     Class 1 Priority Non-Tax Claims are separately classified because such claims are entitled to priority under section 507(a) of the Bankruptcy Code, are not general unsecured claims, and must be paid in full in cash on the Effective Date unless otherwise agreed, thereby warranting separate classification and treatment under the Plan.

32.     Class 2(a) Enterprise Claims and Class 2(b) Unimpaired Secured Claims are each secured claims, but are separately classified based on the distinct nature of such claims and their differing treatment under the Plan. Specifically, Class 2(a) Enterprise Claims arise under certain prepetition promissory notes issued by Impac, as trustee of a trust for certain former executives, in favor of Enterprise, and are secured by life insurance policies covering such former executives and

14

other related collateral. Such claims will be reinstated pursuant to section 1124 of the Bankruptcy Code, subject to a consensual extension of their maturity date. In contrast, Class 2(b) Unimpaired Secured Claims serves as a catch-all category for any other secured claims that may be asserted and allowed against the Debtors, all of which will be paid in full or otherwise rendered unimpaired in accordance with the Bankruptcy Code.

33.     Class 3 Senior Indebtedness Claims represent the Debtors' primary funded secured indebtedness and are therefore separately classified based on their senior priority and distinct rights.

34.     Class 4 Subordinated Notes Claims are classified separately from Classes 2 and 3 because, although they also constitute funded indebtedness, these claims are unsecured. Moreover, the documents governing Class 4 Subordinated Notes Claims contained contractual subordination, and the holders of these claims negotiated for a separate treatment under the Plan, including recovery in the form of the Contingent Payment Certificate rather than the consideration provided to holders of General Unsecured Claims.

35.     Class 5 General Unsecured Claims, while similarly impaired, are distinct from Class 4 because they do not arise from funded debt instruments and will receive distributions from the GUC Consideration.

36.     Class 6 Intercompany Claims are distinct from Class 5 General Unsecured Claims because they consist of claims held by and between the Debtors and their non-debtor affiliates. Class 7, consisting of 510(b) Claims, are classified separately because such claims arise from the purchase or sale of a security of the Debtors or an affiliate and are mandatorily subordinated pursuant to section 510(b) of the Bankruptcy Code to all general unsecured claims, thereby necessitating separate classification and treatment. Class 8(a) Interests in Impac and Class 8(b)

15

Interests in Debtor Subsidiaries represent equity security interests (as opposed to claims) and are therefore classified separately from Classes 1 through 7.

37.     This classification scheme is rational and strictly follows the varying legal rights and factual differences among the various Claims and Interests based on the Debtors' prepetition capital structure. No suggestion is made by any party in interest that the classification was designed with an eye toward fashioning a single impaired accepting class, and there is no basis in law or fact for the same. Rather, it is the variance in the legal and factual nature of the Claims and Interests in such Classes that led to separate classification. The Plan's classification scheme was not promulgated for any improper purpose, and thus satisfies § 1122.

2.     The Plan Satisfies § 1123(a): Mandatory Contents of the Plan.

38.     Section 1123(a) identifies seven requirements for the contents of a plan of reorganization. *See* 11 U.S.C. § 1123(a). The Plan fully complies with each requirement of § 1123(a).

(a)     *The Plan Designates Classes of Claims and Interests.*

39.     Section 1123(a)(1) requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in § 507(a)(2) (administrative expense claims), § 507(a)(3) (claims arising during the "gap" period in an involuntary bankruptcy case), and § 507(a)(8) (priority tax claims). 11 U.S.C. § 1123(a)(1). The Plan complies with this requirement by expressly classifying all Claims and Interests, other than Administrative Claims (including Professional Fee Claims and United States Trustee Fee Claims), DIP Claims and Priority Tax Claims, in § 2 of the Plan.

(b)    *The Plan Identifies Unimpaired Classes of Claims and Interests.*

40.    Section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  The Plan satisfies this requirement by specifying, in § 2, that Classes 1, 2(a), 2(b), and 8(b) are Unimpaired.

(c)    *The Plan Specifies the Treatment of Impaired Classes.*

41.    Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). The Plan satisfies this requirement by specifying, in § 2, that Classes 3, 4, 5, 6, 7 and 8(a) are Impaired, and by specifying the treatment of the interests in each of those Classes.

(d)    *The Plan Provides the Same Treatment Within Each Class.*

42.    Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). The Plan satisfies this requirement by providing the same treatment to each Claim or Interest in each respective Class, unless the Holder of a Claim or Interest agrees to less favorable treatment on account of its Claim or Interest.

(e)    *The Plan Provides Adequate Means for Implementation.*

43.    Section 1123(a)(5) requires that the Plan provide "adequate means" for its implementation. 11 U.S.C. § 1123(a)(5). Adequate means for implementation of a plan may include retention by the debtor of all or part of its property; the transfer of property of the estate to one or more entities; cancellation or modification of any indenture; curing or waiving of any default; extension of a maturity date or change in an interest rate or other term of outstanding securities; amendment of the debtor's charter; or the issuance of securities in exchange for cash, property, or existing securities, all in exchange for claims or interests or for any other appropriate purpose. *See generally In re Spiegel, Inc.*, No. 03-11540 (BRL), 2005 WL 1278094, at *5 (Bankr.

S.D.N.Y. May 25, 2005) (approving plan and finding adequate and proper means for implementation under § 1123(a)(5) where, among other things, the Debtor substantively consolidated its estates, consummated various restructuring transactions, entered into agreements for financing, established a creditor trust, and issued certain new securities).

44.     The Plan will allow the Company to, among other things, right-size its balance sheet and establish a foundation for sustainable long-term growth. Section 5 of the Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for implementation of the Plan, including but not limited to: (a) various corporate governance actions; (b) consummation of certain effective date transactions; (c) the vesting of the Debtors' assets in the Reorganized Debtors; (d) the issuance of Plan Sponsor Common Stock; (e) the use of the proceeds of the Exit Loan Facility to refinance the DIP Claims; (f) the cancellation of existing securities and agreements; and (g) the adoption of the Management Incentive Plan. Thus, the requirements of § 1123(a)(5) are satisfied.

