**Exhibit A**
**(Proposed Confirmation Order)**

4922-6161-1696.1 40173.00001

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| IMPAC MORTGAGE HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-10593 (CTG) |
|  | ) |  |
|  | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | Docket Ref. Nos. 9 and 13 |
|  | ) |  |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND (II)**
**CONFIRMING THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**
**OF IMPAC MORTGAGE HOLDINGS, INC. AND AFFILIATES THEREOF**

The above-captioned debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors")[2] in the above-captioned chapter 11 cases (the "Chapter 11 Cases") having:

    a.  commenced, on April 23, 2026, a prepetition solicitation of votes on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 13] (as supplemented by the Plan Supplement (as defined below) and, as may be further amended, modified, and supplemented from time to time, the "Plan") by distributing to Holders of Class 3 Senior Indebtedness Claims and Class 4 Subordinated Notes Claims, the only classes entitled to vote under the Plan (the "Voting Classes"): (i) the Plan; (ii) the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 9] (the "Disclosure Statement"); and (iii) ballots, substantially in the form attached as Exhibits 1A and 1B to the Scheduling Order (as defined herein) to vote on the Plan (the "Ballots");

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Plan Supplement, as applicable.

b.   commenced, on April 26, 2026 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

c.   filed on the Petition Date, among other documents: (i) the Plan; (ii) the Disclosure Statement; and (iii) *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Combined Hearing Notice, (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases, (V) Waiving the Requirement of Filing Schedules, Statements of Financial Affairs, Rule 2015.3 Reports and Section 341 Meeting of Creditors and (VI) Granting Related Relief* [Docket No. 15] (the "Scheduling Motion"), which, among other things, scheduled the combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan for May 28, 2026 (the "Combined Hearing");

d.   operated their businesses during the Chapter 11 Cases as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

e.   published on April 27, 2026 the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Joint Chapter 11 Plan, and Related Matters, and (III) Objection Deadline* (the "Publication Notice");

f.   filed and served on April 29, 2026, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Joint Chapter 11 Plan, and Related Matters, and (III) Objection Deadline* [Docket No. 75] (the "Combined Hearing Notice"), which provided a summary of the key terms of the Plan, on all known Holders of Claims against and Interests in the Debtors, the United States Trustee for Region 3 (the "United States Trustee"), and certain other parties in interest, in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Scheduling Order (as defined herein);

g.   filed on May 14, 2026, the *Plan Supplement With Respect to the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. And Affiliates Thereof* [Docket No. 104] (as may be further amended, supplemented, or modified from time to time pursuant to the terms of the Plan, the "Plan Supplement");

h.   served on applicable Executory Contract and Unexpired Lease counterparties on May 15 and 18, 2026 the *Notice of (I) Possible Assumption or Assignment of Executory Contracts or Unexpired Leases, (II) Fixing Cure Amounts, and (III) Deadline to Object Thereto*, which, among other things, established May 28, 2026 as the deadline to object to the Debtors' proposed assumption, assumption and assignment or related Cure Cost (the "Cure Notice") [Docket No. 145];

2

i.  filed on May 26, 2026, the *Declaration of Adam J. Gorman Regarding the Tabulation of Votes in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 146] (the "Voting Declaration");

j.  filed on May 26, 2026, the: (i) *Memorandum of Law in Support of Entry of an Order (I) Approving the Adequacy of the Disclosure Statement and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. And Affiliates Thereof* [Docket No. 150] (the "Confirmation Brief"); and (ii) *Declaration of Eric S. Held in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 154] (the "Held Declaration"); and

k.  consolidated the Chapter 11 Cases for procedural purposes only in accordance with the *Final Order Authorizing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only* [Docket No. 62], as a result of which the Plan represents a separate plan of reorganization for each Debtor.

The Bankruptcy Court having:

a.  determined that: (i) it has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012; (ii) approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2); (iii) it has jurisdiction to (a) approve the adequacy of information contained in the Disclosure Statement and the Solicitation Procedures (as defined herein) and to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) enter a final order (this "Confirmation Order"), consistent with Article III of the United States Constitution, with respect thereto; and (iv) venue in this District is proper pursuant to 28 U.S.C. §§1408 and 1409;

b.  reviewed the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures") as set forth in the Disclosure Statement and Scheduling Motion, which Solicitation Procedures were conditionally approved by the *Order Granting Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Combined Hearing Notice, (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases, (V) Waiving the Requirement of Filing Schedules, Statements of Financial Affairs, Rule 2015.3 Reports and Section 341 Meeting of Creditors and (VI) Granting Related Relief* [Docket No. 73] (the "Scheduling Order");

c.  held the Combined Hearing on May 28, 2026, at 2:00 p.m., prevailing Eastern Time, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.  reviewed the *Declaration of George A. Mangiaracina in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 16] (the "First Day Declaration"), the Plan (with all modifications thereto, including those set forth herein), the Plan Supplement, the Disclosure Statement, the Ballots, the Confirmation Brief, the Held Declaration, the Voting Declaration and all other pleadings, exhibits, statements, and comments filed by the Debtors in support of confirmation of the Plan;

e.  heard the statements, arguments, and any objections made at the Combined Hearing;

f.  considered all other materials and evidence filed, presented or submitted regarding approval of the Disclosure Statement and the Solicitation Procedures and confirmation of the Plan, including all objections, statements, and reservations of rights, if any, made with respect thereto; and

g.  taken judicial notice of the papers and pleadings filed, all orders entered and all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefore, **IT IS HEREBY FOUND AND DETERMINED THAT:**

A.  **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Combined Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  **Capitalized Terms.** Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan.

C.  **Jurisdiction and Venue.** This Court finds that (i) it has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012; (ii) approval of the Disclosure Statement and confirmation of the Plan are core proceedings under

28 U.S.C. § 157(b)(2); (iii) it has jurisdiction to (a) approve the adequacy of information contained in the Disclosure Statement and the Solicitation Procedures (as defined herein) and to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) enter a final order (this "Confirmation Order"), consistent with Article III of the United States Constitution, with respect thereto; and (iv) venue in this District is proper pursuant to 28 U.S.C. §§1408 and 1409.

D.      **Chapter 11 Petitions.** On April 26, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  A statutory committee has not been appointed and no party has requested the appointment of a trustee or examiner in the Chapter 11 Cases.

E.      **Judicial Notice.** This Court takes judicial notice of the docket in the Chapter 11 Cases, including the dockets of any adversary proceedings initiated in the cases, maintained by the Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases, including, without limitation, the Combined Hearing.

F.      **Solicitation.** The Solicitation Procedures were: (a) appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases; (b) conducted in good faith; (c) complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and all other applicable non-bankruptcy rules, Laws, and regulations; and (d) are approved.

G.      **Voting.** The procedures by which the Ballots for acceptance or rejection of the Plan and Release Opt-In Forms were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Solicitation Procedures.