(f)     *The Plan Prohibits the Issuance of Non-Voting Securities.*

45.     Section 1123(a)(6) prohibits the issuance of non-voting equity securities. 11 U.S.C. § 1123(a)(6). The Plan does not provide that any of the Reorganized Debtors issue non-voting equity securities within the meaning of section 1123(a)(6) of the Bankruptcy Code. The Amended Certificate and Bylaws for Reorganized Impac do not permit the issuance of non-voting equity securities to the extent prohibited by 1123(a)(6) of the Bankruptcy Code. Therefore, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(g)     *The Selection of Officers and Directors of the Reorganized Debtors is Consistent with the Interests of Creditors and Equity Security Holders and with Public Policy.*

46.     Section 1123(a)(7) requires that a plan of reorganization "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy

with respect to the manner of selection of any officer, director, or trustee under the plan." 11 U.S.C. § 1123(a)(7). The Plan is consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of the Reorganized Debtors' officers and directors. Thus, § 1123(a)(7) is satisfied.

3.    The Plan Complies with § 1123(b): Discretionary Contents of the Plan.

47.    Section 1123(b) identifies various discretionary provisions that may be included in a plan of reorganization, but are not required. For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases. 11 U.S.C. § 1123(b)(1), (2). A plan also may provide for: (i) "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," (ii) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest," or (iii) "the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." *Id.* § 1123(b)(3)(A)-(B), 1123(b)(4). Finally, a plan may "modify the rights of holders of secured claims . . . or . . . unsecured claims, or leave unaffected the rights of holders of any class of claims" and may "include any other appropriate provision not inconsistent with the applicable provisions of [title 11]." *Id*. § 1123(b)(5)-(6).

48.    The Plan contains a number of such discretionary provisions, most of which have been described above. In addition, among other things, (i) the Plan designates each Class as Impaired or Unimpaired; (ii) as further discussed below, the Plan provides for the assumption or rejection of the Debtors' executory contracts and unexpired leases; and (iii) the Plan provides for the vesting of certain causes of action in the Reorganized Debtors.

49.    In addition, as is customary, the Plan includes release, exculpation, and injunction provisions. These discretionary provisions are proper because, among other things, they are the

product of arm's-length negotiations, and have been critical to obtaining the support of the various constituencies for the Plan. Such release, exculpation, and injunction provisions are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their Estates. The release, the exculpation, and the injunction provisions are consistent with the Bankruptcy Code, and thus the requirements of § 1123(b) are satisfied.

(a)    *The Plan's Releases by the Debtors are Permissible and Should Be Approved.*

50.    The Plan contemplates certain releases and exculpations, including a release by the Debtors of certain claims and Causes of Action as set forth in § 10.5(a) of the Plan (the "Debtor Releases"). The Released Parties include: (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals, and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f).

51.    The Bankruptcy Code specifically provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). "[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *In re Spansion, Inc.*, 426 B.R. 114, 142–43 (Bankr. D. Del. 2010). "Courts in this district have held that a plan may provide for releases by a debtor of non-debtor third parties after considering the specific facts and equities of each case." *Id.* (citing *In re Zenith Elec. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)).

52.    In determining whether a release is appropriate, this Court and others examine a number of factors, including (i) whether there is an identity of interest between the debtor and the third party such that a suit against the non-debtor is, in essence, a suit against the debtor or will

20

deplete assets of the estate; (ii) whether the non-debtor has contributed substantial assets to the reorganization; (iii) whether the release is essential to the reorganization; (iv) whether a substantial majority of the creditors agree to the release; and (v) whether the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the release. *In re Washington Mut., Inc.*, 442 B.R. 314, 346-47 (Bankr. D. Del. 2011). As demonstrated below, the Debtor Releases are fair, reasonable, and in the best interests of the Debtors and their estates, and appropriate under the circumstances of these Chapter 11 Cases.

53.     First, the Released Parties have made and will continue to make substantial contributions to the Debtors' reorganization leading up to and including the commencement of the Chapter 11 Cases through the Effective Date. These contributions include, among other things: (a) authorizing the use of cash collateral and providing postpetition debtor in possession financing (b) agreeing to specific treatment of their claims, and (c) otherwise actively participating in and supporting the Debtors' restructuring efforts. The support of the Released Parties will help the Debtors achieve an expeditious exit from the Chapter 11 Cases that will preserve consumer confidence and maximize value.

54.     Second, releases such as the Debtor Releases are commonplace in cases of this size and complexity and were necessary to build consensual support for the Plan. The Debtor Releases were a material inducement and condition to the contributions and concessions received from the Released Parties, including the postpetition financing described above, which will help fund distributions under the Plan as well as the ongoing operations of the Reorganized Debtors. In light of the fact that the Debtors are not aware of any Claims or Causes of Action against the Released Parties, the benefits of giving such releases are far greater than any potential cost.

55.     Third, the impacted classes (other than classes deemed to reject the Plan) voted to accept the Plan. As set forth in the Voting Declaration, the Plan has been accepted by 100% of the Voting Classes. *See* Voting Declaration ¶ 9. Moreover, there are no objections to the Debtor Releases from Holders of Claims or Interests.

56.     Finally, there is an "identity of interest" among the Debtors and the Released Parties, as the Released Parties play an instrumental role in facilitating the Debtors' reorganization. *See Zenith*, 241 B.R. at 110. Here, the Released Parties were heavily involved in the negotiations and process leading up to the Chapter 11 Cases and have continued to support and facilitate the Debtors' restructuring efforts throughout. With respect to the Debtors' directors and officers specifically, such releases are being given in exchange for their tireless efforts to develop a restructuring strategy and ensure the Debtors' smooth transition into chapter 11, as well as their management of operations throughout the pendency of the Chapter 11 Cases to preserve and maximize the value of the Debtors' estates. Importantly, the Debtors' directors and officers are entitled to indemnification under the Debtors' organizational documents or contracts with the Debtors, so any litigation against such Released Parties would amount to litigation against the Debtors, thereby draining resources and undermining restructuring efforts to the detriment of all stakeholders.