H.      **Plan Supplement.** The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement documents and any schedules, exhibits or amendments thereto, following entry of this Confirmation Order in a manner consistent with this Confirmation Order, the Plan, or applicable Law.

I.      **Plan Modification**. Pursuant to section 1127 of the Bankruptcy Code and subject to the provisions of the Plan relating to modifications, any modifications to the Plan since the commencement of solicitation constitute technical changes or changes with respect to particular Claims made with the consent of the Holders of or representatives of the Holders of such Claims or do not materially and adversely affect or change the treatment of any other Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The disclosure of any Plan modifications prior to or on the record at the Combined Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for confirmation.

J.      **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the plan proponents.

K.    **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.    **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Claims, Priority Tax Claims, and DIP Claims which need not be classified, the Plan designates eight (8) Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.    **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Section 2 of the Plan specifies that Class 1 (Priority Non-Tax Claims), Class 2(a) (Enterprise Claims), Class 2(b) (Unimpaired Secured Claims), and Class 8(b) (Interests in Debtor Subsidiaries) are Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

N.    **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Section 2 of the Plan designates Class 3 (Senior Indebtedness Claims), Class 4 (Subordinated Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), Class 7 (510(b) Claims) and Class 8(a) (Interests in Impac) as Impaired and specifies the treatment of Claims and Interests in such Classes. Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

O.    **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or

Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.      **Implementation of the Plan (11 U.S.C. § 1123(a)(5))**. The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation: (a) the compromise or settlement of all Claims and Interests and controversies; (b) consummation of the transactions contemplated by Section 5.2 of the Plan (the "Effective Date Transactions"); (c) the continued vesting of the assets of the Debtors' Estates in the Reorganized Debtors; (d) the cancellation of certain existing agreements, obligations, instruments and Interests; (e) the entry into the Exit Facility; (f) the issuance of Plan Sponsor Common Stock; (g) the Amended Certificate and Bylaws; and (h) authorizing the board of directors of the Reorganized Debtor to adopt and implement the Management Incentive Plan; provided, however, that, for the avoidance of doubt, (i) nothing in this Confirmation Order shall constitute approval by the Court of any specific terms of the Management Incentive Plan and (ii) neither the Management Incentive Plan nor any equity interests issued thereunder are being issued pursuant to section 1145 of the Bankruptcy Code.  Thus, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

Q.      **Organizational Documents**.  Subject to Section 5 of the Plan, the Reorganized Debtors are authorized to enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan.

R.      **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))**. The Plan does not provide that any of the Reorganized Debtors issue non-voting equity securities within the meaning of section 1123(a)(6) of the Bankruptcy Code. The Amended Certificate and Bylaws for Reorganized Impac do not

permit the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code.  Therefore, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

S.    **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))**. The Plan Supplement discloses the individuals who will serve as the Reorganized Debtors' officers and directors on the Effective Date. The Plan and the Amended Certificate and Bylaws, as applicable, are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the Reorganized Debtors' officers and directors. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

T.    **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

U.    **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtors have exercised reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases as provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such assumptions and rejections are justified and appropriate in the Chapter 11 Cases. The Debtors' exercise of reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases is justified and appropriate in the Chapter 11 Cases for the reasons set forth in the Disclosure Statement, the Confirmation Memorandum, and the Held Declaration.  The Debtors have cured or provided adequate assurance that the Reorganized Debtors or their successors or assignees will cure, all defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases assumed (or assumed and assigned) under the Plan. In addition, the Debtors have provided adequate assurance of future performance regarding each Executory Contract and Unexpired Lease to be assumed

(or assumed and assigned) under the Plan.  Service of the Cure Notice on the counterparties identified thereon in the manner identified by the Debtors in Certificate of Service relating thereto constitutes good, adequate, and sufficient notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the proposed assumption of the Executory Contracts and Unexpired Leases to be assumed under the Plan.

V.    **Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions**.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, settlements, releases, exculpations, and injunctions set forth herein and in Section 10 of the Plan. Further, sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth herein and in Section 10 of the Plan. Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Combined Hearing, the Bankruptcy Court finds that the discharge, compromises, settlements, releases, exculpations, and injunctions set forth herein and in Section 10 of the Plan are consistent with the Bankruptcy Code and applicable Law. Further, the discharge, compromises, settlements, releases, exculpations, and injunctions contained herein and in Section 10 of the Plan are integral components of the Plan. The discharge, compromises, settlements, releases, exculpations, and injunctions set forth herein and in Section 10 of the Plan are hereby approved and authorized in their entirety.

a.    **Debtor/Estate Release**.  The Debtor/Estate Release set forth in Section 10.5(a) of the Plan is in accordance with section 1123(b) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment.  The Debtor/Estate Release is fair and equitable, is a key component of the Plan, and is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. Releases of the Released Parties by the Debtors and the other Debtor/Estate Releasors are critically

important to the success of the Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders, and implements the concessions and compromises made by the parties to the Effective Date Transactions contemplated by the Plan. Each of the Released Parties afforded value and provided consideration to the Debtors and Estates, aided in the reorganization process and played an integral role in the formulation and implementation of the Plan. The Plan includes the settlement and resolution of several complex issues, and the Debtor/Estate Release is an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (i) in exchange for the good and valuable consideration provided by the Debtor Released Parties, including, without limitation, the Debtor Released Parties' contributions to facilitating the restructuring and implementing the Plan; (ii) in the best interests of the Debtors, the Estates and all holders of Claims and Interests; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Debtors, the Plan Administrator, or the Debtors' respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

b.      **Third Party Release**.  The Third Party Release set forth in Section 10.5(b) of the Plan is an essential provision of the Plan.  The Releasing Parties shall only provide the Third Party Release if they expressly and affirmatively opt-in to such Third-Party Release.  Accordingly, the Third-Party Release is consensual.  The Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan, important to the overall objectives of the Plan

and an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) given in exchange for the good and valuable consideration provided by the Third-Party Released Parties, including, without limitation, the Third-Party Released Parties' contributions to facilitating the restructuring and implementing the Plan; (iv) materially beneficial to, and in the best interests of the Debtors and their respective Estates and stakeholders; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (viii) within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); and (xi) consistent with the Bankruptcy Code.

c.      **Exculpation**.  The exculpation provisions set forth in Section 10.6 of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Section 10.6 of the Plan.

d.      **Discharge**.  Pursuant to Section 10.3 of the Plan and section 1141(d) of the Bankruptcy Code, and except as otherwise expressly provided in the Plan or this Confirmation Order, upon the occurrence of the Effective Date, the Debtors shall be, and hereby are, discharged from any and all Claims, debts, rights, Causes of Action, and liabilities that arose prior to the Effective Date (including any interest accrued thereon from and after the Petition Date), and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) such Claim is Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.

e.      Except as otherwise provided in the Plan or this Confirmation Order, the discharge provided herein shall (i) void any judgment obtained against any of the Debtors at any time, to the extent such judgment relates to a discharged Claim, and (ii) operate as an injunction pursuant to sections 524(a)

and 1141 of the Bankruptcy Code against the commencement or continuation of any action, the employment of process, or any act to collect, recover, or offset any discharged Claim as a personal liability of any of the Debtors or against property of the Debtors or Reorganized Debtors, whether or not discharge of such Claim is waived.

f.      Notwithstanding the foregoing, nothing contained in the Plan or this Confirmation Order shall discharge or release (a) any obligations of the Reorganized Debtors arising on or after the Effective Date under the Plan, any document, instrument, or agreement executed to implement the Plan, or this Confirmation Order, or (b) any liability that is excepted from discharge pursuant to section 1141(d)(6) of the Bankruptcy Code.

g.      **Injunction.**  The injunction provisions set forth in Section 10.4 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor/Estate Release, the Third Party Release, and the exculpation provisions in Section 10.6 of the Plan.