57.     Based on the foregoing, the Debtor Releases are appropriate and should be approved.

> (b)     *The Plan's Third-Party Releases Are Permissible and Should Be Approved.*

58.     Section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). Under § 10.5(b) of the Plan (the "Third Party Releases"), the Releasing Parties are deemed to have

released (a) the Debtors, (b) the DIP Lender, (c) the Plan Sponsor, (d) the Subordinated Noteholders, (e) each Holder of a Claim or Interest that opts in to the Third Party Release to the extent they do not hold a Disputed Claim, (f) Professionals and (g) each of the Related Persons of each of the Entities in the foregoing clauses (a)-(f), from certain claims and Causes of Action.

59.     In the Third Circuit, courts have approved releases of third-party claims against non-debtors if the releasing party consents. *See In re Powin, LLC*, No. 25-16137 (MBK) (Bankr. D. N.J. Dec. 1, 2025) (approving third-party releases for consenting parties); *In re FTX Trading LTD.*, No. 22-11068 (JTD) (Bankr. D. Del. June 26, 2024); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D. N.J. May 30, 2024); *In re Mallinckrodt PLC*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 10, 2023); *In re First Guaranty Mortgage Corp.*, No. 22-10584 (CTG) (Bankr. D. Del. June 30, 2022); *In re Spansion*, 426 B.R. at 144 (stating that "a third party release may be included in a plan if the release is consensual").

60.     The Third Party Releases are narrow, appropriately tailored, and consensual, and they are not binding on any non-consenting parties. Courts have held that an "affirmative agreement" from an affected creditor will render a release consensual. *See Zenith*, 241 B.R. at 111. Additionally, Holders of Unimpaired Claims are being paid in full and thus are receiving fair consideration in exchange for the releases. Further, the Third Party Releases are an integral and necessary part of the Plan, are consensual, given in exchange for good and valuable consideration, and are narrowly tailored to the circumstances of these Chapter 11 Cases. Thus, the Third Party Releases should be approved as in the best interests of the Debtors, their estates, and their stakeholders.

(c)     *The Plan's Exculpation Provision is Permissible.*

61.     Exculpation provisions like those in the Plan are common. *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (holding that an exculpation provision "is apparently a

commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"). Third Circuit courts may approve exculpation provisions for acts or omissions in connection with the pursuit of confirmation of the Plan when such protection is necessary to the Debtors' restructuring efforts and given in exchange for fair consideration. *See, e.g., In re W.R. Grace & Co.*, 446 B.R. 96, 132–33 (Bankr. D. Del. 2011) (approving an exculpation clause exculpating non-debtor parties who were party to a settlement agreement); *W. Mining & Invs., LLC v. Bankers Trust Co.*, No. C.A. 02-1445 GMS, 2003 WL 503403, at * 4 (D. Del. Feb. 19, 2003) (approving exculpation of the DIP lenders, bank lenders, and the committee from any liability in connection with the sale and liquidation of the debtors' assets, other than because of gross negligence or willful misconduct).

62.     The Plan provides, in Section 10.6 (the "Exculpation"), that the Exculpated Parties shall be exculpated from any liability to any Person or Entity, including, without limitation, to any Holder of a Claim or an Interest, for any act or omission occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the RSA, the Chapter 11 Cases, the Plan, the Disclosure Statement, or certain other documents created in connection with the Chapter 11 Cases, except for acts or omissions found to have been the product of actual fraud, gross negligence or willful misconduct. The exculpation provisions do not affect the liability of third parties per se, but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.

63.     Here, without protection from liability, the Exculpated Parties would have been unwilling to engage in the negotiation, formulation, and distribution of the Plan. Further, as described above, the Exculpated Parties made substantial contributions to the successful

24

reorganization of the Debtors. At the request of the U.S. Trustee, the Confirmation Order clarifies that the Plan Administrator is not entitled to exculpation in such capacity because the Plan Administrator does not come into existence until after the Effective Date of the Plan and, therefore, could not have taken any pre-Effective Date actions subject to exculpation. Thus, the Exculpation is appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions determined by Final Order to have constituted fraud, gross negligence, or willful misconduct. For these reasons, the Exculpation is appropriate and should be approved.

> (d)     *The Plan's Injunction Provisions Are Permissible and Should Be Approved.*

64.     The Injunction set forth in § 10.4 of the Plan is (a) consistent with § 1123(b) and (b) necessary to effectuate and implement the Debtors' discharge under the Bankruptcy Code and to preserve and enforce the Debtor Releases, the Third Party Releases, and the Exculpation, and is narrowly tailored to achieve that purpose. The Injunction is a key component of the ultimate reorganization. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992). The Injunction is also similar to those previously approved by this Court. *See, e.g., In re Samson Resources Corp.*, No. 15-11934 (CSS) (Bankr. D. Del. Feb. 13, 2017); *In re Tidewater Inc.*, Case No. 17-11132 (BLS) (Bankr. D. Del. July 17, 2017); *In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Jan. 29, 2016). Thus, this Court should approve the Injunction together with the Debtor Releases, the Third Party Releases, and the Exculpation.

**B.     The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).**

65.     Section 1129(a)(2) requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The primary purpose of § 1129(a)(2) is to ensure that the plan proponents have complied with the requirements of §§ 1125 and 1126 of the Bankruptcy Code. *See, e.g., In re PWS Holding Corp.*, 228 F.3d at 248 n.23

25

(quoting *In re Trans. World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995) (noting that: "The principal purpose of § 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of § 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan.")). The Debtors have complied with the applicable provisions of the Bankruptcy Code, including all applicable disclosure and solicitation requirements of §§ 1125 and 1126.