W.      **Non-Debtor Proposed Sales (11 U.S.C. § 1123(c))**. Section 1123(c) of the Bankruptcy Code governing non-Debtor proposed sales is inapplicable because the Debtors are not "individuals" as defined in the Bankruptcy Code.

X.      **Cure of Defaults (11 U.S.C. § 1123(d))**. The Plan provides that the any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan will be satisfied in compliance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

Y.      **Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order governing

13

notice, disclosure, and solicitation in connection with the Plan, the Plan Supplement, and all other matters considered by this Court in connection with the Chapter 11 Cases. Thus, section 1129(a)(2) of the Bankruptcy Code is satisfied.

Z.    **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan is the result of extensive arm's length negotiations among the Debtors, Plan Sponsor and the Debtors' other key stakeholders and is supported by their creditors and other parties in interest in the Chapter 11 Cases as set forth in the RSA. Further, the Plan's classification, indemnification, exculpation, release, discharge, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 524, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful reorganization; provided, however, nothing in the Plan or this Confirmation Order shall be deemed to provide for the exculpation of the Plan Administrator in its capacity as such. Thus, section 1129(a)(3) of the Bankruptcy Code is satisfied.

AA.    **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** The procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. Thus, section 1129(a)(4) of the Bankruptcy Code is satisfied.

BB.    **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** The Debtors have disclosed in the Plan Supplement (i) the identity and the affiliation of certain individuals proposed to serve on or

14

after the Effective Date as directors of the Reorganized Debtors and (ii) the identity and the nature of compensation of any insider proposed to be employed or retained by the Reorganized Debtors on or after the Effective Date in a manner consistent with the interests of Holders of Claims or Interests and with public policy.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

CC.    **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction.  Thus, the provisions of section 1129(a)(6) do not apply to the Plan.

DD.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**. Each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. The liquidation analysis attached as Exhibit B to the Disclosure Statement and the other evidence proffered or adduced at the Combined Hearing and in the Held Declaration: (i) is reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (ii) utilizes reasonable and appropriate methodologies and assumptions; (iii) has not been controverted by other evidence; and (iv) establishes that Holders of Allowed Claims and Interests in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Thus, the "best interests" test under section 1129(a)(7) of the Bankruptcy Code is satisfied.

EE.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Class 1 (Priority Non-Tax Claims), Class 2(a) (Enterprise Claims), Class 2(b) (Unimpaired Secured Claims), and Class 8(b) (Interests in Debtor Subsidiaries) are left unimpaired under the Plan.  Each of Class 3 (Senior Indebtedness

Claims) and Class 4 (Subordinated Notes Claims) have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), Class 7 (510(b) Claims) and Class 8(a) (Interests in Impac), are deemed to have rejected the Plan (together, the "Deemed Rejecting Classes"). Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

FF.    **Treatment of Administrative Claims, Professional Fee Claims, United States Trustee Fees, DIP Claims, and Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims, Professional Fee Claims, United States Trustee Fees, DIP Claims, and Priority Tax Claims pursuant to Section 3.2 of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

GG.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Class 3 (Senior Indebtedness Claims) and Class 4 (Subordinated Notes Claims) are Impaired Classes of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

HH.    **Feasibility (11 U.S.C. § 1129(a)(11))**. The evidence supporting the feasibility of the Plan proffered or adduced by the Debtors at or before the Combined Hearing, including the financial projections set forth in Exhibit C to the Disclosure Statement and the Held Declaration: (i) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) utilizes reasonable and appropriate methodologies and assumptions; (iii) has not been controverted by other evidence or challenged in any of the objections to confirmation; (iv) establishes that the Plan is feasible and confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, as applicable; and (v) establishes that the

Debtors or the Reorganized Debtors, as applicable, will have access to sufficient funds and financial resources, which will enable them to meet their obligations under the Plan. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

II. **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan. Thus section 1129(a)(12) of the Bankruptcy Code is satisfied.

JJ. **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).** Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to confirmation, as the Debtors (i) are not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) (section 1129(a)(13)), (ii) have no domestic support obligations (section 1129(a)(14)), (iii) are not individuals (section 1129(a)(15)), and (iv) are not nonprofit corporations (section 1129(a)(16)).

KK. **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to each of the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (i) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (ii) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Further, to the extent Class 6 (Intercompany Claims) or Class 8(b) (Interests in Debtor Subsidiaries) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any

17

Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. Third, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in the Held Declaration filed in connection with, the Combined Hearing regarding the Debtors' classification and treatment of Claims and Interests (x) is reasonable, persuasive, credible, and accurate; (y) utilizes reasonable and appropriate methodologies and assumptions; and (z) has not been controverted by other credible evidence.

LL.    **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

MM.    **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to confirmation on any such grounds. Thus, section 1129(d) of the Bankruptcy Code is satisfied.

NN.    **Satisfaction of Confirmation Requirements**. Based upon the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

OO.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).** The Debtors and their officers, directors, employees, advisors, Professionals Persons, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan, and

they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in Section 10 of the Plan and in this Confirmation Order.

PP. **Valuation**. In light of the fact that the Plan was the product of extensive arms-length negotiations among the Debtors, the Plan Sponsor and the other RSA Parties and because no party requested a formal valuation of the Debtors, no valuation was needed to demonstrate that the Plan is feasible and the Court, having considered the record and the arguments before it, determines that the Plan is feasible.  Given the largely consensual nature of the Plan with respect to the RSA Parties, it would have been unnecessarily burdensome and wasteful to undertake a formal going-concern valuation.  The Plan reflects a market-based resolution reached through negotiations between the interested parties.  Furthermore, the absence of a formal valuation does not affect the amounts such holders may receive under the Plan, and the Plan is feasible under section 1129(a)(11) of the Bankruptcy Code.

QQ. **Plan Documents**. The terms of the Plan, including, without limitation, the Plan Supplement, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and the Plan Supplement, including the Effective Date Transactions, the Exit Facility, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "**Plan Documents**") are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order.

RR. **Binding and Enforceable**. The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid,

binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy Law.