66.     The Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law. *Id*. § 1125(g).

67.     Here, consistent with § 1125(g), the Disclosure Statement was provided to the Voting Classes prior to the commencement of these cases in accordance with applicable non-bankruptcy law. Specifically, the solicitation of votes complied with applicable securities laws because the offers and exchanges contemplated by the Plan fall within well-established private placement exemptions from registration under the Securities Act of 1933. In particular, the solicitation was directed to a limited group of sophisticated institutional investors that were existing holders of the Debtors' securities and qualify as "accredited investors" and/or "qualified institutional buyers." As such, the transactions are exempt from registration pursuant to Section 4(a)(2) of the Securities Act and, by extension, Regulation D and Rule 144A, which permit

26

offerings to sophisticated investors with sufficient access to information and the ability to bear the economic risk of the investment. Courts have routinely recognized that prepetition solicitations in connection with prepackaged plans satisfy these exemptions. *See, e.g., In re 2U, Inc.*, No. 24-11279 (MEW) (Bankr. D. Del. Sept. 9, 2024) (exempting offering by reorganized parent from § 4(a)(2) of the Securities Act and other applicable law); *In re View, Inc.*, No. 24-10692 (CTG) (Bankr. D. Del. May 15, 2024); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Feb. 23, 2021); *In re Key Energy Servs., Inc.*, No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016); *In re Physiotherapy Holdings, Inc., et al.*, No. 13-12965 (Bankr. D. Del. Nov. 14, 2013); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013). Here, the recipients are highly sophisticated parties with preexisting relationships with the issuer and access to extensive financial and restructuring information. Accordingly, the Debtors submit that the solicitation process complied with applicable securities laws and does not require registration.

68.     Additionally, § 1126 specifies the requirements for acceptance of a chapter 11 plan. *See id.* § 1126. Pursuant to § 1126, only holders of allowed claims in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan.

69.     Under the Plan, the votes of Holders of Class 5 General Unsecured Claims were not solicited and the Plan deems this Class to reject the Plan. The Plan, however, provides Holders of Allowed General Unsecured Claims with their Pro Rata share of the GUC Consideration funded entirely from the proceeds of the Exit Loan Facility pursuant to the RSA. The administrative costs and burdens of soliciting votes from these creditors would not improve the process or benefit such creditors and would only serve to delay and burden the Debtors' goal of a prompt emergence from Chapter 11.

27

70.     The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically, (a) the Debtors are eligible debtors under § 109 and are proper proponents of the Plan under § 1121(a); (b) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and (c) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order (including the approved solicitation procedures in transmitting the Plan, Plan Supplement, Disclosure Statement, Ballots, and related documents and notices), and in soliciting and tabulating the votes on the Plan. The Publication Notice was also timely published. In addition to the foregoing, the Debtors have also complied with all orders of the Court entered during the pendency of these Chapter 11 Cases. Thus, § 1129(a)(2) is satisfied.

**C.     The Plan Was Proposed in Good Faith (§ 1129(a)(3)).**

71.     Pursuant to § 1129(a)(3), a plan of reorganization must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "'[F]or purposes of determining good faith under § 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *PWS Holding*, 228 F.3d at 242 (alterations in original) (citation omitted); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (holding the good faith standard in § 1129(a)(3) requires that there be "some relation" between the chapter 11 plan and the "reorganization-related purposes that [Chapter 11] was designed to serve"); *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) ("The good faith standard requires that the plan be 'proposed with honesty, good intentions, and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code'").

72.     "[I]n the context of a Chapter 11 plan, courts have held [that] a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result

28

consistent with the standards prescribed under the [Bankruptcy] Code.'" *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)), *aff'd*, 324 F.3d 197 (3d Cir. 2003). The good faith requirement is satisfied if the plan has been proposed "for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate and distributing that value to the creditors." *In re Gilbertson Rests. LLC*, No. 04-00385, 2005 WL 783063, at *4 (Bankr. N.D. Iowa Apr. 4, 2005); *see also In re Source Enters., Inc.*, No. 06-11707, 2007 WL 2903954, at *6 (Bankr. S.D.N.Y. Oct. 1, 2007) (finding good faith requirement satisfied in plan filed with legitimate and honest purposes of maximizing value of estate and effectuating equitable distribution), *aff'd*, 392 B.R. 541 (S.D.N.Y. 2008).

73.     The Plan has been proposed by the Debtors in good faith, with the legitimate and honest purposes of reorganizing the Debtors' ongoing businesses and enhancing their financial viability. *See* Held Declaration ¶¶ 16, 44. The Debtors believe that the value of their businesses is significantly greater in the reorganization contemplated by the Plan than in a liquidation. *See id.* at ¶ 31. The Plan is the result of extensive arm's-length negotiations among the Debtors and their key stakeholders and is supported by the Voting Classes, as well as other parties in interest in these Chapter 11 Cases. *See id.* at ¶ 15.

74.     Further, the Debtors have fulfilled their fiduciary duties by acting on an informed basis, in good faith, and in the honest belief that the Plan is in the best interests of the Debtors. *See Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) (holding that the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company"); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 269 (Bankr. D. Del. 2010)

(applying the business judgment standard to actions taken by a debtor in possession); *Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (noting that the business judgment standard set forth in *Smith* has "vitality by analogy" in chapter 11, especially where the debtor is a Delaware corporation).

75.     Finally, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with §§ 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142, are fair and reasonable, are an essential part of the Plan, and are each necessary for the Debtors' successful reorganization. Therefore, the good faith requirement of § 1129(a)(3) has been satisfied.

**D.      All Payments to Be Made by the Debtors in Connection with these Cases Have Been Approved by or Are Subject to the Approval of the Court (§ 1129(a)(4)).**

76.     Section 1129(a)(4) requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). In essence, this subsection requires that any fees promised or received from the estate in connection with or in contemplation of a chapter 11 case be disclosed and subject to the court's review. *See In re Johns-Manville*, 68 B.R. at 632 (implying that court must be permitted to review and approve reasonableness of professional fees made from estate assets).