SS.     **Issuance of New Common Stock**. Issuance of the New Common Stock is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors or Reorganized Debtors are authorized, without further approval of this Bankruptcy Court or any other party, to issue the New Common Stock in accordance with the Plan and to execute and deliver, as applicable, all agreements, documents, instruments, and certificates relating thereto.

TT.     **Exit Loan Facility**.  Entry into the Exit Loan Agreement is consistent with the terms set forth in the Plan Supplement and is in the best interests of the Debtors, their Estates, and the Holders of Claims against and Interests in the Debtors and their Estates. The Debtors have exercised reasonable business judgment in determining to enter into an Exit Loan Facility and have provided sufficient and adequate notice of the material terms of the Exit Loan Facility, which material terms were filed as part of the Plan Supplement. The terms and conditions of the Exit Loan Facility included in the Plan Supplement are fair and reasonable, and were negotiated in good faith and at arm's length. All other contracts, instruments, agreements, and documents to be executed and delivered in connection with the Exit Loan Facility, and any credit extended to the Reorganized Debtors pursuant to the such documents is deemed to have been extended, issued, and made in good faith and for legitimate business purposes and is deemed not to constitute a preferential transfer, fraudulent conveyance, or other voidable transfer under the Bankruptcy Code or any other applicable non-bankruptcy Law.

UU.     **Issuance of Contingent Payment Certificate**. Issuance of the Contingent Payment Certificate is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors or Reorganized Debtors are authorized, without further

approval of this Bankruptcy Court or any other party, to issue the Contingent Payment Certificate in accordance with the Plan and to execute and deliver, as applicable, all agreements, instruments and other documents relating thereto.

VV.    **Reinstatement of Enterprise Obligations**.  The Court finds that the treatment of the Enterprise Obligations under the Plan constitutes a valid reinstatement pursuant to section 1124 of the Bankruptcy Code. The Plan provides for the cure of any defaults (other than those that are not curable under applicable law), a consensual extension of the maturity date of the Enterprise Obligations to April 30, 2031, and not otherwise altering the legal, equitable, or contractual rights of Enterprise, including the liens securing the Enterprise Obligations, which shall remain in full force and effect following the Effective Date, with the same validity, priority, scope, and extent as existed prior to the Petition Date. Accordingly, the Enterprise Obligations are not impaired within the meaning of section 1124, and Enterprise is deemed unimpaired and not entitled to vote on the Plan. The Court further finds that, upon the Effective Date, the Enterprise Obligations shall be reinstated and shall not be in default.

WW.    **Implementation**.  All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement (including, among others, the Exit Facility Documents), have been negotiated in good faith and at arms'-length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

XX.    **Retention of Jurisdiction.** This Court may properly retain jurisdiction over the matters set forth in Section 11 of the Plan and/or section 1142 of the Bankruptcy Code.

YY.     **Waiver of Stay**. Under the circumstances, including the imposition of the Milestones in the RSA, it is appropriate that the 14-day stay imposed by the Bankruptcy Rules 3020(e) and 7062 be waived.

Based upon the foregoing findings, and upon the record made before this Court at the Combined Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      **Findings of Fact and Conclusions of Law**. The recitals, findings of fact and conclusions of law above are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

2.      **Eligibility for Relief**. The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

3.      **Combined Hearing on Approval of the Disclosure Statement and Confirmation of the Plan**. It was appropriate to hold the Combined Hearing on the Debtors' request for approval of the Disclosure Statement and confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, and Bankruptcy Rule 3018(b).

4.      **Approval of the Disclosure Statement**. The Disclosure Statement is approved in all respects as containing "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) in accordance with section 1125 of the Bankruptcy Code. Any and all objections and reservations of rights to the Disclosure

Statement that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits.

5.    **Confirmation of the Plan**. The requirements for confirmation set forth in sections 1129(a) and 1129(b), which include by reference sections 1122(a) and 1123(a)(1), of the Bankruptcy Code have been satisfied. The Plan, together with the other Plan Documents (as may be amended in accordance with the terms therewith or the terms of the Plan), are confirmed pursuant to section 1129 of the Bankruptcy Code. Any and all objections and reservations of rights to the Plan that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits. The terms of the Plan and the Plan Documents are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order and are authorized and approved, and the Debtors are authorized to implement their provisions and consummate the Plan and the Plan Documents, including taking all actions necessary, advisable, or appropriate to finalize the Plan Documents and to effectuate the Plan and the Effective Date Transactions, without any further authorization except as may be expressly required by the Plan or this Confirmation Order. As set forth in the Plan, once finalized and executed, the Plan Documents and all other documents contemplated by the Plan shall constitute legal, valid, binding and authorized rights and obligations of the respective parties thereto, enforceable in accordance with their terms. On the Effective Date, pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, the Plan, the Plan Supplement, and the Plan Documents shall be, and hereby are, valid, binding, and enforceable.

6.    **Notice of Confirmation Order and Effective Date**. In accordance with Bankruptcy Rules 2002 and 3020(c), the Reorganized Debtors shall file with the Bankruptcy Court a notice, substantially in the form annexed hereto as **Exhibit A** (the "Notice of Confirmation Order"), informing parties in interest of, among other things, entry of the confirmation Order and the occurrence of the Effective Date, the GUC Bar Date, the Governmental Bar Date and the Rejection Bar Date. The Reorganized Debtors shall serve

the Notice of Confirmation Order on all: (a) known Holders of Claims and Interests; (b) parties that requested notice in accordance with Bankruptcy Rule 2002; and (c) other parties on whom the Combined Hearing Notice was served within five (5) Business Days of the occurrence of the Effective Date. The form of the Notice of Confirmation Order is hereby approved. Notice need not be given or served to any Entity for whom any prior notices sent during these Chapter 11 Cases have been returned as undeliverable, unless the Debtors have been informed in writing by such Entity of that Entity's new address. Further, pursuant to Bankruptcy Rule 2002(f), the Debtors shall publish the Notice of Confirmation Order, as may be modified for publication, in one national publication as soon as reasonably practicable after the Effective Date. The notice described herein is adequate and appropriate and no other or further notice is necessary. The Notice of Confirmation Order will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order and occurrence of the Effective Date to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

7.     **General Unsecured Claims Bar Date**. The deadline to file proofs of claim for General Unsecured Claims shall be established as the first Business Day that is the 30th day after the Effective Date (the "**GUC Bar Date**"). Notice of the GUC Bar Date shall be provided in the Notice of Confirmation Order, and service and publication of the Notice of Confirmation Order as prescribed above shall constitute good, adequate, and sufficient notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Holders of General Unsecured Claims that are required to submit a Proof of Claim to the Plan Administrator for payment of such General Unsecured Claims pursuant to the Plan, but do not file and serve such a request by the GUC Bar Date shall be forever barred, estopped, and enjoined from asserting such General Unsecured Claims against the Distributable GUC Assets, Debtors, the Reorganized Debtors, or their property. The Plan Administrator shall have 180 days after the Effective

Date to object to Claims, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

8.      **Governmental Bar Date**.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any governmental unit shall be entitled to file a proof of claim prior to October 23, 2026 (the "**Governmental Bar Date**") in accordance with section 502(b)(9) of the Bankruptcy Code, and no claim of a governmental unit shall be discharged, released, barred, or otherwise adversely affected prior to the expiration of the Governmental Bar Date.