77.     Pursuant to § 3.2.2 of the Plan and the proposed Confirmation Order, Professionals holding Professional Fee Claims are required to file their final fee applications with the Court no later than thirty (30) days after the Effective Date. These applications remain subject to Court approval under the standards established by the Bankruptcy Code, including the requirements of

§§ 327, 328, 330, 331, 503(b), and 1103, as applicable. In addition, § 11 of the Plan provides that the Court will retain jurisdiction after the Effective Date to decide and resolve all matters related to the granting or denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals. Accordingly, the Plan fully complies with the requirements of § 1129(a)(4) of the Bankruptcy Code.

    **E.**    **The Plan Discloses All Required Information Regarding Post-Confirmation Directors, Management, and Insiders (§ 1129(a)(5)).**

78.    The Bankruptcy Code provides that a plan of reorganization may be confirmed if the proponent discloses the identity of those individuals who will serve as management of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor, and the compensation proposed to be paid to such insider. *See* 11 U.S.C. § 1129(a)(5). In addition, under § 1129(a)(5)(A)(ii), the appointment or continuation in office of existing management must be consistent with the interests of creditors, equity security holders, and public policy. 11 U.S.C. § 1129(a)(5)(A)(ii).

79.    In determining whether the post-confirmation management of a debtor is consistent with the interests of creditors, equity security holders, and public policy, a court must consider proposed management's competence, discretion, experience, and affiliation with entities having interests adverse to the debtor. *See In re Sherwood Square Assocs.*, 107 B.R. 872, 878 (Bankr. D. Md. 1989); *see also In re W.E. Parks Lumber Co.*, 19 B.R. 285, 292 (Bankr. W.D. La. 1982) (a court should consider whether "the initial management and board of directors of the reorganized corporation will be sufficiently independent and free from conflicts and the potential of post-reorganization litigation so as to serve all creditors and interested parties on an even and loyal basis"). In general, however, "[t]he [d]ebtor should have first choice of its management, unless compelling cause to the contrary exists." *Sherwood Square Assocs.*, 107 B.R. at 878. The case law

also is clear that a plan may contemplate the retention of the debtor's existing management. *See, e.g., In re Texaco Inc.*, 84 B.R. 893, 908 (Bankr. S.D.N.Y. 1988) (determining that § 1129(a)(5) was satisfied where plan disclosed debtor's existing directors and officers who would continue to serve in office after plan confirmation); *see also In re Trans World Airlines, Inc.*, 185 B.R. 302, 314 (Bankr. E.D. Mo. 1995).

80.     The Debtors have fully satisfied the requirements of § 1129(a)(5) of the Bankruptcy Code. The Debtors, through the Plan Supplement, have disclosed the officers and members of the new board of the Reorganized Company, including the nature of the compensation that will be received by any insider of the Reorganized Company, and the identity of the Plan Administrator (Reorganized Impac Mortgage Holdings, Inc.). The appointment to, or continuance in, such office of each individual, and the methods established therefor, are consistent with the interests of holders of Claims and Interests, and with public policy.

81.     As indicated in the Plan Supplement, the board of each Reorganized Debtor will consist of three directors: Justin Gregory, Dushyant Mehra, and Michael McSherry. The exception is Reorganized Debtor Copperfield Financial, LLC which is a member-managed LLC with Impac Mortgage Holdings, Inc. serving as its sole member. Furthermore, the Plan Sponsor designated the members of the board of the Reorganized Company in accordance with § 5.1.1 of the Plan. The Plan Sponsor's selection of the members of the new board of the Reorganized Debtors is consistent with the interests of holders of Claims and Interests and with public policy. Accordingly, the Plan fully satisfies the requirements of § 1129(a)(5) of the Bankruptcy Code.

**F.      The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval (§ 1129(a)(6)).**

82.     The Bankruptcy Code requires, with respect to a debtor whose rates are subject to governmental regulation following confirmation, that appropriate governmental approval has been

32

obtained for any rate change provided for in the plan, or that such rate change be expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6). This provision is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

### G.    The Plan Satisfies the "Best Interests" Test (§ 1129(a)(7)).

83.    The "best interests of creditors" test, as set forth in § 1129(a)(7) of the Bankruptcy Code, requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the plan or will receive or retain property of a value not less than what such holder would receive or retain if the debtor were liquidated under chapter 7. *See In re Leslie Fay Cos.*, 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988). The best interests test focuses on individual dissenting creditors or interest holders, rather than classes of claims or interests. *Leslie Fay*, 207 B.R. at 787; *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). The "best interests" test set out in § 1129(a)(7) applies only to non-accepting impaired classes. *See* 11 U.S.C. § 1129(a)(7).

84.    The Plan satisfies the best interests test because each Holder of an Impaired Claim or Interest has voted to accept the Plan or will receive or retain property under the Plan on the Effective Date that is not less than the amount such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code, as demonstrated in the Liquidation Analysis (attached to the Disclosure Statement as **Exhibit B** (the "Liquidation Analysis")) and in the Held Declaration. *See* Held Declaration ¶¶ 23-31.

85.    As set forth in the Liquidation Analysis, after satisfying just a small portion of the claims of the Plan Sponsor, there would be no distributable value for any other creditors. *See* Held Declaration ¶ 30. Under the Plan, however, Class 1 Priority Non-Tax Claims will be paid in full.