9.      **Administrative Claims Bar Dates**. The Administrative Claims Bar Date shall be established as the first Business Day that is the 30th day after the Effective Date (the "**Administrative Claims Bar Date**"). Notice of the Administrative Claims Bar Date shall be provided in the Notice of Confirmation Order, and service and publication of the Notice of Confirmation Order as prescribed above shall constitute good, adequate, and sufficient notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims pursuant to the Plan, but do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, or their property. The Reorganized Debtors shall have 60 days after the Administrative Claims Bar Date to object to Claims, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

10.     **Omission of Reference to Particular Plan Provisions**. The failure to specifically describe any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish

or impair the effectiveness of such provision, and such provision shall have the same validity, binding effects, and enforceability as every other provision of the Plan and the Plan Documents.

11.    **Deemed Acceptance of the Plan as Modified**. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan, including any modifications made pursuant to the terms of the Plan after solicitation and prior to entry of this Confirmation Order.

12.    **Compromise and Settlements Under the Plan**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classifications, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019. Other than as specifically set forth in the Plan, the Plan is deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order constitutes the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class shall be final. Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has

expressly entered into a written settlement agreement), and the treatment of Claims and Interests is being afforded pursuant to confirmation by satisfying the requirements of Section 1129.

13.    **Effective Date Transactions**. Prior to, on, or as soon as reasonably practicable after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan and the Plan Supplement, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable Law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of formation or incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable Law; and (d) all other actions that the Reorganized Debtors reasonably determine are necessary or appropriate. For the purposes of effectuating the Plan, none of the Effective Date Transactions contemplated herein shall constitute a change of control under any agreement, contract, or document of the Debtors.

14.    The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or Reorganized Debtors or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

15.    **Corporate Action**. On the Effective Date, all actions contemplated by the Plan, the Plan Supplement, and the Effective Date Transactions shall be deemed authorized and approved in all respects, regardless of whether taken before, on, or after the Effective Date, including: (a) the adoption and filing of organizational documents, including the Amended Certificate and Bylaws; (b) the selection of the

directors and officers of each of the Reorganized Debtors; (c) the distribution of the Plan Sponsor Common Stock as provided in the Plan, in the Plan Supplement, or herein; (d) the execution and entry into the Exit Loan Agreement; and (e) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) or Effective Date Transactions, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, members, managers, directors, or officers of the Debtors or the Reorganized Debtors or otherwise.

16.     On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan and the Plan Supplement (or necessary or desirable to effect the transactions contemplated by the Plan and the Plan Supplement) in the name of and on behalf of the Reorganized Debtors, including the Plan Sponsor Common Stock, the Exit Loan Agreement, the Contingent Payment Certificate, and any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under non-bankruptcy Law.

17.     **Vesting of Assets**. Except as otherwise provided in the Plan or the Plan Documents, on the Effective Date, all Assets, including all Claims, rights, and Causes of Action, and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests. Subject to the terms of the Plan,

on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Claims), Interests, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

18.     **Cancellation of Existing Securities and Agreements**. On the Effective Date, except as otherwise specifically provided for in the Plan: (i) any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest, including the DIP Loan Agreement, Bridge Note, and Subordinated Notes, (except for the Enterprise Obligations and such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan, if any) shall be deemed to be automatically cancelled, terminated and of no further force or effect, without further act or action, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder, and the DIP Lender, Bridge Lender, and Subordinated Notes Indenture Trustee, and each of their respective agents, successors and assigns, shall each be automatically and fully released and discharged of and from all duties and obligations thereunder, as applicable; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except for the Enterprise Obligations and such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are

29

specifically Reinstated or assumed pursuant to the Plan, if any) shall be deemed to be automatically released and discharged.

19.     **Approval of the Exit Loan Facility**. This Confirmation Order shall constitute, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the Exit Loan Agreement on terms substantially the same as those set forth in the Plan Supplement and such other documents as may be reasonably required or appropriate, in each case, in accordance therewith.

20.     The financial accommodations to be extended pursuant to the Exit Loan Facility are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, for reasonably equivalent value, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.

21.     The Reorganized Debtors and the Entities granted the Liens and security interests in accordance with the Exit Loan Agreement are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order, and if such documents are executed, will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

22.     **Issuance of New Common Stock**. Reorganized Impac is authorized and empowered, without further approval of this Bankruptcy Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the New Common

Stock in accordance with the Plan and Plan Supplement, to make all filings and recordings, and to obtain any and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.

23.    **Section 1145 Exemption from Registration**. The issuance of the New Common Stock under the Plan or the Plan Supplement shall be exempt from registration under the Securities Act and any other applicable securities Laws pursuant to section 1145 of the Bankruptcy Code, to the extent applicable. Subject to any restrictions on transfer as set forth in the Amended Certificate and Bylaws, (a) these Securities may be resold without registration under the Securities Act or other federal securities Laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, to the extent applicable, unless the Holder is an "underwriter" with respect to such Securities, as that term is defined in section 1145(b) of the Bankruptcy Code; and (b) such exempt Securities generally may be resold without registration under state securities Laws pursuant to various exemptions provided by the respective Laws of the several states.

24.    **Exemption from Certain Transfer Taxes and Recording Fees**. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for the Exit Loan Facility; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated

by, or in any way related to the Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

25.     **Directors and Officers of the Reorganized Debtors**. The designation of the members of the board of directors of each of the Reorganized Debtors as provided for in Section 5.1.1 of the Plan and the Plan Supplement is approved and shall be effective as of the Effective Date without further action by any party. Except to the extent that a member of the board of directors or board of managers, or the sole manager, as applicable, of a Debtor is designated in the Plan Supplement to serve as a director, manager or sole manager of such Reorganized Debtor on the Effective Date, the members of the board of directors or board of managers, or the sole manager, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date, and each such director, manager, or sole manager shall be deemed to have resigned or shall otherwise cease to be a director, manager or sole manager of the applicable Debtor on the Effective Date. Each of the directors, managers, sole managers and officers of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable Amended Certificate and Bylaws of such Reorganized Debtor and may be designated, replaced or removed in accordance with such Amended Certificate and Bylaws.

26.     **Effectuating Documents; Further Transactions**. Prior to, on, and after the Effective Date, the Debtors and Reorganized Debtors and the directors, managers, officers, authorized persons, and

members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Exit Loan Agreement, the Contingent Payment Certificate, and the Amended Certificate and Bylaws, and any securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan and this Confirmation Order. This Confirmation Order shall, and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

27.    **Retained Causes of Action**. Unless any Causes of Action or Claims against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the DIP Order, or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action or Claims in the ordinary course, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action and Claims shall be preserved notwithstanding the occurrence of the Effective Date, and such Causes of Action or Claims shall vest in the Reorganized Debtors as of the Effective Date. In their sole and absolute discretion, the Reorganized Debtors may pursue such retained Causes of Action or Claims, and may exercise any and all rights in connection therewith. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata,

collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or Claims upon, after, or as a consequence of confirmation or consummation of the Plan. For the avoidance of doubt, in no instance will any Cause of Action preserved include any Claim or Cause of Action with respect to, or against, a Released Party.