33

Holders of Class 2(a) Enterprise Claims will have the Enterprise Obligations reinstated, and Class 2(b) Unimpaired Secured Claims will be paid in full or have their Claims reinstated, as applicable. Classes 3 and 4, the Voting Classes, have unanimously voted to accept the Plan and will be entitled to the treatment prescribed in § 3 of the Plan upon the Effective Date in full and final satisfaction of their Claims. Class 5 General Unsecured Claims will receive a Pro Rata share of the GUC Consideration, subject to certain expenses of the Plan Administrator and any statutory committee appointed on behalf of general unsecured creditors. Class 6 Intercompany Claims will have such Claims, at the option of the Debtor or Reorganized Debtor, adjusted, Reinstated, canceled, or released. Class 7 510(b) Claims will be canceled, released, and discharged, and the Holders of such 510(b) Claims shall receive no distribution on account of such 510(b) Claims. Class 8(a) Interests in Impac will be cancelled and released, and Class 8(b) Interests in the Debtor Subsidiaries will be Reinstated without any distribution. Classes 5 through 8(a) are deemed to reject the Plan.

86.     The recoveries for Classes 3 through 8 are not less than the estimated recoveries that would be available to such Classes in a chapter 7 liquidation. Held Declaration ¶¶ 30-31. As a result, the Plan satisfies the requirements of § 1129(a)(7) of the Bankruptcy Code.

**H.     The Plan Does Not Satisfy § 1129(a)(8) But May Still be Confirmed Pursuant to §§ 1129(a)(10) and 1129(b).**

87.     The Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8). Under section 1126(g), impaired classes that neither receive nor retain property under the plan are deemed to have rejected the plan. *See* 11 U.S.C. § 1126(g).

88.     Holders of Claims or Interests in Classes 6 through 8 (other than those Claims in Class 6 that the Debtor or Reorganized Debtor may elect to Reinstate or those in Class 8(b) that are Reinstated) are neither receiving nor retaining property under the Plan, and such Classes are

34

deemed to have rejected the Plan pursuant to § 1126(g). Class 5 is also deemed to reject the Plan. Notwithstanding the deemed rejection by such Classes, as discussed more fully below, the Debtors have met the "cramdown" requirements in § 1129(b) necessary to obtain confirmation of the Plan, and therefore, the Plan may still be confirmed.

### I. The Plan Provides for the Payment of Unclassified Claims (§ 1129(a)(9)).

89. Section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments, unless the holder of a particular claim agrees to a different treatment with respect to such claim. 11 U.S.C. § 1129(a)(9). In particular, pursuant to § 1129(a)(9)(A), holders of claims of a kind specified in § 507(a)(2 ) – administrative claims allowed under § 503(b) – must receive cash equal to the allowed amount of such claims on the effective date of the plan. *Id.*

90. The Bankruptcy Code requires that each holder of a claim of a kind specified in §§ 507(a)(1) and 507(a)(4) through (7) – generally, wage, employee benefit, and deposit claims entitled to priority – must receive deferred cash payments of a value equal to the allowed amount of such claim or cash equal to the allowed amount of such claim on the effective date of the plan, depending upon whether the class has accepted the plan. *See* 11 U.S.C. § 1129(a)(9)(B). Finally, § 1129(a)(9)(C) provides that the holder of a claim of a kind specified in § 507(a)(8) – *i.e.*, priority tax claims – must receive deferred cash payments over a period not to exceed five years after the petition date, the present value of which equals the allowed amount of the claim. *See* 11 U.S.C. § 1129(a)(9)(C).

91. The Plan satisfies these requirements. As set forth in § 3 of the Plan, each holder of an Allowed Administrative Claim (including Professional Fee Claims), Allowed Priority Non-Tax Claim, and Allowed Priority Tax Claim will have such claims paid in full. This proposed treatment complies with the requirement under § 1129(a)(9).

**J.      An Impaired Class Has Accepted the Plan (§ 1129(a)(10)).**

92.     Section 1129(a)(10) provides that:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10); *see Drexel Burnham*, 138 B.R. at 771.

93.     Classes 3 and 4 are Impaired Classes of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, the Plan satisfies § 1129(a)(10).

**K.      The Plan is Feasible (§ 1129(a)(11)).**

94.     Pursuant to § 1129(a)(11), a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable." 7 Collier on Bankruptcy ¶ 1129.02 [11] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd mem.*, 41 F.3d 1502 (2d Cir. 1994); *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994); *In re Johns-Manville*, 68 B.R. at 635.

95.     It is clear, however, that § 1129(a)(11) does not require a guarantee of the Plan's success; rather, the proper standard is whether the Plan offers a reasonable assurance of success. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012); *In re Tribune*, 464 B.R. 126, 185 (Bankr. D. Del. 2011); *Drexel Burnham*, 138 B.R. at 762 ("'It is not necessary that success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from

which there may be a reasonable expectation of success.' . . . The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required." (citations omitted)); *Kane*, 843 F.2d at 649 (a plan may be feasible although its success is not guaranteed); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003) ("All [a bankruptcy court] needs to know is that the plan has a reasonable likelihood of success."); *Texaco Inc.*, 84 B.R. at 910 ("All that is required is that there be reasonable assurance of commercial viability."); *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986) ("Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under § 1129(a)(11)."); *see also In re Waern Bldg. Corp.*, 145 F.2d 584, 588 (7th Cir. 1944) ("[T]he word feasible does not connote absolute insurance of success but only reasonable assurance of success."); *In re Whittaker Mem'l Hosp. Ass'n*, 149 B.R. 812, 816 (Bankr. E.D. Va. 1993) ("It is not a blanket guarantee [of success] which is required, but rather a reasonable likelihood of success.").

96.     A plan proponent has an obligation to provide the court and interested parties with sufficient information to make the feasibility determination. *See In re Walker*, 165 B.R. 994, 1005 (Bankr. E.D. Va. 1994). Courts have identified a number of factors relevant to evaluating the feasibility of a proposed plan of reorganization, including: (a) the prospective earnings or earning power of the debtor's business; (b) the soundness and adequacy of the capital structure and working capital for the debtor's post-confirmation business; (c) the debtor's ability to meet its capital expenditure requirements; (d) economic conditions; (e) the ability of management and the likelihood that current management will continue; and (f) any other material factors that would affect the successful implementation of the plan. *See, e.g., Prudential Energy Co.*, 58 B.R. at 862-63; *see also In re Paragon Offshore PLC*, No. 16-10386 (CSS), 2016 WL 6699318, at *16 (Bankr.