28.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Claim or Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. All rights of the Debtors and Reorganized Debtors to prosecute any and all Claims or Causes of Action against any Entity are expressly preserved, except as otherwise expressly provided in the Plan.

29.     **Treatment of Executory Contracts and Unexpired Leases**.  All Executory Contracts and Unexpired Leases of the Debtors that are not otherwise assumed or rejected will be deemed rejected by the applicable Debtor or Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those: (i) previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court; (ii) identified on the Schedule of Assumed Executory Contracts; (iii) subject of a notice or motion to assume that is pending on the Effective Date; (iv) subject to a notice or motion to assume pursuant to which the requested effective date of such assumption is after the Effective Date; (v) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; or (vi) is one of the following type of agreements, all of which shall be deemed assumed even if not identified by clauses (i)-(v) above: (a) confidentiality, non-compete and non-disclosure agreements in favor of the Debtors and (b) intercompany agreements and arrangements, unless specifically identified as rejected under a notice or motion of rejected contracts. Each Executory Contract and Unexpired Lease assumed pursuant to Section 9.1 of the Plan but not assigned to a third party shall be deemed to be assigned to a Reorganized Debtor, and be fully enforceable by, the

applicable contracting Reorganized Debtor(s) in accordance with the terms thereof, except as otherwise modified by the provisions of the Plan, or by any order of the Bankruptcy Court.

30.     This Confirmation Order constitutes an order of the Bankruptcy Court: (a) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in the Plan and Plan Supplement (including the Schedule of Assumed Executory Contracts (as may be further supplemented, amended, or modified from time to time pursuant to the terms of the Plan)), pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2); (b) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of the Reorganized Debtors, their Estates, and all parties in interest in the Chapter 11 Cases; and (c) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

31.     To the maximum extent permitted by applicable law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall

not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

32.    Any counterparty to an Executory Contract or Unexpired Lease that did not timely object to the proposed assumption or Cure Cost shall be deemed to have assented to such assumption and the associated Cure Cost. Any timely objections regarding (a) the amount of any Cure Cost, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (c) any other matter pertaining to assumption or assumption and assignment that was not resolved prior to or at the Confirmation Hearing or herein shall be heard and resolved by the Bankruptcy Court prior to the assumption or assumption and assignment becoming effective, and the applicable Cure Costs associated therewith (if any) shall be paid following entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment and shall not prevent or delay implementation of the Plan or Effective Date; *provided* that the Debtors may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further*, that notwithstanding anything to the contrary herein, the Debtors reserve the right to reject any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

33.    Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions

restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

34.     Except as otherwise provided in the Plan or the Plan Supplement, the Debtors shall assume, as of the Effective Date, all contracts associated with the Debtors' employee benefits, including contracts regarding their payroll processing company, health benefits, 401(k) plan, paid time off, life insurance, accidental death and disability insurance and employee handbook; provided that the Debtors shall not assume any severance obligations unless expressly assumed.  Nothing contained herein or in the Plan shall entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such expired benefit plan or alleged entitlement under any such expired benefit plan. Nothing herein or in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, Claims, Causes of Action, or other rights with respect to any benefit plan, whether expired or unexpired.

35.     Except as otherwise provided in the Plan, neither (a) the Debtors' emergence from chapter 11 of the Bankruptcy Code as contemplated by the Plan nor (b) the consummation of the transactions provided in the Plan (or otherwise contemplated by the Effective Date Transactions and the Plan to occur prior to or on or about the Effective Date), in each case alone or together with any other event, will: (i) entitle any current or former director, officer, employee or other service provider of any of the Debtors to any payment or benefit; (ii) accelerate the time of payment or vesting or trigger any payment or funding of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any benefit plan or expired benefit plan; or (iii) limit or restrict the right of the Debtors or Reorganized

Debtors to merge, amend or terminate any benefit plan, in each case including as a result of a "change in control" or similar provision or as a result of giving rise to any person to terminate his or her service with the Debtors or Reorganized Debtors for "good reason" or similar provision.

36.     Pursuant to Section 9.6 of the Plan, all insurance policies pursuant to which any Debtor has any obligations in effect as of the Effective Date shall be Reinstated and shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed and assumed and assigned to the respective Reorganized Debtors and shall continue in full force and effect thereafter in accordance with such policy's respective terms; provided that for the avoidance of doubt the Reorganized Debtors shall not have any obligation to satisfy any deductible or self-insured retention obligation associated with any Disallowed Claim or any claim that has been discharged, satisfied, released hereunder. The Debtors or the Reorganized Debtors, as the case may be, shall maintain directors' and officers' insurance providing coverage for those indemnitees currently covered by such policies for the remaining term of such policy and shall maintain runoff policies or tail coverage under policies in existence as of the Effective Date for a period of six years after the Effective Date, to the fullest extent permitted by such provisions, in each case insuring such parties in respect of any claims, demands, suits, Causes of Action, or proceedings against such indemnitees based upon any act or omission related to such indemnitee's service with, for, or on behalf of the Debtors in at least the scope and amount as currently maintained by the Debtors.

37.     **Enterprise Obligations Reinstated**.  Pursuant to sections 1123(a)(5), 1124, and 1141 of the Bankruptcy Code, and in accordance with the Plan, the Enterprise Obligations, the Former Executive 1 Loan Documents, the Former Executive 2 Loan Documents, and the Former Executive 3 Loan Documents, and the Continuing Limited Guaranty Agreement, dated January 31, 2012, and any and all documents related to the Enterprise Obligations (collectively, the "Enterprise Documents"), shall be, and hereby are, Reinstated on the Effective Date. Upon the Effective Date, the Enterprise Obligations shall be

38

deemed unimpaired within the meaning of section 1124 of the Bankruptcy Code, and the Enterprise Documents shall continue in full force and effect, subject only to such modifications as are expressly set forth in the Plan. Without limiting the foregoing, on and as of the Effective Date, all rights, remedies, liens, security interests, priorities, and protections of Enterprise in connection with the Enterprise Obligations and the Enterprise Documents are preserved and shall remain in full force and effect following the Effective Date with the same validity, priority, scope, and extent as existed prior to the Petition Date, without the need for any further action by Enterprise or the Reorganized Debtors.  Notwithstanding any provision of the Plan, Enterprise, the holder of the Class 2(a) Claims, shall retain its legal, equitable and contractual rights under the Former Executive 1 Loan Documents, the Former Executive 2 Loan Documents, the Former Executive 3 Loan Documents and the Enterprise Surety Documents, including, but not limited to, the Liens against the Debtors' property that secure the Enterprise Claim, to the extent such rights were valid and existing prepetition.