D. Del. Nov. 15, 2016) (also stating that "[t]he [d]ebtors are not required to view their business and economic prospects in the worst possible light" (internal quotation omitted)); *In re Clarkson*, 767 F.2d 417, 419-20 (8th Cir. 1985); *In re Deluca*, No. 95-11924, 1996 WL 910908, at *17 (Bankr. E.D. Va. Apr. 12, 1996); *In re Sound Radio, Inc.*, 93 B.R. 849, 856 (Bankr. D.N.J. 1988), *aff'd in part*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990); *Texaco Inc.*, 84 B.R. at 910; *In re Adamson Co.*, 42 B.R. 169, 176 (Bankr. E.D. Va. 1984); *Toy & Sports Warehouse*, 37 B.R. at 151.

97.     For purposes of determining whether the Plan satisfies these feasibility standards, the Debtors have analyzed their ability to meet their obligations under the Plan and submit that Confirmation is not likely to be followed by liquidation or the need for further reorganization. *See* Held Declaration ¶ 22.

98.     The Plan is the product of extensive arm's length negotiations among the Debtors, the Plan Sponsor, and the other RSA Parties, who have all agreed to support the Plan pursuant to the RSA. *See* Held Declaration ¶ 15. In the context of those negotiations, no party requested a formal valuation of the Reorganized Debtors as a going concern, nor does the RSA require such a formal valuation. *Id.* at ¶ 17. The Debtors and the RSA Parties understand and agree that the going concern value of the Reorganized Debtors remains speculative, based in large part on future performance and broader macroeconomic factors outside of the Debtors' control. *Id.* Nonetheless, the Debtors and the Plan Sponsor agree that the Plan is feasible. *Id.* Further, the Debtors and the Plan Sponsor determined that it would have been burdensome and wasteful to undertake a formal going-concern valuation of the Debtors. *Id.* at ¶ 18. Consequently, the Debtors believe that the economic terms of the Plan reflect a market-based resolution reached through the negotiations of the RSA, which is more reliable than a forward-looking prediction of theoretical value. Apart from

38

the RSA Parties who are supporting the Plan, other holders of Claims entitled to distributions under the Plan (most notably, holders of Class 5 Claims) will receive their pro rata distribution of the GUC Consideration, which will be funded on the Effective Date without regard to future performance of the Reorganized Debtors. As a result, the absence of a formal valuation does not affect the amounts such holders may receive under the Plan and the Plan is feasible.

99.    Additionally, based on the transactions contemplated in the Plan, the financial projections included as **Exhibit C** to the Disclosure Statement (the "Financial Projections"), and the Held Declaration, there are sufficient means of implementing the Plan that offer a reasonable assurance of success. *See* Held Declaration ¶ 14. The Plan represents the best restructuring available after a lengthy restructuring effort and is the result of robust negotiations among sophisticated parties and their professionals with the goal of deleveraging the Debtors' balance sheet and preserving the Debtors' ability to continue operating and securing customer homes and businesses across the United States. *Id.* at ¶ 16. The Plan Sponsor as the DIP Lender agreed to finance the administration of these Chapter 11 Cases and has agreed to take equity in the Reorganized Company in satisfaction of their prepetition secured Claims, which evidences its confidence in the Debtors' future financial success. As illustrated in the Financial Projections, the Debtors will be able to meet their obligations under the Plan while maintaining sufficient liquidity and capital resources.

100.    Based on the foregoing, it is evident that Confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Reorganized Debtors. Consequently, the Plan satisfies the requirements of § 1129(a)(11). Further, no objection to the Plan's feasibility has been made, and no evidence has been introduced in opposition to the evidence presented by the Debtors.

39

**L.      The Plan Provides for the Payment of Certain Fees (§ 1129(a)(12)).**

101.     Section 1129(a)(12) requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. 11 U.S.C. § 1129(a)(12). Pursuant to § 3.2.3 of the Plan, all quarterly fees under 28 U.S.C. § 1930(a) will be paid for each quarter until the Chapter 11 Cases are converted, dismissed, or closed, thereby satisfying § 1129(a)(12).

**M.      Miscellaneous Provisions (§ 1129(a)(13)-(16)).**

102.     Section 1129(a) requires that a plan "provide for the continuation . . . of all retiree benefits," pay "domestic support obligation[s]," distribute property in certain ways in individual bankruptcies, and make transfers for plans for non-profit businesses in accordance with applicable nonbankruptcy law. 11 U.S.C. §§ 1129(a)(13)-(16). These provisions are inapplicable as the Debtors (i) do not have retiree benefit obligations (§ 1129(a)(13)), (ii) have no domestic support obligations (§ 1129(a)(14)), (iii) are not individuals (§ 1129(a)(15)), and (iv) are for-profit businesses (§ 1129(a)(16)).

**N.      The Plan Satisfies the "Cramdown" Requirements.**

103.     Section 1129(a)(8), which requires that all impaired Classes accept the Plan, has not been satisfied with respect to the deemed rejecting Classes. Nonetheless, § 1129(b)(1) provides that, if certain requirements are met, a plan shall be confirmed notwithstanding that § 1129(a)(8) is not satisfied with respect to one or more classes:

> [I]f all of the applicable requirements of . . § [1129(a) of the Bankruptcy Code] other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).

40

104.    As described above, Classes 5 through 8(a) are deemed to reject the Plan pursuant to § 1126(g). As a result, § 1129(a)(8) is not satisfied.

105.    To confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. *John Hancock Mut. Life Ins. Co.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *see also In re Zenith Elecs. Corp.*, 241 B.R. at 105 (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable'") (citations omitted).