38.     **Amendments to Schedule of Assumed Executory Contracts**. The Debtors may alter, amend, modify, or supplement the Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts at any time through and including 30 days after the Effective Date.

39.     **Distributions**. All distributions pursuant to the Plan shall be made in accordance with Section 8 of the Plan, and such methods of distribution are approved. The Reorganized Debtors or Plan Administrator, as applicable, shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Reorganized Debtors or Plan Administrator, as applicable, any and all documents applicable to such distributions in accordance with Section 8 of the Plan.

40.     **Compliance with Tax Requirements/Allocations**. In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting

requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Plan Administrator (as applicable) shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including (a) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, (b) withholding distributions pending receipt of information necessary to facilitate such distributions including W-8 or W-9 forms and, in the absence of receipt of such information within a reasonable period of time, deeming such Claims to be waived without further Order of the Bankruptcy Court, or (c) establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors or Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and encumbrances.

41.     **Disputed Claims**. Except as provided in Section 7 of the Plan, each of the Reorganized Debtors after the Effective Date shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.

42.     Except as otherwise specifically provided in the Plan or order of the Bankruptcy Court, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, (i) the Plan Administrator shall have the sole authority for administering, disputing, objecting to, compromising, or otherwise resolving all General Unsecured Claims against the Debtors, including the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or

compromises without any further notice to or action, order, or approval by the Bankruptcy Court and (ii) the Reorganized Debtors shall have the sole authority for administering, disputing, objecting to, compromising, or otherwise resolving all Claims or Interest against the Debtors other than General Unsecured Claims, including the authority (a) to file, withdraw, or litigate to judgment objections to Claims other than General Unsecured Claims; and (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court.

43.    **Conditions Precedent to Effective Date**. The Plan shall not become effective unless and until all conditions set forth in Section 12.2 of the Plan have been satisfied or waived.

44.    **The Discharge, Releases, Injunction, Exculpation, and Related Provisions Under the Plan**. The Discharge, Debtors' Releases, Limited Third Party Releases, Exculpation, Injunction, and related provisions set forth in Section 10 of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of the Bankruptcy Court or any other party. For the avoidance of doubt, this Confirmation Order and Section 10.3 of the Plan shall be construed to effectuate a discharge only to the extent permitted by Section 1141 of the Bankruptcy Code.  Under section 1141(d)(6) of the Bankruptcy Code, and notwithstanding any language within the Plan to the contrary, the confirmation of this Plan does not discharge the Debtors from any debt of a kind specified in paragraph (2)(A) or 2(B) of section 523(a) of the Bankruptcy Code that is owed to a domestic Governmental Unit.

45.    Pursuant to Bankruptcy Rule 3020(c)(1), the following injunction in Section 10.4 of the Plan will be immediately effective on the Effective Date:

> **No Person or Entity holding a Claim or Interest may receive any payment from, or seek recourse against, directly or indirectly, any Assets of the Debtors and their Estates or the Reorganized Debtors other than Assets required to be distributed to that Person or Entity under the Plan.  Except as otherwise expressly provided for in the Plan or the Confirmation Order, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, or on**

account of any claim, interest, obligation, right, suit, damages, Cause of Action, remedy or liability discharged, released, dismissed, exculpated, settled or waived under the Plan or the Confirmation Order, from, directly or indirectly (collectively, the "**Enjoined Matters**"):

    a. asserting any Enjoined Matters against any Assets of the Debtors, their Estates, the Reorganized Debtors, the Released Parties, and their successors and assigns and any of their assets or properties, directly or indirectly;

    b. commencing or continuing in any manner any suit, action, discovery, or other matter or proceeding of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties;

    c. enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties;

    d. creating, perfecting or enforcing any encumbrance of any kind against the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties; or

    e. asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors, their Estates, the Reorganized Debtors, the Released Parties, their successors and assigns and any of their assets and properties, directly or indirectly, except to the extent that a motion to effectuate such setoff or subrogation is timely Filed prior to the Confirmation Date.

Notwithstanding the foregoing, nothing in this Section 10.4 is intended or shall be deemed to enjoin Holders of Allowed Claims from enforcing the Debtors' obligations pursuant to the Plan.

46. **Provisions Related to Government Entities**. Notwithstanding any language to the contrary in the Disclosure Statement, Plan and/or this Confirmation Order, no provision shall (i) preclude the United States Securities and Exchange Commission ("**SEC**") from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

47. Notwithstanding anything in the Plan, this Confirmation Order, or any related Plan Documents to the contrary, nothing herein shall discharge or release the Debtors, the Reorganized Debtors,

or any non debtor from (a) any obligation or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any claim of the United States arising after the Confirmation Date, (c) any obligation or liability of any entity or person under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Confirmation Date; or (d) any right, defense, claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor.  For the avoidance of doubt, all "claims" within the meaning of section 101(5) of the Bankruptcy Code shall be treated in accordance with the Plan.  Without limiting the foregoing, nothing shall: (i) require the Internal Revenue Service to file any proofs of claim or requests for allowance of administrative expense claims in the Chapter 11 Cases arising from or relating to any right, claim, liability, defense, or cause of action identified in clauses (a) through (d) hereof; (ii) impair the Internal Revenue Service's ability to assert that any claim is entitled to interest solely to the extent provided under section 511(a) of the Bankruptcy Code; (iii) affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Reorganized Debtors, or any non debtor as permitted by applicable law; (iv) be interpreted to set cure amounts or to require the United States to novate or otherwise consent to the transfer of any federal contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests; (v) affect or impair the United States' rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment, against the Debtors or the Reorganized Debtors, and such rights and defenses are expressly preserved; (vi) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non bankruptcy law; or (vii) relieve any party from

43

compliance with all licenses and permits issued by the United States in accordance with non bankruptcy law.

48.    **Professional Fee Claims**. On the Effective Date, the Reorganized Debtors shall establish (if not already established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Account shall be maintained in trust solely for the benefit of the Retained Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account in any way. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by an Order of the Bankruptcy Court; *provided that* in the event the Professional Fee Reserve Amount is insufficient to satisfy the Professional Fee Claims, (x) each Professional shall receive its portion of the Professional Fee Escrow Account, allocated on the basis of the unused amounts set forth in the DIP Budget for such Professional, from the Professional Fee Escrow Account and (y) the Reorganized Debtors shall be required to satisfy the Allowed amounts of the remainder of any outstanding Professional Fee Claims. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court or any other Entity.

49.    Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Reorganized Debtors shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Reorganized Debtors on or after the Confirmation Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtors shall pay, within 10

Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable Claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Reorganized Debtors. From and after the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

50.    **Substantial Consummation**. Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

51.    **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, among other things, jurisdiction to take the actions specified in Section 11 of the Plan.

52.    **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.