### 1.    The Plan Does Not Discriminate Unfairly with Respect to the Deemed Rejecting Classes.

106.    The Plan does not discriminate unfairly against holders of Claims or Interests in the deemed rejecting Classes. The unfair discrimination standard of § 1129(b)(1) ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006) (noting that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination") (citing *In re Lernout & Hauspie Speech Prod., N.V.*, 301 B.R. 651, 660 (Bankr. D. Del. 2003), aff'd, 308 B.R. 672 (D. Del. 2004)); *In re WorldCom Inc.*, Case No. 02-13533 (AJG), 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990)); *In re Johns-Manville*, 68 B.R. at 636. Accordingly, as between two classes of claims or two classes of interests, there is no unfair discrimination if (a) the classes are comprised of dissimilar claims or interests, *see id.*, 68 B.R. at 636, or (b) taking into account the particular

41

facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g., Drexel Burnham*, 138 B.R. at 715 (separate classification and treatment was rational where members of each class possessed different legal rights), *aff'd sub nom. Lambert Brussels Assocs., L.P. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 140 B.R. 347 (S.D.N.Y. 1992); *In re Jersey City Med. Ctr.*, 817 F.2d at 1061 (approving classification of general unsecured creditors into different classes with different legal bases).

107. Here, the Plan does not discriminate unfairly against any Class of Claims or Interests. As described in § 2 of the Plan, each Class deemed to reject the Plan is classified separately because it is legally distinct from other Classes, and all Claims or Interests in such Classes are classified with Claims or Interests of a similar legal nature that are afforded the same treatment under the Plan. Accordingly, given their distinctly different legal and economic character from other Claims and Interests, the Claims and Interests in Classes 5 through 8 are not similarly situated to any other Claims or Interests, or to the extent that they are, the same treatment is being provided. Therefore, the different treatment is justified.

108. As further discussed below, Classes 5 through 8(a) are not entitled to recovery under the absolute priority rule until all senior creditors have been paid in full. In short, the Plan does not discriminate unfairly among any classes of claims or interests that rejected the Plan.

### 2. The Plan is "Fair and Equitable."

109. A plan is fair and equitable with respect to a class of general unsecured claims if either (i) the plan provides that each holder of a claim of such class will receive property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest. 11 U.S.C. § 1129(b)(2)(B). A similar concept applies with respect to classes of interests. 11 U.S.C. § 1129(b)(2)(C). A corollary to these

42

absolute priority rules is that no creditor in a more senior class may receive more than what it is owed. *In re Exide Techs.*, 303 B.R. 48, 61 (Bankr. D. Del. 2003).

110.    The Plan is fair and equitable with respect to the deemed rejecting Classes. First, there are no holders of Claims or Interests junior to any creditors or interest holders in the rejecting classes who are receiving any recovery under the Plan on account of such Claims or Interests. Further, no Holder of a Claim or Interest in a Class senior to the Classes deemed to reject the Plan will receive or retain any property under the Plan in an amount in excess of such Holder's Claims or Interests.

111.    Therefore, the Plan is in compliance with the fair and equitable standard, does not unfairly discriminate against any Class of Claims or Interests, and is consistent with the requirements of § 1129(b). Thus, the Plan may be confirmed despite the deemed rejection of Classes 5, 6, 7 and 8(a).

**O.      The Plan Satisfies § 1129(c): Only One Plan.**

112.    Subject to certain conditions, § 1129(c) requires that the Court confirm only one plan. 11 U.S.C. § 1129(c). The Plan is the only plan being confirmed in these Chapter 11 Cases with respect to the Debtors, and thus § 1129(c) is satisfied.

**P.      The Plan Satisfies § 1129(d): Principal Purpose.**

113.    Section 1129(d) states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d). The purpose of the Plan is not to avoid taxes or the application of § 5 of the Securities Act. Thus, the Plan satisfies § 1129(d).

## X.

## <u>IMMEDIATE EFFECTIVENESS</u>

114.    The Debtors request that the terms of the Confirmation Order be effective immediately upon entry thereof, notwithstanding any stay that might be imposed by Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002, or otherwise. Under the circumstances, the Debtors respectfully submit that cause exists to waive and eliminate the stay of the Confirmation Order so that such order may be effective immediately upon its entry. *In re My Job Matcher, Inc.*, No. 25-11280 (KBO) (Docket No. 502) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *Alpha Latam Management, LLC*, Case No. 21-11109 (Docket No. 652) (JKS) (Bankr. D. Del. Mar. 16, 2022) (same); *In re Pace Indus., LLC*, No. 20-10927 (MFW), 2020 WL 5015839, at *18 (Bankr. D. Del. May 29, 2020) (same). A stay of the Confirmation Order will delay the Debtors' implementation of the Plan, extending the time that the Debtors must remain in chapter 11. The Plan (including all documents necessary to effectuate the Plan) enjoys unanimous support from the creditors entitled to vote on the Plan. In order to maximize value, it is critical that the Debtors maintain customer confidence, which could be jeopardized by extending the length of time that the Debtors remain in chapter 11. In addition, a longer stay in chapter 11 would only serve to increase the administrative and professional costs incurred by the Debtors' estates. These are unnecessary risks given the unanimous support for the Plan by voting economic stakeholders.

115.    For all of these reasons, the Debtors request a waiver of the stay imposed by the Bankruptcy Rules so that the Court's order confirming the Plan may be effective immediately upon its entry.

[*Remainder of page intentionally left blank*]

44

## XI.

### <u>CONCLUSION</u>

The Plan complies with and satisfies all of the requirements of §§ 1123, 1127, and 1129.

Accordingly, the Debtors respectfully request that the Court (i) approve the Disclosure Statement,

(ii) confirm the Plan, and (iii) grant such other and further relief as is just and proper.

Dated: May 26, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel:    (302) 652-4100
Email: ljones@pszjlaw.com
          debertenthal@pszjlaw.com
          tcairns@pszjlaw.com

-and-

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel:    (213) 623-9300
Email: tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Geoffrey M. Miller (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Tel:    (212) 768-6700
Email: john.beck@dentons.com
          geoffrey.miller@dentons.com

*Counsel for Debtors and Debtors in Possession*