53.    **Payment of Statutory Fees**. All fees under 28 U.S.C. § 1930 and any interest thereon under 31 U.S.C. § 3717 (together, "**Statutory Fees**") payable as of the Effective Date shall be paid by the

Debtors in full in Cash on the Effective Date. On and after the Effective Date, the Reorganized Debtors and the Plan Administrator shall be jointly and severally liable to pay any and all Statutory Fees in full in Cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors and Plan Administrator shall each file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) Statutory Fees are Allowed; (ii) the U.S. Trustee for Region 3 shall not be required to file any proof of claim or any other request(s) for payment with respect to Statutory Fees; and (iii) the U.S. Trustee for Region 3 shall not be treated as providing any release under the Plan. Notwithstanding anything to the contrary in the Plan Supplement, nothing in the Plan Supplement shall: (i) constitute a determination (judicial or otherwise) that future distributions in the Chapter 11 Cases are not disbursements under 28 U.S.C. § 1930; (ii) otherwise exempt or shelter future distributions in the Chapter 11 Cases from 28 U.S.C. § 1930; nor (iii) in any way prejudice the U.S. Trustee's rights under 28 U.S.C. § 1930 (which rights are fully preserved).

54.     **Governing Law**. Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law, rule or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan provides otherwise, the Plan shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof that would require application of the Law of another jurisdiction.

55.     **Severability**. Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms; (b)

integral to the Plan and may not be deleted or modified without the Debtors' and the Plan Sponsor's consent; and (c) nonseverable and mutually dependent.

56.     **Controlling Document**. To the extent that terms of Confirmation Order or the Plan are inconsistent with the Disclosure Statement or any agreement entered into between any of the Debtors and any other party, the terms of the Confirmation Order and Plan control the Disclosure Statement and any such agreement, and the provisions of the Confirmation Order control the terms of the Plan.

57.     **Extension of Injunctions and Automatic Stay**. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

58.     **Waiver of Stay of Confirmation Order**. Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062), this Confirmation Order is effective immediately and not subject to any stay, sufficient cause having been shown.

## **EXHIBIT A**

## **Notice of Confirmation and Effective Date**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **IMPAC MORTGAGE HOLDINGS, INC.,** | **Case No. 26-10593 (CTG)** |
| *et al.,* | **(Jointly Administered)** |
| **Debtors.**[1] | **Related Docket No. 13** |

**NOTICE OF (I) CONFIRMATION AND EFFECTIVE DATE OF THE JOINT
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF IMPAC MORTGAGE
HOLDINGS, INC. AND AFFILIATES THEREOF AND (II) DEADLINES UNDER THE PLAN
AND CONFIRMATION ORDER TO FILE GENERAL UNSECURED PROOFS OF CLAIMS,
ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND REJECTION CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      **Entry of Confirmation Order**. On _____ __, 2026, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No.[•]] (the "Confirmation Order") confirming the *Joint Prepackaged Chapter 11 Plan of Reorganization of Impac Mortgage Holdings, Inc. and Affiliates Thereof* [Docket No. 13] attached as Exhibit A to the Confirmation Order (together with all exhibits thereto, and as may be amended, modified or supplemented, the "Plan")[2] in the Chapter 11 Cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.      **Effective Date of the Plan**. The Effective Date of the Plan was _____, 2026.

3.      **General Unsecured Claim Bar Date**.  As provided for in Section 8.18(b) of the Plan (defined term GUC Bar Date) and in the Confirmation Order, all proofs of claim in respect of any General Unsecured Claim against any of the Debtors must be submitted to the Plan Administrator **no later than _____ __, 2026 (the date that is 30 days after the Effective Date) at [address/submission details];**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Impac Mortgage Holdings, Inc. (5505); Copperfield Financial, LLC (7513); Copperfield Capital Corporation (4920); Impac Funding Corporation (4495); Impac Commercial Capital Corporation (0090); Impac Secured Assets Corp. (5871); IMH Assets Corp. (5301); Integrated Real Estate Service Corp. (2263); Impac Mortgage Corp. (3937); Impac Warehouse Lending, Inc. (0541); Synergy Capital Mortgage Corp. (9071); and Impac Warehouse Lending Group, Inc. (3488). The Debtors' mailing address is 19800 MacArthur Blvd., Suite 500, Irvine, CA 92612.

[2]  Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan.

*provided*, *however*, that Persons that timely filed a Proof of Claim for prepetition Claims or Rejection Claims prior to the Effective Date do not need to submit to the Plan Administrator additional proofs of claim in respect of such General Unsecured Claims or Rejection Claims.

4.      **Governmental Claim Bar Date**. Pursuant to section 502(b)(9) of the Bankruptcy Code, the deadline for all governmental units to file proofs of claim against the is **October 23, 2026, at 5:00 p.m**. (prevailing Eastern Time). Any governmental unit holding a claim against any of the Debtors that arose prior to the Petition Date must file a proof of claim on or before the Governmental Bar Date.

5.      **Administrative Claim Bar Date**. As provided for in Section 3.2.1 of the Plan (defined term Administrative Claims Bar Date) and in the Confirmation Order, all requests for payment of an Administrative Claim, including for the avoidance of doubt any Administrative Claim arising under section 503(b)(9) of the Bankruptcy Code, must be filed with this Court and served on counsel to the Plan Administrator, counsel to the Debtors, and counsel to the U.S. Trustee **no later than _____ __, 2026 (the date that is 30 days after the Effective Date)**.

4.      **Deadline to File Professional Fee Claims**. As provided for in Section 3.2.2 of the Plan and in the Confirmation Order, all final applications for payment of the Professional Fee Claims must be filed with this Court and served on counsel to the Debtors and the Plan Administrator **no later than _____ __, 2026 (the date that is 30 days after the Effective Date)**, unless otherwise ordered by this Court or such later date is agreed to by the Reorganized Debtors.

5.      **Deadline to File Rejection Claims**.  As provided for in Section 9.4 of the Plan and in the Confirmation Order, unless otherwise provided by a Bankruptcy Court Order, any Proofs of Claim asserting Rejection Claims pursuant to the Plan or otherwise must be submitted to the Plan Administrator **by [●], 2026 (the date that is sixty (60) days after the Effective Date). Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Section 3.3.6 of the Plan, as applicable. Any Rejection Claims that are not timely submitted to the Plan Administrator pursuant to Section 9.4 of the Plan shall be forever disallowed and barred.**

6.      **Inquiries by Interested Parties**.  Copies of the Confirmation Order (filed at Docket No. 13) may be examined free of charge at https://www.veritaglobal.net/impacmortgage. The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website with a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

Dated: May [•], 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ DRAFT*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-4100
Email:  ljones@pszjlaw.com

2

debertenthal@pszjlaw.com
tcairns@pszjlaw.com

- and -

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (DE Bar No. 3827)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Tel: (213) 623-9300
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Geoffrey M. Miller (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-6700
Email: john.beck@dentons.com
        geoffrey.miller@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

3